1   TIMOTHY J. YOO (SBN 155531)
2   JULIET Y. OH (SBN 211414)
    LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3   10250 Constellation Boulevard, Suite 1700
    Los Angeles, California 90067
4   Telephone: (310) 229-1234; Facsimile: (310) 229-1244
    Email: tjy@lnbyb.com, jyo@lnbyb.com
5
6   Proposed Attorneys for Chapter 11 Debtor
    and Debtor in Possession
7

8               **UNITED STATES BANKRUPTCY COURT**
9
10              **CENTRAL DISTRICT OF CALIFORNIA**
11
                **LOS ANGELES DIVISION**
12

13  In re                              ) Case No. 2:16-bk-23836-SK
                                       )
14  BLUE BEE, INC.,                    )
                                       ) Chapter 11
15                          Debtor.    )
                                       )
16                                     ) **DEBTOR'S EMERGENCY MOTION FOR
                                       ) AN INTERIM ORDER AUTHORIZING
17                                     ) THE    DEBTOR    TO    USE    CASH
                                       ) COLLATERAL ON AN INTERIM BASIS
18                                     ) PENDING    A    FINAL    HEARING;
                                       ) MEMORANDUM   OF   POINTS   AND
19                                     ) AUTHORITIES**
                                       )
20                                     )
                                       ) [Omnibus Declaration of Jeff Sunghak Kim
21                                     ) and Declaration of Juliet Y. Oh Filed
                                       ) Concurrently Herewith]
22                                     )
                                       )
23                                     ) Date:          [To be set]
                                       ) Time:          [To be set]
24                                     ) Courtroom:     1575
                                       ) Location:      255 E. Temple Street
25                                     )                Los Angeles, California
                                       )
26  _____)
27
28

                                    1

1

## <u>TABLE OF CONTENTS</u>

2  **MEMORANDUM OF POINTS AND AUTHORITIES** ................................................ **8**

3  **I.     STATEMENT OF FACTS** ............................................................................ **8**

4
       **A.     Background** .................................................................................... **8**
5
       **B.     The Debtor's Primary Assets And Secured Debts** .................... **10**
6

7      **C.     The Need For Use Of Cash Collateral And Proposed Operating
              Budget** ........................................................................................ **13**
8

9  **II.    DISCUSSION** ............................................................................................ **14**

10     **A.     The Debtor Must Be Authorized To Use Cash Collateral To Operate
              Its Business And To Maintain And Preserve The Value Of Its Assets** ........ **14**
11

12     **B.     The Debtor's Prepetition Secured Creditors Are Adequately
              Protected By A Substantial Equity Cushion, The Continued
13            Operation Of The Debtor's Business And/Or Other Forms Of
              Adequate Protection** ................................................................... **15**

14 **III.   PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF THE
          MOTION HAVE BEEN SATISFIED** ...................................................... **19**
15

16 **IV.    CONCLUSION** ........................................................................................ **20**

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Dynaco Corporation*
162 B.R. 389 (Bankr. D.N.H. 1993) ............................................................. 15, 18

*In re Immenhausen Corp.*
164 B.R. 347 (Bankr. M.D. Fla. 1994)................................................................. 18

*In re McCombs Properties VI, Ltd.*
88 B.R. 261 (Bankr. C.D. Cal. l988) .......................................................... 15, 16, 17

*In re McGowan*
6 B.R. 241 (Bankr. E.D. Pa. 1980)...................................................................... 16

*In re Mellor*
734 F.2d 1396 (9th Cir. 1984)....................................................................... 15, 16

*In re Newark Airport/Hotel Ltd. Partnership*
156 B.R. 444 (Bankr. D.N.J. 1993)..................................................................... 18

*In re O'Connor*
808 F.2d 1393 (10th Cir. 1987)...................................................................... 15, 18

*In re Oak Glen R-Vee*
8 B.R. 213 (Bankr. C.D. Cal. 1981) .................................................................... 15

*In re Opelika Manufacturing Corporation*
66 B.R. 444 (Bankr. N.D. Ill. 1986).................................................................... 16

*In re Rogers Development Corp.*
2 B.R. 679 (Bankr. E.D. Vir. 1980) .................................................................... 16

*In re Stein*
19 B.R. 458. (Bankr. E.D. Pa. 1982)................................................................... 17

*In re Triplett*
87 B.R. 25 (Bankr. W.D.Tex. 1988) ................................................................... 17

*In re Tucson Industrial Partners*
129 B.R. 614 (9th Cir. BAP 1991)...................................................................... 15

*Matter of Pursuit Athletic Footwear, Inc.*
193 B.R. 713 (Bankr. D. Del. 1996) ................................................................... 18

