WILLIAM W. HUCKINS (BAR NO. 201098)
IVAN M. GOLD (BAR NO. 121486)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4074
Phone:  (415) 837-1515
Fax:  (415) 837-1516

Attorneys for landlords GGP Northridge Fashion Center,
LP, Glendale I Mall Associates, LP and La Cienega
Partners Limited Partnership

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>BLUE BEE, INC.,<br><br>      Debtor. | Case No. 2:16-bk-23836-SK<br><br>Chapter 11<br><br>**LIMITED OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; REQUEST FOR ADEQUATE PROTECTION**<br><br>Date:   November 30, 2016<br>Time:  9:30 a.m.<br>Place:  1575 |

GGP Northridge Fashion Center, LP, Glendale I Mall Associates, LP and La Cienega Associates Limited Partnership (collectively, "Objecting Landlords"), shopping center lessors of debtor Blue Bee, Inc., doing business as ANGL ("Debtor"),[1] respectfully submit their limited objection to the final relief requested by *Debtor's Emergency Motion For An Interim Order Authorizing The Debtor To Use Cash Collateral on an Interim Basis Pending A Final Hearing* [Docket No. 9] ("Cash Collateral Motion").

---

[1] Objecting Landlords are the lessors of Debtor's stores at (1) Northridge Fashion Center, Northridge, California, (2) Glendale Galleria, Glendale, California, and (3) Beverly Center, Los Angeles, California.

**DEBTOR'S APPARENT TREATMENT OF POST-PETITION RENT IN THE BUDGET SHOULD NOT BE CONSTRUED AS ENDORSEMENT OF DEBTOR'S VIEW OF ITS OBLIGATIONS UNDER BANKRUPTCY CODE SECTION 365(d)(3)**

Debtor's Cash Collateral Motion seeks an order of the Court authorizing the use of cash collateral "[i]n order to continue its operations and preserve the going-concern value of its business." (Cash Collateral Motion at 3: 16-17.) Debtor seeks authorization to use its cash to pay the expenses set forth in a proposed 13-week operating budget (the "Budget"), attached as Exhibit A to the Omnibus Declaration of Jeff Sunghak Kim supporting Debtor's "first day" motions [Docket No. 12] and this Court's *Interim Order Granting Debtor's Emergency Motion For An Interim Order Authorizing The Debtor To Use Cash Collateral on an Interim Basis Pending a Final Hearing* [Docket No. 36].

While containing a category for "Rent & Related," apparently for rent and related charges and expenses for Debtors' leased locations, Debtors' Budget provides for various weekly amounts throughout a calendar month, rather than payment of rent in the first week of the month required under the terms of Debtor's shopping center leases. While Debtor is apparently attempting to "stagger" its rent payments to manage its cash flow, such approach is contrary to statutory and case law authority affording lessors of nonresidential real property specific protections with regard to post-petition, pre-rejection rent. Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) if this title.

The plain language of Section 365(d)(3) and applicable case law requires Debtor's immediate payment of the pre-rejection obligations under its real property leases. In In re Pacific-Atlantic Trading Co., 27 F.3d 401, 405 (9th Cir. 1994), the Ninth Circuit Court of Appeals held that Section 365(d)(3) mandates immediate payment of rent to a landlord at the full lease amount during the period the debtor-in-possession or trustee is deciding to reject or assume a lease

"regardless of the benefit to the estate." (27 F.3d at 405.)[2] The Ninth Circuit also concluded that "section 365(d)(3) authorizes administrative status for the unpaid rent for the 60-day [now 120-day] period." (Id.)[3]

