TIMOTHY J. YOO (SBN 155531)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: tjy@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | ) Case No. 2:16-bk-23836-SK |
| | ) |
| BLUE BEE, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) **DEBTOR'S CHAPTER 11 STATUS** |
| | ) **REPORT; DECLARATION OFF JEFF** |
| | ) **SUNGHAK KIM IN SUPPORT** |
| | ) **THEREOF** |
| | ) |
| | ) <u>Status Conference:</u> |
| | ) Date:            December 22, 2016 |
| | ) Time:            8:30 a.m. |
| | ) Courtroom:    1575 |
| | ) Location:       255 E. Temple Street |
| | )                        Los Angeles, California |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

1

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE IN THIS CASE:**

Blue Bee, Inc. d/b/a ANGL, a California corporation and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby files this status report ("Status Report") in compliance with this Court's *Order: (1) Setting Status Conference; (2) Requiring Debtor-In-Possession To Appear And File Report Re: Status Of Reorganization; (3) Giving Notice Of Probable Use Of Court-Appointed Expert For Contested Valuation Requests; (4) Mandating Use Of Specific Forms By Non-Individual And Individual Debtors; And (5) Establishing Procedure For Motion For Order Approving Adequacy Of Disclosure Statement; And Motion For Order Confirming Plan* [Doc. No. 25] (the "Scheduling Order") and in advance of the Chapter 11 status conference scheduled on December 22, 2016.

**I.**

**INTRODUCTION**

The Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on October 19, 2016 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers. The Debtor currently owns and operates twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store"). Since the opening of its first Retail Store in 1992 along Melrose Avenue in Los Angeles, California, the Debtor has focused on bringing designer fashion to a wider audience.

The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim, and was dissolved on August 30,

2013.  Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.[1]  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor.   Jeff Sunghak Kim and his wife, Young Ae Kim, continue to be actively involved in the Debtor's business operations as the President and Secretary of the Debtor, respectively.

The Debtor is headquartered near downtown Los Angeles, California and currently employs a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the last seven years.  This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, has left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the

---

[1] Certain of the assets and liabilities of Angl, Inc. (a California corporation) were transferred and/or assumed by certain other affiliates, including Angl, Inc. – NV (a Nevada corporation) which operates "ANGL" retail stores in the state of Nevada, Angl, Inc. – AZ (an Arizona corporation) which operates "ANGL" retail stores in the state of Arizona, Angel In Heaven, Inc. (a California corporation) which operates "Dear Diary" retail stores, and ShopAngl.com, Inc., which operates the "ANGL" online retail business.

Retail Stores.  While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 21 Retail Stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores (particularly during the upcoming holiday season), all of which the Debtor believes will enable it to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

## II.

## INFORMATION REQUIRED BY THE SCHEDULING ORDER

**A.    Estimated Timing For Filing Of Disclosure Statement Motion And Plan Confirmation Motion.**

The Debtor's immediate focus during its Chapter 11 bankruptcy case is to maintain continuity in its retail business operations and to maximize sales at its Retail Stores during the upcoming holiday sale season (*e.g.*, Black Friday sale, pre-Christmas sale and post-Christmas sale).  In addition, the Debtor has begun the process of analyzing the financial performance of each of its twenty-one (21) Retail Stores to identify the core Retail Stores around which the Debtor can successfully reorganize.  If necessary, the Debtor will commence negotiations with its landlords to try to obtain rent concessions and/or modifications for certain of its Retail Stores.  The Debtor will

1   expeditiously close those Retail Stores which are not likely to be profitable and/or for which the

2   Debtor is unable to obtain meaningful rent concessions from the landlords.

3       The Debtor anticipates that the process of analyzing the financial performance of its Retail

4   Stores and commencing and completing any lease negotiations with its landlords will take at least

5   45-60 days (*i.e.*, through approximately the end of January, 2017).  The Debtor anticipates that it

6   will file motion(s) seeking authority to reject those leases for Retail Stores which are not

7   determined to be viable (and for which the Debtor was unable to negotiate adequate rent

8   concessions) so that such motions may be heard on or before February 16, 2017, the current

9   deadline under 11 U.S.C. § 365(d)(4) for the Debtor to assume or reject its non-residential real

10  property leases.  While the Debtor is optimistic that it will be able to complete its analysis of the

11  Retail Stores and lease negotiations with its landlords so that the Debtor can have its motion(s)

12  seeking to assume those leases for Retail Stores around which the Debtor intends to reorganize

13  heard on or before February 16, 2017, in the event that the Debtor is unable to complete such

14  analysis and lease negotiations in time, the Debtor will file a motion seeking to extend the time by

15  which the Debtor must assume its remaining leases for cause for a period of up to 90 days (*i.e.*,

16  through and including May 17, 2017), pursuant to 11 U.S.C. § 365(d)(4)(B).