*United Savings Association v. Timbers of Inwood Forest Associates*
108 S.Ct. 626 (1988) ...................................................................................... 16

**FEDERAL STATUTES**

11 U.S.C. § 361 ................................................................................................................ 16

11 U.S.C. § 363 ...................................................................................................... 2, 6, 14

11 U.S.C. § 363(a) ........................................................................................................... 14

11 U.S.C. § 363(c) ..................................................................................... 14, 15, 16, 19

11 U.S.C. § 1107 ...................................................................................................... 2, 8, 14

11 U.S.C. § 1108 ...................................................................................................... 2, 8

**FEDERAL RULES**

Fed.R.Bankr.P. 2081-1(a)(9) ....................................................................................... 2, 6

Fed.R.Bankr.P. 4001 ................................................................................................. 2, 5, 6

Fed.R.Bankr.P. 4001(b) ..................................................................................... 19, 5, 20

Fed.R.Bankr.P. 4001(c) ................................................................................................. 20

Fed.R.Bankr.P. 4001(d) ................................................................................................. 20

Fed.R.Bankr.P. 4001-2 ..................................................................................... 2, 5, 6, 20

Fed.R.Bankr.P. 9075-1 ............................................................................................. 2, 6

## SUMMARY

Pursuant to 11 U.S.C. § 363, Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rules 2081-1(a)(9), 4001-2, and 9075-1, Blue Bee, Inc. d/b/a Angl, a California corporation and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case, hereby moves, on an emergency basis, for an order authorizing the Debtor to use its cash collateral on an interim basis pending a final hearing (the "Motion").

The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on October 19, 2016 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers. The Debtor currently owns and operates twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store"). The Debtor is headquartered in Los Angeles, California, and currently employs a workforce of approximately 110 employees. In 2015, the Debtor generated annual gross revenues of more than $24 million.

The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim (who also founded the Debtor), and which was dissolved on August 30, 2013. All of the assets of Angl, Inc. were transferred to, and all of the liabilities of Angl, Inc. were assumed by, the Debtor for tax and other corporate reorganization purposes.

After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., and later, the Debtor substantially expanded business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and

Arizona by 2015.[1]  The vast majority of these new retail stores (approximately 43 stores) were opened within the last seven years.  This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on business operations as a whole, as Angl, Inc. and later the Debtor incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, ultimately left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores.  The Debtor filed this Chapter 11 bankruptcy case order to preserve its rights under such lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize.

In order to continue operations and preserve the going-concern value of its business, the Debtor requires authority to use cash collateral.  As far as the Debtor is aware, while there is one creditor with a purported security interest in specific equipment based upon purchase money and/or lease transaction, a state tax lien for $24,160.38 asserted by the California State Board of Equalization ("SBOE"), and a number of judgment liens recorded by parties who obtained judgments against the Debtor or Angl, Inc., which judgment liens were all recorded within the 90-day period preceding the Petition Date and are therefore avoidable as preferential transfers and disputed, (i) the Debtor's primary secured lender Pacific City Bank (the "Bank"), who the Debtor believes is currently owed the aggregate sum of $2,102,000 based upon two (2) separate loans, (ii) secured lender Wells Fargo Bank, N.A. ("Wells Fargo"), who the Debtor believes is

---

[1] The Debtor operates the Retail Stores that are located in the state of California, while the Debtor's affiliates, Angl, Inc. - NV, a Nevada corporation, operates retail stores in the state of Nevada, and Angl, Inc. - AZ, an Arizona corporation, operates retail stores in the state of Arizona.  The online retail business is operated by another affiliate of the Debtor, ShopAngl.com, Inc.

1   currently owed the sum of $1,500,000, and (iii) secured lender Fashblvd., Inc., who the Debtor

2   believes is currently owed the sum of $6,000 based upon a pre-petition loan made to the Debtor,

3   are the only parties who assert a security interest in the Debtor's cash.  A summary of the

4   financing statements and liens recorded against the Debtor and Angl, Inc. in California, plus

5   copies of such financing statements and liens, are attached as exhibits to the Declaration of

6   Juliet Y. Oh filed concurrently herewith.  Based on the foregoing, the Debtor believes that the

7   Bank, Wells Fargo, Fashblvd., Inc. and the SBOE are the only parties that may have a perfected

8   security interest in the Debtor's cash.[2]

9       The Debtor seeks an order of the Court authorizing the Debtor to use its cash to pay the

10  expenses set forth in the operating budget (the "Budget") which is attached as **Exhibit "A"** to

11  the Omnibus Declaration of Jeff Sunghak Kim filed concurrently herewith (the "Kim

12  Declaration"), as well as all quarterly fees owing to the Office of the United States Trustee and

13  all expenses owing to the Clerk of the Bankruptcy Court.  In addition, the Debtor seeks authority

14  to deviate from the expense line items contained in the Budget, without the need for any further

15  Court order, by up to 20%, on both a line item and aggregate basis, with any unused portions to

16  be carried over into the following week(s).  The Debtor will not deviate from the Budget beyond

17  the foregoing parameters without further order of the Court.