The legislative history of Bankruptcy Code section 365 suggests that its purpose of the 1984 Amendments to Section 365 was "to relieve the burden placed on nonresidential real property lessors (or 'landlords') during the period between a tenant's bankruptcy petition and assumption or rejection of a lease." Omni Partners, L.P. v. Pudgie's Development of NY, Inc. (In re Pudgie's Development of NY, Inc.), 239 B.R. 688, 692 (S.D.N.Y. 1999) (citing 130 Cong. Rec. S8894-95 (daily ed. June 29, 1994) (statement of Sen. Hatch). Prior to these amendments, the Bankruptcy Code did not require a trustee to perform its obligations under a nonresidential lease, but the landlord was forced to provide services to the debtor-tenant. Congress specifically chose to protect real property lessors because "the Landlord is forced to provide current services – the use of its property, utilities, security, and other services – without current payment. No other creditor is put in this position." Id.; accord, In re Cukierman, 265 F.3d 846, 850-851 (9th Cir. 2001); see also In re Warehouse Club, Inc., 184 B.R. 316, 317 (Bankr, N.D. Ill. 1995) ("The purpose of § 365(d)(3) is to prevent landlords from becoming involuntary post-petition creditors of the bankruptcy estate."). The Ninth Circuit has "interpreted § 365(d)(3) broadly, consistent with its purpose of ensuring immediate payment of lease obligations to protect landlords pending the trustee's [or debtor-in-possession's] decision to assume or reject a lease." In re LPM Corporation, 300 F.3d 1134, 1138 (9th Cir. 2002).

Not only does the Budget fail to provide for the timely payment of accruing monthly rent under Debtor's leases, it notably omits any clear treatment of any amounts on account of rent for the post-petition portion of the month of October (i.e., October 19-31, 2016), frequently referred to as "stub rent."

---

[2] Rent under Section 365(d)(3) "is not, nor is it intended to be, measured in any way by benefit to the debtor or the estate." In re C.Q., LLC, 343 B.R. 915, 917 (Bankr. W.D. Wisc. 2005).
[3] The Ninth Circuit also held that Section 365(d)(3) "does not require the lessor to take any action" to secure priority treatment for post-petition, pre-rejection rent. In re Pacific-Atlantic Trading Co., supra, 27 F.3d at 405.

Numerous bankruptcy courts have followed pre-1984 practice of prorating debtor's lease obligations to cover the post-petition, pre-rejection period, regardless of billing date. This so-called "pro-ration" or "accrual" approach has been described as the rule in the "majority of courts." In re Phar-Mor, Inc., 290 B.R. 319, 323-324 (Bankr. N.D. Ohio 2003) ("The majority of courts that have considered this general issue have followed the pre-1984 practice of prorating both a debtor's real estate tax obligations and periodic rent payments due pursuant to a lease, regardless of the billing date."). Applying the pro-ration approach to Debtors' post-petition lease obligations, Debtor's 13-week Budget does not clearly reserve or account for the pro-rated portion of October 2016 rent and charges for Debtor's non-residential real property leases and thus potentially understates Debtor's administrative expenses.

In In re TreeSource Industries, Inc., 363 F.3d 994, 998 (9th Cir. 2004), the Ninth Circuit endorsed the pro-ration approach under Section 365(d)(3), opining that that tax and rent obligations arise when those obligations accrue, and not upon the performance of the obligations, such as a billing or payment date. Indeed, there are numerous reported examples of the application of the pro-ration approach to post-petition lease obligations by bankruptcy courts within the Ninth Circuit. See, e.g., In re National Refractories & Minerals Corp., 297 B.R. 614, 619 (Bankr. N.D. Cal. 2003); In re Ernst Home Center, Inc., 209 B.R. 955, 963-964 (Bankr. W.D. Wash. 1997) (finding that the competing "billing date" theory "produces results that are inconsistent with the priority and distribution schemes under the Bankruptcy Code")[4]; In re RB Furniture, Inc., 141 B.R. 706, 712 (Bankr. C.D. Cal. 1992).

---

[4] Under cases adopting the competing "billing date" or "performance date" approach, Debtor would have no obligation under Section 365(d)(3) to make payment on account of its lease obligations until November 1, 2016, the next post-petition "billing date." See, e.g., In re Montgomery Ward Holding Corp., 268 F.3d 205, 209 (3d Cir. 2001).