17      Since the Debtor's ability to successfully formulate and pursue confirmation of a plan of

18  reorganization hinges on the completion of the Debtor's analysis and identification of the core

19  Retail Stores around which the Debtor will be able to reorganize (and negotiations with the

20  Debtor's landlords regarding the lease terms relevant to such Retail Stores), the Debtor respectfully

21  requests that the Court not set deadlines for the filing of a disclosure statement and plan of

22  reorganization (and the motions for approval and confirmation thereof) at this time, or

23  alternatively, requests that the Court establish deadlines for doing so no earlier than May 17, 2017.

24  **B.    Deadlines For Filing Proofs Of Claim And Hearings On Objections To Claims.**

25      The Debtor respectfully requests that the Court establish a deadline for creditors to file

26  proofs of claim in the Debtor's bankruptcy case ("Claims Bar Date") so that the Debtor may

27  understand the total amount and types of claims that its creditors are asserting, which claims will

28

1    ultimately need to be accounted for in any plan of reorganization formulated and filed by the

2    Debtor in this case.  The Debtor requests that the Court establish Marcy 1, 2017 as the Claims

3    Bar Date in this case so that the Debtor may provide at least sixty (60) days' written notice of the

4    Claims Bar Date to all creditors and parties in interest.

5          The Debtor anticipates that its plan of reorganization will provide for a deadline by which

6    objections to claims must be filed and, therefore, requests that the Court not establish a deadline for

7    filing objections to claims at this time.  However, if the Court requires that such a deadline be set

8    now, the Debtor respectfully requests that the deadline be set at least 120 days after the Claims Bar

9    Date.

10   **C.     Debtor's Compliance With Duties Under 11 U.S.C. §§ 521, 1106 and 1107.**

11         The Debtor believes that it is in compliance with all applicable requirements under 11

12   U.S.C. §§ 521, 1106, and 1107.  On November 1, 2016, the Court entered an order extending the

13   time for the Debtor to file its Schedules of Assets and Liabilities ("<u>Schedules</u>") and Statement of

14   Financial Affairs ("<u>SOFA</u>") to and including November 16, 2016.  On November 16, 2016, the

15   Court entered an order further extending the time for the Debtor to file its Schedules and SOFA

16   to and including November 30, 2016.  The Debtor is in the process of preparing its Schedules

17   and SOFA and anticipates that such documents will be filed with the Court on or before

18   November 30, 2016.

19         In addition, on October 31, 2016, the Debtor filed its 7-Day Package with the Office of

20   the United States Trustee (the "<u>OUST</u>").  On November 17, 2016, the Debtor filed an amended

21   version of its 7-Day Package with the OUST to include, among other documents, the declaration

22   of the Debtor in support of the 7-Day Package which had inadvertently been omitted from the

23   initial filing.

24         On November 16, 2016, the Debtor attended the Initial Debtor Interview conducted by

25   the OUST.  The Debtor will attend its Section 341(a) meeting of creditors, which is currently

26   scheduled to take place on December 2, 2016 at 9:00 a.m.

27

28

The Debtor filed its bankruptcy case on October 19, 2016. Therefore, the Debtor needs to prepare and file a Monthly Operating Report for the period in October that it was in bankruptcy (*i.e.*, October 19-31, 2016). While the Debtor has not yet filed its October, 2016 Monthly Operating Report, the Debtor anticipates that such report will be filed within the next two weeks, well in advance of the Status Conference scheduled on December 22, 2016.

**D.    Status Of Debtor's Post-Petition Operations, Cash Collateral Use, Litigation Matters And Reorganization Efforts.**

Since the Petition Date, the Debtor has continued operating its business in the normal course.

On November 1, 2016, the Court entered an order [Doc. No. 36] authorizing the Debtor to use cash collateral on an interim basis pending a final hearing to fund the Debtor's business operations and the administration of the Debtor's bankruptcy case, in accordance with that certain operating budget (the "Original Budget") which was submitted by the Debtor in support of the Debtor's cash collateral motion (the "CC Motion"). The final hearing on the Debtor's CC Motion is set for November 30, 2016 at 9:30 a.m.