18      As of the Petition Date, the Debtor had cash on hand of approximately $93,000.   The

19  Debtor's primary assets consist of its cash on hand, security deposits totaling $87,013, inventory

20  with an estimated value of approximately $3,500,000 (at cost), and furniture, fixtures and

21  equipment ("FF&E") with a net book value of $6,299,306 and an estimated aggregate fair

22  market value of at least $1,000,000.

23      Based on the foregoing, the Debtor submits that the Bank, Wells Fargo, SBOE and any

24  other creditors who may have a perfected security interest in the Debtor's cash (collectively, the

25  "Secured Creditors") are adequately protected by a substantial equity cushion in the Debtor's

26  assets and by the continued operation of the Debtor's business.  In addition, as further adequate

27

28      [2] The Debtor does not concede that such creditors have a valid and properly perfected security interest and lien
in the Debtor's cash and other assets.

protection of the Debtor's use of cash collateral, the Debtor proposes that the Secured Parties receive replacement liens against the Debtor's post-petition assets, with such replacement liens to have the same validity, priority,  and extent as the prepetition liens held by the Secured Parties against the Debtor' cash.

The Debtor requires an immediate order of this Court authorizing the Debtor to use cash collateral in accordance with the Budget to enable the Debtor to pay all of its normal and ordinary operating expenses (such as payroll, rent, utilities, insurance, and payments to vendors) as they come due in the ordinary course of its business and to purchase new inventory to replenish merchandise that is sold to customers at the Debtor's Retail Stores, which in turn will facilitate the continued operation of the Debtor's business (without any disruption) and the preservation and maximization of the going-concern value of the Debtor's business and assets. If the Debtor does not obtain authority to use its cash collateral, the Debtor's estate will suffer immediate and irreparable harm, including, without limitation, a cessation of the Debtor's business operations and a corresponding (and likely substantial) decline in the value of the Debtor's business and assets.  Based on the foregoing, it is critical and in the best interests of the Debtor's estate for the Debtor to be authorized to immediately use cash collateral.

## **ADDITIONAL INFORMATION**

In compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2, the Debtor has filed concurrently herewith the mandatory Court-approved Form F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which discloses whether the proposed order authorizing the Debtor's use of cash collateral on an interim basis, pending a final hearing, contains certain provisions of findings of fact.

Pursuant to Bankruptcy Rule 4001, while the Court cannot conduct a final hearing on the Motion earlier than 14 days after service of this Motion, the Court may conduct a preliminary hearing before such 14-day period expires to enable the Debtor to use cash collateral as is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing.  For the reasons noted above, the Debtor respectfully submits that Debtor must be authorized to use its cash collateral to pay the expenses set forth in the Budget pending a final

1  hearing in order to avoid immediate and irreparable harm to the Debtor's business and

2  bankruptcy estate.

3      This Motion is based upon 11 U.S.C. § 363, Bankruptcy Rule 4001, and Local

4  Bankruptcy Rules 2081-1(a)(9), 4001-2, and 9075-1, this Motion, the annexed Memorandum of

5  Points and Authorities, the Kim Declaration filed concurrently herewith, the Declaration of

6  Juliet Y. Oh filed concurrently herewith, the statements, arguments and representations of

7  counsel to be made at the hearing on the Motion, and any other evidence properly presented to

8  the Court at or prior to the hearing on the Motion.

9      In order to provide maximum notice of this Motion, concurrently with the filing of this

10 Motion with the Court, the Debtor has served the Motion upon the Office of the United States

11 Trustee, all secured creditors and their counsel (if known), the 20 largest unsecured creditors of

12 the Debtor, and parties requesting special notice via overnight mail.  Hard copies of this Motion

13 are available upon request to the Debtor's proposed counsel whose contact information is

14 located on the upper-left hand corner of this Motion.  Upon obtaining a hearing date/time from

15 the Court, the Debtor will serve notice of the hearing on this Motion via overnight mail.