A number of other cases have criticized the billing date approach to Debtor's post-petition lease obligations as ignoring the rehabilitative purposes of the Bankruptcy Code and creating inconsistencies with its priority and distribution schemes. See, e.g., In re Kmart Corporation, 286 B.R. 345, 349 (Bankr. N.D. Ill. 2002); In re Furr's Supermarkets, Inc., 283 B.R. 60, 69-70 (10th Cir. BAP 2002). Indeed, even in one of the leading cases endorsing the performance date approach, the bankruptcy court acknowledged that the landlords would have an administrative expense claim for the "stub" period under Bankruptcy Code section 503(b) based on the post-petition use and occupancy of the leased premises. In re HQ Global Holdings, Inc., 282 B.R. 169 (Bankr. D. Del. 2002); see also In re ZB Company, Inc., 302 B.R. 316, 319 (Bankr. D.

While not clear from the proposed Budget, it appears that, notwithstanding the increased cash flow experienced to be experienced during the peak holiday retail season, Debtor cannot make timely post-petition rent payments. While Debtor has not filed any motion to extend the time for performance for "cause" under Bankruptcy Code section 365(d)(3) and such relief is not requested in the Cash Collateral Motion, Debtor is effectively compelling its shopping center landlords to extend it credit, while the leased premises are being used by Debtor in its continuing operations.

No explanation is offered why the landlords must "float" an effectively interest free loan to Debtor in the form of delayed payments of November and December rent, along with October stub rent. Under the proposed Budget, landlords, including Objecting Landlords, are having their administrative claims treated differently from other administrative claimants who are being paid on a current basis. See In re Lazar, 83 F.3d 306, 308-309 (9th Cir. 1996) ("Under the Bankruptcy Code, administrative expense creditors must be treated equally and the court should not set up its own order of priorities.")

This Court's approval of the Cash Collateral Motion on a final basis, and accompanying Budget embodied in Debtors' 13-week cash flow analysis, should not be construed as approval or endorsement of the Debtor's approach to its post-petition rent obligations. Any order approving the Cash Collateral Motion and the Budget should be without prejudice to any administrative priority claims under Section 365(d)(3) that landlords, including Objecting Landlords, might assert with respect to the post-petition portion of unpaid post-petition rent and charges.

**OBJECTING LANDLORDS ARE ENTITLED TO ADEQUATE
PROTECTION OF THEIR RIGHT TO RECEIVE PAYMENT FOR
POST-PETITION "STUB RENT"**

Should the Court approve Cash Collateral Motion and proposed Budget, which fails to make provision for prompt payment of October "stub rent," Objecting Landlords are entitled to adequate protection under Section 363(e) of the Bankruptcy Code, particularly where Debtor continues to operate at its retail store locations during the peak Holiday season.

---

Del. 2003) ("It is beyond dispute that all of the Debtors' landlords whose properties are occupied and used post-petition have valid administrative claims.").

Bankruptcy Code section 363(e) provides, in pertinent part, that:

> … [A]t any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

Real property lessors are entitled to seek adequate protection. See, e.g., In re P.J. Clarke's Restaurant Corp., 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (noting that a "landlord's right to adequate protection seems to follow clearly from the language of §363(e)…"); In re Ernst Home Center, Inc., 209 B.R. 955, 965-966 (Bankr. W.D. Wash. 1997); In re MS Freight Distribution, Inc., 172 B.R. 976, 980 fn. 4 (Bankr. W.D. Wash. 1994) ("Section 363(e) by its express terms authorizes an entity whose property is to be leased by the debtor to seek adequate protection."); In re RB Furniture, Inc., 141 B.R. 706, 713 (Bankr. C.D. Cal. 1992). Moreover, Section 363(p) places the burden of proving adequate protection on the Debtor.

For the use and occupancy of leased premises prior to the assumption and rejection of unexpired leases, the Debtor must pay a reasonable amount of rental. To the extent that landlords are not receiving payment on account of the post-petition use and occupancy of leased premises, Bankruptcy Code section 363(e) requires that the Debtors provide their lessors with some form of adequate protection. See In re Attorneys Office Management, Inc., 29 B.R. 96, 98 (Bankr. C.D. Cal. 1983).