On November 16, 2016, the Debtor filed a status report in advance of and in preparation of the final hearing on the CC Motion [Doc. No. 51] (the "CC Status Report"), pursuant to which the Debtor submitted a revised form of the Original Budget (the "Revised Budget"). The Revised Budget provides for, among other things, (i) the payment of "stub rent" for the Debtor's Retail Stores (*i.e.*, the rent for the post-petition "stub" period of October 19, 2016 through October 31, 2016) which was not included in the Original Budget, (ii) the expedited payment of November, 2016 and December, 2016 rents, (iii) a reduction in the aggregate rent amount for the month of January, 2017 and corresponding reduction in estimated sales revenue and related operating expenses (to account for the anticipated closure of certain of the Debtor's Retail Stores in January, 2017), and (iv) the receipt of a post-petition unsecured loan from a third party, T-Party, in the estimated sum of $50,000, which the Debtor anticipates using to purchase additional inventory to stock the Retail Stores.

1   While two separate limited objections to the final approval of the CC Motion have been

2   filed by various landlord groups, such limited objections appear to be based primarily upon the

3   fact that the Original Budget failed to provide for timely payment of November and December,

4   2016 rents and/or the payment of October stub rent.   The Debtor believes that the Revised

5   Budget submitted with the CC Status Report adequately addresses the landlords' concerns

6   regarding the timely payment of November and December, 2016 rents and the payment of

7   October stub rent, and therefore the CC Motion, as modified by the CC Status Report, should be

8   granted on a final basis.

9   All of the Debtor's pre-petition litigation matters have been stayed as a result of the filing

10  of the Debtor's Chapter 11 bankruptcy case and there is no pending post-petition litigation.

11  **E.    Electronic Filing Of Documents By Debtor's Proposed Counsel.**

12  The Debtor's bankruptcy counsel, Levene, Neale, Bender, Yoo & Brill L.L.P.

13  ("LNBYB"), has been and will continue to be filing documents in the Debtor's bankruptcy case

14  electronically via CM/ECF.

15  **F.    Employment Of Professionals By Debtor And Status Of Court Approval Of Such
16          Employment; Budget Of Estimated Professional Fees And Expenses.**

17  On October 27, 2016, the Debtor filed its application to employ LNBYB as its

18  bankruptcy counsel [Doc. No. 26].   The Court entered an order approving the Debtor's

19  application to employ LNBYB as its bankruptcy counsel on November 16, 2016 [Doc. No. 49].

20  At this early juncture in the Debtor's bankruptcy case, the Debtor cannot accurately estimate the

21  fees and expenses that will be incurred by LNBYB during the course of the Debtor's bankruptcy

22  case as the amount of fees and expenses that are ultimately incurred will be largely dependent

23  on, among other factors, (i) the extent to which LNBYB will need to assist the Debtor in its lease

24  negotiations with landlords, (ii) whether any of the Debtor's landlords object to the Debtor's

25  proposed rejection or assumption of its real property leases (and/or the cure amounts required to

26  assume any such leases) and/or any request by the Debtor to extend the time by which the Debtor

27  must assume or reject its real property leases, (iii) whether there is any objection to the Debtor's

28

request(s) to continue using cash collateral during the course of this case, (iv) the extent to which LNBYB will need to assist the Debtor in the formulation of a feasible plan of reorganization, and (v) whether there is any objection to the disclosure statement and/or objection to confirmation of the plan of reorganization ultimately proposed by the Debtor in this case.

The Debtor is currently evaluating whether it would be prudent to retain a financial advisor to assist the Debtor in this bankruptcy case.  In the event that the Debtor does move forward with the retention of a financial advisor, the Debtor will promptly file an application with the Court seeking approval of its proposed employment of such financial advisor.  While the amount of fees and expenses that are estimated to be incurred by a financial advisor in this case will depend on the specific services that such financial advisor is ultimately requested to perform for the Debtor, the Debtor anticipates that its financial advisor (if one is employed) will be assisting the Debtor in the preparation of the Debtor's Schedules and SOFA, the Debtor's Monthly Operating Reports for the months of October, 2016 and November, 2016 (with the Debtor's in-house accounting staff and principal to handle the preparation of the Monthly Operating Reports for the months thereafter), and the Debtor's analysis of the financial performance of the Retail Stores.  The Debtor estimates that the aggregate amount of fees and costs incurred by the financial advisor for the foregoing services will total approximately $25,000.  However, to the extent that the foregoing services require more time than initially anticipated and/or additional services are requested to be performed by the financial advisor, the estimated aggregate amount of fees and costs will increase correspondingly.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    The Debtor does not intend to employ any other professionals at this time. However,

2  should the foregoing change, the Debtor will promptly file applications to employ such

3  professionals with the Court.