16     **WHEREFORE,** the Debtor respectfully requests that this Court hold an emergency

17 hearing on this Motion, and enter an order in substantially the form attached as **Exhibit "4"** to

18 the Declaration of Juliet Y. Oh filed concurrently herewith:

19     (1)    affirming the adequacy of the notice given;

20     (2)    granting the relief requested in the Motion on an interim basis;

21     (3)    authorizing the Debtor to use cash collateral on an emergency interim basis

22 pending a final hearing pursuant to the terms and conditions set forth in the Motion;

23     (4)    finding that the relief requested in the Motion is necessary to avoid immediate

24 and irreparable harm;

25     (5)    setting a final hearing to consider the entry of a final order granting the relief

26 requested in the Motion on a final basis; and

27 / / /

28

1       (6)    granting such other and further relief as the Court deems just and proper.

2   Dated:  October 24, 2016             BLUE BEE, INC.

3

4

5                           By:_____

6                               TIMOTHY J. YOO
                              JULIET Y. OH

7                               LEVENE, NEALE, BENDER, YOO
                                & BRILL L.L.P.

8                               Proposed Attorneys for Debtor and
                            Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

**A.** **Background.**

1.    On October 19, 2016 (the "<u>Petition Date</u>"), Blue Bee, Inc. d/b/a Angl, a California corporation and the debtor and debtor- in-possession herein (the "<u>Debtor</u>"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>").   The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  The Debtor currently owns and operates twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "<u>Retail Stores</u>," and individually, a "<u>Retail Store</u>").  Since the opening of its first Retail Store in 1992 along Melrose Avenue in Los Angeles, California, the Debtor has focused on bringing designer fashion to a wider audience.

3.    The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim, and was dissolved on August 30, 2013.  All of the assets of Angl, Inc. were transferred to, and all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor.  Jeff Sunghak Kim and his wife, Young Ae Kim, continue to be actively involved in the Debtor's business operations as the President and Secretary of the Debtor, respectively.

4.    The Debtor is headquartered near the Fashion District in downtown Los Angeles, California and currently employs a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

5.    After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor substantially expanded its business operations to encompass a total of

fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.[3] The vast majority of these new retail stores (approximately 43 stores) were opened within the last seven years.  This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

6.    The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, has left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores.  While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 21 Retail Stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

7.    Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores (particularly during the upcoming holiday season), all of which the Debtor believes

---

[3] The Debtor operates the Retail Stores that are located in the state of California, while the Debtor's affiliates, Angl, Inc. - NV, a Nevada corporation, operates retail stores in the state of Nevada, and Angl, Inc. - AZ, an Arizona corporation, operates retail stores in the state of Arizona.  The online retail business is operated by another affiliate of the Debtor, ShopAngl.com, Inc.

1 will enable it to formulate and pursue confirmation of a plan of reorganization which allows the

2 Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to

3 operate its longstanding business.

**B.**     <u>**The Debtor's Primary Assets And Secured Debts**</u>.

8.     The Debtors' primary assets are as follows:

a.     <u>Cash</u>.   As of the Petition Date, the Debtor had cash on hand of approximately $93,000.

b.     <u>Security Deposits</u>.   As of the Petition Date, the Debtor had security deposits with landlords and other parties in the total sum of approximately $87,013.

c.     <u>Inventory</u>.   As of the Petition Date, the Debtor had inventory with an estimated cost value of approximately $3,500,000.

d.     <u>Other Assets</u>.   As of the Petition Date, the Debtor had furniture, fixtures and equipment ("<u>FF&E</u>") with a net book value of $6,299,306 and an estimated aggregate fair market value of at least $1,000,000.

9.     The Debtor's senior secured lender is Pacific City Bank (the "<u>Bank</u>").   The Debtor is a borrower under two (2) separate loans with the Bank, as described below:[4]

a.     The Debtor is the borrower under a U.S. Small Business Administration loan with the Bank (the "<u>SBA Loan</u>"), pursuant to a Loan Agreement dated July 24, 2014 between the Debtor and the Bank.   The Debtor is currently indebted to the Bank in the amount of approximately $1,660,000 under the SBA Loan.   The Bank filed UCC-1 financing statements against the Debtor and its predecessor, Angl, Inc. asserting a lien against substantially all of the assets of the Debtor and Angl, Inc.

b.     The Debtor is the borrower under a term loan bearing the Loan Number 134077 with the Bank (the "<u>Term Loan</u>"), pursuant to a Business Loan Agreement dated

---

[4] Attached as **Exhibit "B"** to the Omnibus Declaration of Jeff Sunghak Kim (the "<u>Kim Declaration</u>") filed concurrently herewith are copies of the pre-petition loan and collateral documents with the Bank. A summary of the financing statements recorded against the Debtor and its predecessor Angl, Inc. by the Bank is set forth in the Declaration of Juliet Y. Oh filed (the "<u>Oh Declaration</u>") concurrently herewith, with copies of the financing statements attached as **Exhibit "1"** thereto.

November 2, 2015 between the Debtor and the Bank.  The Debtor is currently indebted to the Bank in the amount of approximately $442,000 under the Term Loan.