> Section 361(1) provides that adequate protection may be provided by the trustee [or debtor-in-possession] making period[ic] cash payments to the extent of the use of the premises. Payment of net rentals by [the tenant] may be one means of providing these lessors with adequate protection. However, where the debtor has an inadequate cash flow to make sufficient periodic payments, other means of protection must be utilized.

In re Attorneys Office Management, Inc., supra, 29 B.R. at 99.

The mere allowance of an administrative priority claim for October stub rent is not adequate protection. In re Attorneys Office Management, Inc., supra, 29 B.R. at 99 ("In §361(3) it is made clear that an administrative claim under §503(b)(1) in itself will not constitute adequate protection."). Section 361(2) provides that an additional or replacement lien will suffice as a

means of adequate protection where the use of the property by the lessee results in a decrease in the value of the lessor's interests. Id. at 99.

Here, in order to provide adequate protection to Objecting Landlords, with respect to October "stub rent," Debtor should be required to either: (1) make payment on account of post-petition October rent and charges from the proceeds of post-petition sales, or (2) provide clear reserves in the Budget for post-petition October 2016 rent and charges to provide assurance of prompt payment. See In re RB Furniture, Inc., supra, 141 B.R. at 714.

As a means of adequate protection of their right to receive payment, if payment cannot be promptly made, Objecting Landlords should be granted a lien on the proceeds of the disposition of Debtor's inventory to secure the payment of post-petition occupancy costs.

As a condition to approval of Debtor's Cash Collateral Motion and proposed Budget, this Court should provide landlords, including Objecting Landlords, with adequate protection of their right to be compensated for the use and occupancy of those premises leased by Debtor and utilized in the operation of Debtor's business and disposition of Debtor's assets.

## JOINDER

To the extent not inconsistent with the foregoing, Objecting Landlords join in any opposition to Debtor's Cash Collateral Motion filed by Debtor's other shopping center landlords.

## CONCLUSION

Approval of Debtor's Cash Collateral Motion should not be construed as approval or endorsement of Debtor's approach to its post-petition lease obligations reflected in the proposed Budget. As a condition to approval of Debtor's Cash Collateral Motion and proposed Budget, this Court should provide landlords, including Objecting Landlords, with adequate protection of their

///
///
///
///
///
///

1  right to be compensated for the post-petition use and occupancy of premises leased by Debtor.

3  Dated:  November 16, 2016                ALLEN MATKINS LECK GAMBLE
                                            MALLORY & NATSIS LLP

                                            By: */s/ Thor D. McLaughlin*
                                                THOR D. McLAUGHLIN
                                                Attorneys for landlords GGP Northridge
                                                Fashion Center, LP, Glendale I Mall
                                                Associates, LP and La Cienega Partners
                                                Limited Partnership

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1023684.01/SF

-8-
LIMITED OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING USE
OF CASH COLLATERAL

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Three Embarcadero Center, 12th Floor, San Francisco, CA  94111

A true and correct copy of the foregoing document entitled (*specify*): Limited Objection to Debtor's Motion for Order Authorizing the Debtor to Use Cash Collateral; Request for Adequate Protection

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 16, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| John H Choi | johnchoi@kpcylaw.com, christinewong@kpcylaw.com |
| Dare Law | dare.law@usdoj.gov, ron.maroko@usdoj.gov |
| Juliet Y Oh | jyo@lnbrb.com, jyo@lnbrb.com |
| Ronald M Tucker | rtucker@simon.com, cmartin@simon.com; psummers@simon.com; Bankruptcy@simon.com |
| United States Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |
| Brian Huben | hubenb@ballardspahr.com |
| Dustin P. Branch | branchd@ballardspahr.com |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) November 16, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
American Express Travel Related Services Company, Inc.
c/o Becket & Lee LLP
P.O. Box 3001
Malvern, PA  19355-0701

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 16, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**Via Overnight Mail**
Honorable Sandra R. Klein
United States Bankruptcy Court - Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 16, 2016 | Cynthia D. Lynch | /s/ Cynthia D. Lynch |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**