4  Dated: November 23, 2016                    BLUE BEE, INC.

5

6

7                                            By:_____

8                                                TIMOTHY J. YOO
                                                 JULIET Y. OH
9                                                LEVENE, NEALE, BENDER, YOO
                                                   & BRILL L.L.P.
10                                               Attorneys for Debtor and
                                                 Debtor-in-Possession
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF JEFF SUNGHAK KIM

I, Jeff Sunghak Kim, hereby declare as follows:

1.      I am over 18 years of age.  I am the co-founder and President of Blue Bee, Inc., d/b/a ANGL, a California corporation and the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), and am therefore familiar with the business operations and financial books and records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.      I have access to the Debtor's books and records.  As the co-founder and President of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3.      I make this declaration in support of the Debtor's status report (the "Status Report") to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Status Report.

4.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 19, 2016 (the "Petition Date").  The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5.      The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  The Debtor currently owns and operates twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").  Since the opening of its first Retail Store in 1992 along Melrose Avenue in Los Angeles, California, the Debtor has focused on bringing designer fashion to a wider audience.

6.      The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by my wife, Young Ae Kim, and me and was dissolved on August 30, 2013. Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  Certain of the assets and liabilities of Angl, Inc. were transferred and/or assumed by certain other affiliates, including Angl, Inc. – NV (a Nevada corporation) which operates "ANGL" retail stores in the state of Nevada, Angl, Inc. – AZ (an Arizona corporation) which operates "ANGL" retail stores in the state of Arizona, Angel In Heaven, Inc. (a California corporation) which operates "Dear Diary" retail stores, and ShopAngl.com, Inc., which operates the "ANGL" online retail business.  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor. My wife, Young Ae Kim, and I continue to be actively involved in the Debtor's business operations as the Secretary and President of the Debtor, respectively.

7.      The Debtor is headquartered near downtown Los Angeles, California and currently employs a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

8.      After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the last seven years.  This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

9.      The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, has left the Debtor with insufficient liquidity to

meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores.  While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 21 Retail Stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

10.    Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores (particularly during the upcoming holiday season), all of which I believe will enable the Debtor to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

11.    The Debtor's immediate focus during its Chapter 11 bankruptcy case is to maintain continuity in its retail business operations and to maximize sales at its Retail Stores during the upcoming holiday sale season (*e.g.*, Black Friday sale, pre-Christmas sale and post-Christmas sale).  In addition, the Debtor has begun the process of analyzing the financial performance of each of its twenty-one (21) Retail Stores to identify the core Retail Stores around which the Debtor can successfully reorganize.  If necessary, the Debtor will commence negotiations with its landlords to try to obtain rent concessions and/or modifications for certain of its Retail Stores.  The Debtor will expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords.

12.     I anticipate that the process of analyzing the financial performance of the Debtor's Retail Stores and commencing and completing any lease negotiations with its landlords will take at least 45-60 days (*i.e.*, through approximately the end of January, 2017).  I anticipate that the Debtor will file motion(s) seeking authority to reject those leases for Retail Stores which are not determined to be viable (and for which the Debtor was unable to negotiate adequate rent concessions) so that such motions may be heard on or before February 16, 2017, which I am advised and believe is the current deadline under the Bankruptcy Code for the Debtor to assume or reject its non-residential real property leases.  While I am optimistic that the Debtor will be able to complete its analysis of the Retail Stores and lease negotiations with its landlords so that the Debtor can have its motion(s) seeking to assume those leases for Retail Stores around which the Debtor intends to reorganize heard on or before February 16, 2017, in the event that the Debtor is unable to complete such analysis and lease negotiations in time, the Debtor will file a motion seeking to extend the time by which the Debtor must assume its remaining leases for cause for a period of up to 90 days (*i.e.*, through and including May 17, 2017).