10.    Prior to the Petition Date, the Debtor provided a commercial guaranty of the obligations of the Debtor's affiliate, Peace People, LLC, under a term loan bearing the Loan Number 133776 made by Wells Fargo Bank, N.A. ("Wells Fargo") to Peace People, LLC pursuant to a Business Loan Agreement dated February 17, 2014 (the "Wells Fargo Loan"). The commercial guaranty provided by the Debtor in connection with the Wells Fargo Loan is purportedly secured by substantially all assets of the Debtor.[5]  As a result of the commercial guaranty, the Debtor is currently indebted to Wells Fargo in the amount of approximately $1,500,000 under the Wells Fargo Loan.  Included in **Exhibit "B"** to the Kim Declaration filed concurrently herewith are copies of the pre-petition loan and collateral documents with Wells Fargo.

11.    Prior to the Petition Date, the Debtor obtained a secured loan in the amount of $6,000 from Fashblvd., Inc. ("Fashblvd").  Flashblvd filed a UCC-1 financing statement (Document No. 57738600002) asserting a lien against substantially all of the assets of the Debtor prior to the commencement of the Debtor's bankruptcy case on October 19, 2016. Attached as **Exhibit "2"** to the Oh Declaration filed concurrently herewith is evidence of the filing of the foregoing UCC financing statement by Fashblvd., Inc.

12.    In addition to the financing statements filed by the Bank and Fashblvd against the Debtor and/or its predecessor, Angl, Inc., there are financing statements that have been filed against the Debtor and Angl, Inc. by the following parties[6]:

    a.    U.S. Bank Equipment Finance.  U.S. Bank Equipment Finance has one active financing statement (filing number 13-7390160767), filed on December 10, 2013, which purports to cover certain specified equipment leased or financed from U.S. Bank

---

[5] Neither the Debtor nor its counsel has been able to locate evidence of a UCC-1 financing statement recorded by Wells Fargo against Peace People, LLC or the Debtor.  The Debtor does not concede that Wells Fargo has a valid and properly perfected security interest and lien in the Debtor's cash and other assets.

[6] A summary of the financing statements recorded against the Debtor by such other parties is set forth in the Declaration of Juliet Y. Oh filed concurrently herewith, with copies of the financing statements attached thereto.

Equipment Finance.  U.S. Bank Equipment Finance does not purport to assert a security interest in the Debtor's cash.

       b.     <u>California State Board Of Equalization ("SBOE")</u>.  SBOE has one active state tax lien (filing number 15-7447815850) which was recorded against the Debtor on January 29, 2015.

       c.     <u>Line & Dot, LLC d/b/a Lumiere Collections ("L&E")</u>.  L&E has one active judgment lien (filing number 16-7546469513) which was recorded against the Debtor on September 15, 2016.  The Debtor submits that the foregoing judgment lien, which was recorded within the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and is therefore disputed.

       d.     <u>Tyler Mall Limited Partnership ("Tyler Mall")</u>.  Tyler Mall has one active judgment lien (filing number 16-7542925708) which was recorded against Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing judgment lien, which was recorded within the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and is therefore disputed.

       e.     <u>GGP-Otay Ranch, L.P. ("GGP")</u>.  GGP has one active judgment lien (filing number 16-7542926072) which was recorded against Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing judgment lien, which was recorded within the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and is therefore disputed.

       f.     <u>Valley Plaza Mall, LP ("Valley Plaza")</u>.  Valley Plaza has one active judgment lien (filing number 16-7545824507) which was recorded against Angl, Inc. on September 12, 2016.  The Debtor submits that the foregoing judgment lien, which was recorded within the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and is therefore disputed.

13.     Based on the foregoing, the Debtor believes that the Bank, Wells Fargo, Fashblvd and the SBOE are the only parties that may have a perfected security interest in the Debtor's cash.[7]

**C.     The Need For Use Of Cash Collateral And Proposed Operating Budget.**

14.     By this Motion, the Debtor seeks an order of the Court authorizing the Debtor to use its cash to pay the expenses set forth in the operating budget (the "Budget") which is attached as **Exhibit "A"** to the Kim Declaration filed concurrently herewith, as well as all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court.  In addition, the Debtor seeks authority to deviate from the expense line items contained in the Budget, without the need for any further Court order, by up to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into the following week(s).  The Debtor will not deviate from the Budget beyond the foregoing parameters without further order of the Court.