13.     I believe the Debtor's ability to successfully formulate and pursue confirmation of a plan of reorganization hinges on the completion of the Debtor's analysis and identification of the core Retail Stores around which the Debtor will be able to reorganize (and negotiations with the Debtor's landlords regarding the lease terms relevant to such Retail Stores).

14.     I believe it is important that the Court establish a deadline for creditors to file proofs of claim in the Debtor's bankruptcy case ("Claims Bar Date") so that the Debtor may understand the total amount and types of claims that its creditors are asserting, which claims will ultimately need to be accounted for in any plan of reorganization formulated and filed by the Debtor in this case.

15.     I understand and believe that any plan of reorganization proposed by the Debtor will provide for a deadline by which objections to claims must be filed.  However, if the Court requires that such a deadline be set now, the Debtor respectfully requests that the deadline be set at least 120 days after the Claims Bar Date.

16. I believe that the Debtor is in compliance with all applicable requirements under the Bankruptcy Code. I am advised and believe that, on November 1, 2016, the Court entered an order extending the time for the Debtor to file its Schedules of Assets and Liabilities ("Schedules") and Statement of Financial Affairs ("SOFA") to and including November 16, 2016. I am further advised and believe that, on November 16, 2016, the Court entered an order further extending the time for the Debtor to file its Schedules and SOFA to and including November 30, 2016. The Debtor is in the process of preparing its Schedules and SOFA and I anticipate that such documents will be filed with the Court on or before November 30, 2016.

17. On October 31, 2016, the Debtor filed its 7-Day Package with the Office of the United States Trustee (the "OUST"). On November 17, 2016, the Debtor filed an amended version of its 7-Day Package with the OUST to include, among other documents, the declaration of the Debtor in support of the 7-Day Package which had inadvertently been omitted from the initial filing.

18. On November 16, 2016, the Debtor's in-house accountant, Julie Kim, attended the Initial Debtor Interview conducted by the OUST.

19. I will be attending the Debtor's Section 341(a) meeting of creditors, which is currently scheduled to take place on December 2, 2016 at 9:00 a.m.

20. The Debtor is in the process of preparing its Monthly Operating Report for the period in October that it was in bankruptcy (*i.e.*, October 19-31, 2016). While the Debtor has not yet filed its October, 2016 Monthly Operating Report, I anticipate that such report will be filed within the next two weeks, well in advance of the Status Conference scheduled on December 22, 2016.

21. Since the Petition Date, the Debtor has continued operating its business in the normal course.

22. I am advised and believe that, on November 1, 2016, the Court entered an order authorizing the Debtor to use cash collateral on an interim basis pending a final hearing to fund the Debtor's business operations and the administration of the Debtor's bankruptcy case, in accordance

1    with that certain operating budget (the "Original Budget") which was submitted by the Debtor in

2    support of the Debtor's cash collateral motion (the "CC Motion"). I am advised and believe that

3    the final hearing on the Debtor's CC Motion is set for November 30, 2016 at 9:30 a.m.

4         23.    On November 16, 2016, the Debtor filed a status report in advance of and in

5    preparation of the final hearing on the CC Motion (the "CC Status Report"), pursuant to which the

6    Debtor submitted a revised form of the Original Budget (the "Revised Budget"). The Revised

7    Budget provides for, among other things, (i) the payment of "stub rent" for the Debtor's Retail

8    Stores (*i.e.*, the rent for the post-petition "stub" period of October 19, 2016 through October 31,

9    2016) which was not included in the Original Budget, (ii) the expedited payment of November,

10   2016 and December, 2016 rents, (iii) a reduction in the aggregate rent amount for the month of

11   January, 2017 and corresponding reduction in estimated sales revenue and related operating

12   expenses (to account for the anticipated closure of certain of the Debtor's Retail Stores in January,

13   2017), and (iv) the receipt of a post-petition unsecured loan from a third party, T-Party, in the

14   estimated sum of $50,000, which I anticipate the Debtor will be using to purchase additional

15   inventory to stock the Retail Stores.

16        24.    I understand that two separate limited objections to the final approval of the CC

17   Motion have been filed by various landlord groups, both of which appear to be based primarily

18   upon the fact that the Original Budget failed to provide for timely payment of November and

19   December, 2016 rents and/or the payment of October stub rent. I believe that the Revised Budget

20   submitted with the CC Status Report adequately addresses the landlords' concerns regarding the

21   timely payment of November and December, 2016 rents and the payment of October stub rent.