15.     The Debtor requires an immediate order of this Court authorizing the Debtor to use cash collateral in accordance with the Budget to enable the Debtor to pay all of its normal and ordinary operating expenses (such as payroll, rent, utilities, insurance, and payments to vendors) as they come due in the ordinary course of its business and to purchase new inventory to replenish merchandise that is sold to customers at the Debtor's Retail Stores, which in turn will facilitate the continued operation of the Debtor's business (without any disruption) and the preservation and maximization of the going-concern value of the Debtor's business and assets. If the Debtor does not obtain authority to use its cash collateral, the Debtor's estate will suffer immediate and irreparable harm, including, without limitation, a cessation of the Debtor's business operations and a corresponding (and likely substantial) decline in the value of the Debtor's business and assets.

16.     Based on the current estimated aggregate value of the Debtor's assets (including the Debtor's cash, security deposits, inventory, and FF&E), which the Debtor believes was

---

[7] The Debtor does not concede that such creditors have valid and properly perfected security interests and liens in the Debtor's cash and other assets.

1  approximately $4,680,000 as of the Petition Date, the Debtor submits that the Bank, Wells

2  Fargo, Fashblvd, SBOE and any other creditors who assert that they have perfected security

3  interests in the Debtor's cash (collectively, the "Secured Creditors") are adequately protected by

4  a substantial equity cushion in the Debtor's assets.

5          17.     In addition, as further adequate protection of the Debtor's use of cash collateral,

6  the Debtor proposes that the Secured Parties receive replacement liens against the Debtor's post-

7  petition assets, with such replacement liens to have the same validity, priority,  and extent as the

8  prepetition liens held by the Secured Parties against the Debtor' cash.

9                              **II.     DISCUSSION**

10  **A.     The Debtor Must Be Authorized To Use Cash Collateral To Operate Its Business**

11         **And To Maintain And Preserve The Value Of Its Assets.**

12          The Debtor's use of property of the estates is governed by Section 363 of the Bankruptcy

13  Code, which provides, in pertinent part:

14                      If the business of the debtor is authorized to be operated under

15                      section. . .1108. . . of this title and unless the court orders
                        otherwise, the trustee may enter into transactions, including the

16                      sale or lease of property of the estate, in the ordinary course of
                        business, without notice or a hearing, and may use property of the

17                      estate in the ordinary course of business without notice or a
                        hearing.

18

19  11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with

20  respect to property of the estate, including the right to use property of the estate in compliance

21  with section 363.  11 U.S.C. § 1107(a).

22          "Cash collateral" is defined as "cash, negotiable instruments, documents of title,

23  securities, deposit accounts or other cash equivalents in which the estate and an entity other than

24  the estate have an interest [.]"  11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special

25  requirement with respect to "cash collateral," providing that the trustee or debtor in possession

26  may use "cash collateral" under subsection (c)(1) if:

27                      (A)     each entity that has an interest in such cash collateral
                        consents; or

28

                                    14

1               (B)      the court, after notice and a hearing, authorizes such use,

2                     sale or lease in accordance with the provisions of this section.

3   11 U. S.C. §363(c)(2)(A) and (B).

4        It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the

5   purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-*

6   *Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614

7   (9th Cir. BAP 1991).  In addition, where the debtor is operating a business, it is extremely

8   important that the access to cash collateral be allowed in order to facilitate the goal of

9   reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash

10  collateral is necessary to operate a business."  *In re Dynaco Corporation*, 162 B.R. 389 (Bankr.

11  D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982).

12       For all of the reasons discussed herein, the Debtor has no ability to continue to maintain

13  its business operations or to preserve and maximize the value of its assets unless the Debtor is

14  authorized to use its cash collateral to pay its projected expenses in accordance with the Budget.

15  The Debtor's inability to pay such expenses would cause immediate and irreparable harm to the

16  Debtor's bankruptcy estate.   Indeed, the Debtor's inability to pay its projected expenses,

17  including payroll, rent, utilities and other operating expenses would result in the immediate

18  shutdown of the Debtor's business and the decimation of the value (going-concern or otherwise)

19  of the Debtor's business and assets.  The maintenance of the Debtor's business and preservation

20  and maximization of the Debtor's inventory and other assets are of the utmost significance and

21  importance to a successful reorganization of the Debtor through this Chapter 11 case.

22  **B.**    **The Debtor's Prepetition Secured Creditors Are Adequately Protected By A
Substantial Equity Cushion, The Continued Operation Of The Debtor's Business
And/Or Other Forms Of Adequate Protection.**

23

24       Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize a debtor

25  in possession to use a secured creditor's cash collateral if the secured creditor consents to the

26  use of cash collateral or is adequately protected.  *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.

27  1984).  *See also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs*

28

1    *Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. l988) ("McCombs").