22        25.    To the best of my knowledge, all of the Debtor's pre-petition litigation matters have

23   been stayed as a result of the filing of the Debtor's Chapter 11 bankruptcy case and there is no

24   pending post-petition litigation.

25        26.    I am advised and believe that the Debtor's bankruptcy counsel, Levene, Neale,

26   Bender, Yoo & Brill L.L.P. ("LNBYB"), has been and will continue to be filing documents in the

27   Debtor's bankruptcy case electronically via CM/ECF.

28

27.    On October 27, 2016, the Debtor filed its application to employ LNBYB as its bankruptcy counsel.  I am advised and believe that the Court entered an order approving the Debtor's application to employ LNBYB as its bankruptcy counsel on November 16, 2016.

28.    At this early juncture in the Debtor's bankruptcy case, neither the Debtor nor LNBYB can accurately estimate the fees and expenses that will be incurred by LNBYB during the course of the Debtor's bankruptcy case as I understand that the amount of fees and expenses that are ultimately incurred will be largely dependent on, among other factors, (i) the extent to which LNBYB will need to assist the Debtor in its lease negotiations with landlords, (ii) whether any of the Debtor's landlords object to the Debtor's proposed rejection or assumption of its real property leases (and/or the cure amounts required to assume any such leases) and/or any request by the Debtor to extend the time by which the Debtor must assume or reject its real property leases, (iii) whether there is any objection to the Debtor's request(s) to continue using cash collateral during the course of this case, (iv) the extent to which LNBYB will need to assist the Debtor in the formulation of a feasible plan of reorganization, and (v) whether there is any objection to the disclosure statement and/or objection to confirmation of the plan of reorganization ultimately proposed by the Debtor in this case.

29.    The Debtor is currently evaluating whether it would be prudent to retain a financial advisor to assist the Debtor in this bankruptcy case.  In the event that the Debtor does move forward with the retention of a financial advisor, the Debtor will promptly file an application with the Court seeking approval of its proposed employment of such financial advisor.

30.    While the amount of fees and expenses that are estimated to be incurred by a financial advisor in this case will depend on the specific services that such financial advisor is ultimately requested to perform for the Debtor, I anticipate that the financial advisor (if one is employed) will be assisting the Debtor in the preparation of the Debtor's Schedules and SOFA, the Debtor's Monthly Operating Reports for the months of October, 2016 and November, 2016 (with the Debtor's in-house accounting staff and principal to handle the preparation of the Monthly Operating Reports for the months thereafter), and the Debtor's analysis of the financial

1  performance of the Retail Stores.  I estimate that the aggregate amount of fees and costs incurred

2  by the financial advisor for the foregoing services will total approximately $25,000.  However, to

3  the extent that the foregoing services require more time than initially anticipated and/or additional

4  services are requested to be performed by the financial advisor, the estimated aggregate amount of

5  fees and costs will increase correspondingly.

6      31.      The Debtor does not intend to employ any other professionals at this time.

7  However, should the foregoing change, the Debtor will promptly file applications to employ such

8  professionals with the Court.

9      I declare under penalty of perjury that the foregoing is true and correct.

10      Executed this 23rd day of November, 2016, at Los Angeles, California.

11

12

13      Jeff Sunghak Kim

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S CHAPTER 11 STATUS REPORT; DECLARATION OFF JEFF SUNGHAK KIM IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 23, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Dustin P Branch    branchd@ballardspahr.com,
  carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **Lynn Brown    notices@becket-lee.com**
- **John H Choi    johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com**
- **Dare Law    dare.law@usdoj.gov, ron.maroko@usdoj.gov**
- **Thor D McLaughlin    tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ronald M Tucker    rtucker@simon.com,
  cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

**2. SERVED BY UNITED STATES MAIL**: On **November 23, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 23, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Served via Attorney Service*
The Honorable Sandra R. Klein
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 23, 2016 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Blue Bee, Inc.
Top 20, Secured Creditors, OUST, RSN

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Brian D. Huben
Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018

*Counsel to Caribbean Queen Inc.*
Law Offices of Jacqueline N. Anker
27 W Anapamu, Suite 325
Santa Barbara, CA 93101

*Counsel to Macerich Cerritos LLC*
David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367