2         The Debtor believes that the Secured Creditors will ultimately consent to the Debtor's

3    use of cash collateral to pay the expenses set forth in the Budget in accordance with the terms

4    and conditions set forth in this Motion.   Accordingly, the Debtor submits that it should be

5    authorized to use cash collateral pursuant to section 363(c)(2)(A) of the Bankruptcy Code.

6         Even if the Secured Creditors do not consent to the Debtor's use of cash collateral, the

7    Debtor submits that the value of such Secured Creditors' interests in the Debtor's cash collateral

8    will be adequately protected by a significant equity cushion.   As noted above, the Debtor

9    believes that the Bank, Wells Fargo, Fashblvd and the SBOE are the only parties that may have

10   a perfected security interest in the Debtor's cash.

11        Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood*

12   *Forest Associates*, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property

13   interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the

14   Bankruptcy Code is only the value of the lien that secures the creditor's claim.  108 S.Ct. at 630.

15   *See also McCombs*, at 266.   Section 506(a) "limit[s] the secured status of a creditor (i.e., the

16   secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the

17   collateral."  *McCombs*, at 266.

18        The Ninth Circuit made clear in *Mellor*, *Id.* at 1401, that an equity cushion of 20% is

19   considered clear adequate protection of a secured creditor's interest in cash collateral.  *See also*

20   *In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding a 10% cushion is sufficient to

21   be adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Vir.

22   1980) (court decided that an equity cushion of approximately 15% to 20% was sufficient

23   adequate protection to the creditor, even though the debtors had no equity in the property.)

24        Furthermore, in determining whether a secured creditor has equity in property, the Court

25   should consider the "entire security package" not just a portion thereof.   *In re Opelika*

26   *Manufacturing Corporation*, 66 B.R. 444, 447-48 (Bankr. N.D. Ill. 1986).

27        Here, the Debtor is currently holding cash of approximately $93,000, security deposits

28   totaling $87,013, inventory valued at approximately $3,500,000 (at cost), and FF&E with an

estimated fair market value of at least $1,000,000. Based on the foregoing, the current aggregate value of the Debtor's assets is approximately $4,680,000. The Debtor believes that the amounts owed to the Secured Creditors are as follows: (i) approximately $2,102,000 to the Bank (based upon SBA Loan and Term Loan), (ii) approximately $1,500,000 to Wells Fargo (based upon the Wells Fargo Loan), (iii) $6,000 to Fashblvd, and (iv) $24,160.38 to the SBOE. Given the aggregate value of the Debtor's assets (*i.e.*, approximately $4,680,000), and the total estimated amount owed to the Debtor's Secured Creditors (*i.e.*, approximately $3,632,160), the Secured Creditors are adequately protected by an equity cushion of approximately 28%, well in excess of the 20% equity cushion that the Ninth Circuit has indicated constitutes clear adequate protection of a secured creditor's interest in cash collateral.

Furthermore, the Debtor submits that the value of the Secured Creditors' interest in the Debtor's cash collateral will be adequately protected by, among other things, the maintenance and continued operation of the Debtor's business.

The law is clear that the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988). *See also In re Stein*, 19 B.R. 458 (Bankr. E.D.Pa. 1982). In *Stein*, the Court found that, as a general rule, a debtor may use cash collateral where such use would enhance or preserve the value of the collateral, and allowed the debtor therein to use cash collateral even though the secured party had no equity cushion for protection. The *Stein* Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. *See also In re McCombs, supra*, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

As reflected in the Budget, the payment of the expenses necessary for the Debtor to maintain and continue operating its business will adequately protect the Secured Creditors because, by doing so, the Debtor will be able to, among other things, maximize the value of its

1    inventory and generate as much revenue as possible from the sale of such inventory.    Other

2    courts have determined that a debtor's continued business operations can constitute the adequate

3    protection of a secured creditor.    *See Matter of Pursuit Athletic Footwear, Inc.,* 193 B.R. 713

4    (Bankr. D. Del. 1996); *In re Newark Airport/Hotel Ltd. Partnership*, 156 B.R. 444, 450 (Bankr.

5    D.N.J. 1993); *In re Dynaco*, 162 B.R. 389, 394-5 (Bankr. D.N.H. 1993); *In re Immenhausen*

6    *Corp.*, 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

7    Additionally, in determining adequate protection, courts have stressed the importance of

8    promoting a debtor's reorganization.    In *In re O'Connor*, *supra*, the Tenth Circuit stated:

9

10    "In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization.    This quest is the

11    ultimate goal of Chapter 11.    Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the

12    administration of the proceeding are to be measured in light of that quest.    Because the ultimate benefit to be achieved by a

13    successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end.

14    Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also

15    have bearing upon the question of whether use of cash collateral

16    shall be permitted during the early stages of administration."

17

18    808 F.2d at 1937.

19    The use of cash collateral is critical to the Debtor's ability to implement an effective

20    reorganization strategy for the benefit of all creditors.    As discussed above, through this

21    bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor

22    can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be

23    profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the

24    landlords, to identify and implement reasonable cost cutting measures and to maximize the

25    value of the Debtor's inventory by continuing its retail operations at the Retail Stores

26    (particularly during the upcoming holiday season), all of which the Debtor believes will enable

27    it to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to

28    restructure its existing debt in a cohesive and efficient manner while continuing to operate its

longstanding business.  If the Debtor is not permitted to use cash collateral in accordance with the Budget to enable the Debtor to pay all of its normal and ordinary operating expenses as they come due in the ordinary course of its business and to purchase new inventory to replenish merchandise that is sold to customers at the Debtor's Retail Stores, which in turn will facilitate the continued operation of the Debtor's business (without any disruption) and the preservation and maximization of the going-concern value of the Debtor's business and assets, the Debtor will be forced to immediately halt all business operations, which will significantly and negatively impact the value of the Debtor's business and assets.  Clearly, the use of cash collateral will only enhance the prospect of the Debtor's reorganization.

In addition to all of the forms of adequate protection discussed above, the Debtor also proposes to provide its Secured Creditors with replacement liens and security interests against the Debtor's post-petition assets with such replacement liens to have the same extent, validity, and priority as the pre-petition liens held by such Secured Creditors.  Such replacement liens will provide the Secured Creditors with further adequate protection.

Given the foregoing forms of adequate protection being provided to the Debtor's pre-petition Secured Creditors for the Debtor's use of cash collateral, the Debtor submits that the requirements of Bankruptcy Code Section 363(c)(2) have been satisfied and that the Debtor should be authorized to use cash collateral in accordance with the terms set forth in this Motion.

### III.

### PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF
### THE MOTION HAVE BEEN SATISFIED

Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") sets forth the procedural requirements for obtaining authority to use cash collateral.  The Debtor submits that it has complied with these procedural requirements.  First, the Motion must contain a copy of the proposed form of order granting the Motion, which has been done by attaching the Interim Order as **Exhibit "4"** to the Oh Declaration concurrently filed herewith.  Second, the Motion provides a concise statement of the relief requested, which was done above.  Third, the Motion is required to be served on any entity with an interest in the Debtor's cash collateral, any

committee appointed or the twenty largest unsecured creditors if there is no committee, and on such other parties as the Court directs.   Here, the Debtor has served the Motion and all supportive papers upon the Office of the United States Trustee, all secured creditors and their counsel (if known), the twenty largest unsecured creditors of the Debtor (as no committee yet exists), and all parties who have requested special notice via overnight mail.   Accordingly, the Motion complies with the procedural requirements of Bankruptcy Rule 4001(b)-(d).

In addition, in compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy Rule 4001-2, the Debtor has filed concurrently herewith the mandatory Court-approved Form F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which discloses whether the proposed Interim Order authorizing the Debtor's use of cash collateral on an interim basis, pending a final hearing, contains certain provisions of findings of fact. Accordingly, the Motion complies with the procedural requirements of Local Bankruptcy Rule 4001-2.

## IV.

### CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that this Court hold an emergency hearing on this Motion, and enter an order in substantially the form attached as **Exhibit "4"** to the Oh Declaration filed concurrently herewith:

(1)    affirming the adequacy of the notice given;

(2)    granting the relief requested in the Motion on an interim basis;

(3)    authorizing the Debtor to use cash collateral on an emergency interim basis pending a final hearing pursuant to the terms and conditions set forth in the Motion;

(4)    finding that the relief requested in the Motion is necessary to avoid immediate and irreparable harm;

(5)    setting a final hearing to consider the entry of a final order granting the relief requested in the Motion on a final basis; and

///

///

1       (6)     granting such other and further relief as the Court deems just and proper.

2 Dated:  October 24, 2016          BLUE BEE, INC.

By:_____

      TIMOTHY J. YOO
      JULIET Y. OH
      LEVENE, NEALE, BENDER, YOO
        & BRILL L.L.P.
      Proposed Attorneys for Debtor and
      Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S EMERGENCY MOTION FOR AN INTERIM ORDER AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL ON AN INTERIM BASIS PENDING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 24, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ronald M Tucker    rtucker@simon.com,
  cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

**2.   SERVED BY UNITED STATES MAIL**: On **October 24, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 24, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***Served via Attorney Service***
The Honorable Sandra R. Klein
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

☒ Service list served by Overnight Mail

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 24, 2016 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Blue Bee, Inc.
Top 20, Secured Creditors, OUST

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Century City Mall LLC
10250 Santa Monica Blvd
Suite 1
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018