1  TIMOTHY J. YOO (SBN 155531)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
   Email: tjy@lnbyb.com, jyo@lnbyb.com
5
6  Attorneys for Chapter 11 Debtor and
   Debtor-in-Possession
7
8              **UNITED STATES BANKRUPTCY COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10             **LOS ANGELES DIVISION**
11
12

| | |
|---|---|
| In re | Case No. 2:16-bk-23836-SK |
| BLUE BEE, INC. d/b/a ANGL,<br>a California corporation, | Chapter 11 |
| Debtor. | **APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY FORCE TEN PARTNERS LLC AS FINANCIAL ADVISOR TO DEBTOR PURSUANT TO 11 U.S.C. §§ 327 AND 330; DECLARATION OF ADAM MEISLIK IN SUPPORT THEREOF**<br><br>[No Hearing Required – Local Bankruptcy Rule 2014-1(b)] |

1    Blue Bee, Inc. d/b/a ANGL, the debtor and debtor-in-possession in the above-captioned

2  Chapter 11 bankruptcy case (the "Debtor") hereby submits this application (the "Application")

3  for Court approval of its employment of Force Ten Partners LLC d/b/a Force 10 ("Force 10"),

4  as its financial advisor, effective as of November 15, 2016, upon the terms and conditions

5  described below.  In support of this Application, the Debtor respectfully represents as follows:

6  **A.**    **Background.**

7    1.    The Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§

8  101 *et seq.* (the "Bankruptcy Code") on October 19, 2016 (the "Petition Date").  The Debtor is

9  continuing to operate its business, manage its financial affairs and operate its bankruptcy estate

10  as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

11    2.    The Debtor is a retailer doing business under the "ANGL" brand offering stylish

12  and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  The

13  Debtor currently owns and operates twenty-one (21) retail stores located primarily in shopping

14  malls throughout the state of California (collectively, the "Retail Stores," and individually, a

15  "Retail Store").  Since the opening of its first Retail Store in 1992 along Melrose Avenue in

16  Los Angeles, California, the Debtor has focused on bringing designer fashion to a wider

17  audience.

18    3.    The Debtor is the successor-in-interest to Angl, Inc., a California corporation,

19  which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim, and was dissolved on

20  August 30, 2013.  Substantially all of the assets of Angl, Inc. were transferred to, and

21  substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed

22  on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  The

23  same corporate directors and officers of Angl, Inc. have acted as the corporate directors and

24  officers of the Debtor.  Jeff Sunghak Kim and his wife, Young Ae Kim, continue to be actively

25  involved in the Debtor's business operations as the President and Secretary of the Debtor,

26  respectively.

27

28

4.      The Debtor is headquartered near downtown Los Angeles, California and currently employs a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

5.      After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the last seven years.  This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

6.      The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, has left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores.  While the Debtor has already closed a number of its less profitable retail store locations, leaving open approximately 21 Retail Stores as of the Petition Date, the Debtor requires time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

7.      Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain

1    meaningful rent concessions from the landlords, to identify and implement reasonable cost

2    cutting measures and to maximize the value of the Debtor's inventory by continuing its retail

3    operations at the Retail Stores (particularly during the upcoming holiday season), all of which

4    the Debtor believes will enable it to formulate and pursue confirmation of a plan of

5    reorganization which allows the Debtor to restructure its existing debt in a cohesive and

6    efficient manner while continuing to operate its longstanding business.

7    **B.**      <u>**Employment Of A Financial Advisor And The Proposed Terms Thereof**</u>

8          8.      The Debtor requires the services of a financial advisory firm to render the

9    following types of professional services within the context of its pending Chapter 11 case:

10              a.      assist in the preparation of the Debtor's Schedules of Assets and

11          Liabilities and Statement of Financial Affairs;

12              b.      review the Debtor's monthly operating reports and provide assistance in

13          the preparation of such monthly operating reports, as necessary and requested by the

14          Debtor;

15              c.      evaluate the Debtor's business operations and financial performance,

16          including, without limitation, the financial performance of each of the Debtor's Retail

17          Stores, and provide recommendations to improve profitability;

18              d.      assist in the preparation of cash flow projections to be used in

19          connection with the Debtor's requests for authority to use cash collateral and/or

20          proposed plan(s) of reorganization, as requested by the Debtor;

21              e.      provide expert testimony in support of the Debtor's requests for

22          authority to use cash collateral and/or proposed plan(s) of reorganization, if required

23          and/or requested by the Debtor; and

24              f.      provide such other financial advisory services as may be requested by

25          the Debtor and mutually agreed to by the Debtor and Force 10.

26          9.      The Debtor has decided that Force 10 is the ideal financial advisory firm to

27    assist the Debtor, taking into account Force 10's reputation, experience (particularly in Chapter

28    11 bankruptcy cases), skill level, and cost. The Debtor believes that Force 10 possesses the

resources and qualifications to provide the financial advisory services contemplated herein in an efficient and cost-effective manner.  The Debtor seeks to employ Force 10 as its financial advisor, at the expense of the Debtor's bankruptcy estate, and to have the Debtor's employment of Force 10 be deemed effective as of November 15, 2016.

10.    Force 10 is an advisory firm specializing in corporate restructuring, challenged businesses and litigation, which works extensively with its clients and the legal community to maximize value for its clients and their creditors and stakeholders.  Force 10's professionals have substantial experience with, and therefore thoroughly understand, the Chapter 11 bankruptcy process, and focus on providing advisory services to clients through complex corporate restructurings, both in and outside of bankruptcy.  The Debtor expects that Adam Meislik, Brian Weiss and Chad Kurtz will be the professionals at Force 10 primarily responsible for providing financial advisory services to the Debtor in this case.  True and correct copies of the professional biographies of the foregoing professionals are collectively attached as **Exhibit "B"** to the Declaration of Adam Meislik (the "Meislik Declaration") annexed hereto.

11.    The Debtor seeks to employ Force 10 under the terms and conditions set forth in a written engagement agreement between the Debtor and Force 10 (the "Engagement Agreement"), in substantially the form attached as **Exhibit "A"** to the Meislik Declaration annexed hereto.  In summary, the Engagement Agreement provides that:

    a.    Force 10 shall be compensated on an hourly basis at its standard hourly billing rates, which range from $195 – $650 depending on the specific skills, abilities and experience represented by each professional.  The foregoing hourly billing rates are revised periodically in the ordinary course of Force 10's business.

    b.    Force 10 shall be entitled to reimbursement of its reasonable out-of-pocket expenses incurred in connection with its representation of the Debtor, including, without limitation, expenses related to travel, lodging, duplicating, computer research, messenger, postage/delivery and telephone/fax services.

      c.     The Engagement Agreement and Force 10's retention as financial advisor to the Debtor may be terminated at any time, for any reason, by either party in its sole discretion.

12.    Force 10 has not been paid a retainer or any other monies by the Debtor or any other entity in connection with its proposed representation of the Debtor in this bankruptcy case. Force 10 has not received any lien or other interest in property of the Debtor or of a third party to secure payment of Force 10's fees or expenses incurred in this bankruptcy case.

13.    Force 10 will seek Court authority to be paid from the Debtor's estate for any and all fees incurred and expenses advanced by Force 10. Force 10 recognizes that the payment of any such fees and expenses will be subject to further Court order after notice and a hearing pursuant to 11 U.S.C. § 330.

14.    Force 10 understands the provisions of 11 U.S.C. §§ 327, 330 and 331 which require, among other things, Court approval of the Debtor's employment of Force 10 and of all fees and reimbursement of expenses that Force 10 will receive from the Debtor and the Debtor's estate.

**C.**    **Disclosures Pursuant To Rule 2014 Of The Federal Rules Of Bankruptcy Procedure.**

15.    As noted above, Force 10 has not received any lien or other interest in property of the Debtor or of a third party to secure payment of Force 10's fees or expenses incurred in this case.

16.    Force 10 has not shared or agreed to share its compensation for representing the Debtor with any other person or entity, except among its members.

17.    Force 10 will be maintaining time sheets and billing records in connection with its representation of the Debtor, and Force 10 will provide monthly billing statements to the Debtor that will set forth the amount of fees and expenses incurred by Force 10 during the previous month.

18.    Force 10 is not a creditor, an equity security holder or an insider of the Debtor.

19.     Force 10 does not have any previous connection with any insider of the Debtor or any insider of an insider of the Debtor.

20.     Force 10 is not and was not an investment banker for any outstanding security of the Debtor.  Force 10 has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

21.     Neither Force 10 nor any member of Force 10 is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

22.     As set forth in the Meislik Declaration annexed hereto, to the best of Mr. Meislik's knowledge, Force 10 does not hold or represent any interest materially adverse to the interest of the Debtor's estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

23.     As set forth in the Meislik Declaration annexed hereto, to the best of Mr. Meislik's knowledge, Force 10 does not hold or represent any interest adverse to the Debtor or the Debtor's estate, and Force 10 is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.  Although Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor in this case, has worked with Force 10 on other matters which are unrelated to the case herein, the Debtor and Force 10 respectfully submit that the professional relationship between LNBYB and Force 10 in connection with other unrelated matters should not preclude the Debtor's employment of Force 10 in this case as both LNBYB and Force 10 will be able to represent the Debtor in a professional and unbiased manner.  Other than as set forth herein, to the best of Mr. Meislik's knowledge, Force 10 has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

1    24.    The Debtor believes that its employment of Force 10 upon the terms and

2  conditions set forth above is in the best interests of the Debtor's estate.

3    25.    A true and correct copy of the Notice of this Application, which was filed and

4  served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached as **Exhibit "C"** to

5  the Meislik Declaration annexed hereto.

6    **WHEREFORE**, the Debtor respectfully requests that the Court approve the Debtor's

7  employment of Force 10 as its financial advisor, effective as of November 15, 2016, upon the

8  terms and conditions set forth above.

9  Dated: December 15̲4, 2016          BLUE BEE, INC.

10

11

12                                     By:    JEFF SUNGHAK KIM
                                             Its:  President
13

14  Submitted by:

15  LEVENE, NEALE, BENDER, YOO
       & BRILL, L.L.P.

16

17

18  By:_____

19       TIMOTHY J. YOO
         JULIET Y. OH

20  Attorneys for Chapter 11 Debtor and Debtor-in-Possession

21

22

23

24

25

26

27

28

## **DECLARATION OF ADAM MEISLIK**

I, Adam Meislik, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am a Co-Founder and Partner of Force Ten Partners LLC d/b/a Force 10 ("Force 10"), which maintains a business office located at 20341 SW Birch, Suite 220, Newport Beach, California 92660.

3.      Force 10 is an advisory firm specializing in corporate restructuring, challenged businesses and litigation, which works extensively with its clients and the legal community to maximize value for its clients and their creditors and stakeholders.  Force 10's professionals have substantial experience with, and therefore thoroughly understand, the Chapter 11 bankruptcy process, and focus on providing advisory services to clients through complex corporate restructurings, both in and outside of bankruptcy.  I expect that Brian Weiss, Chad Kurtz and I will be the professionals at Force 10 primarily responsible for providing financial advisory services to the Debtor in its Chapter 11 bankruptcy case.  True and correct copies of the professional biographies of the foregoing professionals are collectively attached as **Exhibit "B"** hereto.

4.      Blue Bee, Inc. d/b/a ANGL, the debtor and debtor-in-possession herein (the "Debtor"), has requested that Force 10 serve as its financial advisor in connection with its pending Chapter 11 bankruptcy case.  Force 10 has agreed to represent the Debtor in such capacity, subject to the approval of the Bankruptcy Court.

5.      The Debtor seeks to employ Force 10 under the terms and conditions set forth in a written engagement agreement between the Debtor and Force 10 (the "Engagement Agreement"), in substantially the form attached as **Exhibit "A"** hereto.  In summary, the Engagement Agreement provides that:

a.      Force 10 shall be compensated on an hourly basis at its standard hourly billing rates, which range from $195 – $650 depending on the specific skills, abilities

and experience represented by each professional.  The foregoing hourly billing rates are revised periodically in the ordinary course of Force 10's business.

     b.     Force 10 shall be entitled to reimbursement of its reasonable out-of-pocket expenses incurred in connection with its representation of the Debtor, including, without limitation, expenses related to travel, lodging, duplicating, computer research, messenger, postage/delivery and telephone/fax services.

     c.     The Engagement Agreement and Force 10's retention as financial advisor to the Debtor may be terminated at any time, for any reason, by either party in its sole discretion.

6.     Force 10 has not been paid a retainer or any other monies by the Debtor or any other entity in connection with its proposed representation of the Debtor in its bankruptcy case. Force 10 has not received any lien or other interest in property of the Debtor or of a third party to secure payment of Force 10's fees or expenses incurred in the Debtor's bankruptcy case.

7.     Force 10 will seek Court authority to be paid from the Debtor's estate for any and all fees incurred and expenses advanced by Force 10.  Force 10 recognizes that the payment of any such fees and expenses will be subject to further Court order after notice and a hearing pursuant to 11 U.S.C. § 330.

8.     Force 10 will be maintaining time sheets and billing records in connection with its representation of the Debtor, and Force 10 will provide monthly billing statements to the Debtor that will set forth the amount of fees and expenses incurred by Force 10 during the previous month.

9.     I understand the provisions of 11 U.S.C. §§ 327, 330 and 331 which require, among other things, Court approval of the Debtor's employment of Force 10 and of all fees and reimbursement of expenses that Force 10 will receive from the Debtor and the Debtor's estate.

10.     Force 10 has not shared or agreed to share its compensation for representing the Debtor with any other person or entity, except among its members.

11.     Force 10 is not a creditor, an equity security holder or an insider of the Debtor.

12. Force 10 does not have any previous connection with any insider of the Debtor or any insider of an insider of the Debtor.

13. Force 10 is not and was not an investment banker for any outstanding security of the Debtor. Force 10 has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

14. Neither Force 10 nor any member of Force 10 is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

15. To the best of my knowledge, Force 10 does not hold or represent any interest materially adverse to the interest of the Debtor's estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

16. To the best of my knowledge, Force 10 does not hold or represent any interest adverse to the Debtor or the Debtor's estate, and Force 10 is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code. Although Force 10 has worked with Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor, on other matters which are unrelated to the Debtor's case, I do not believe that the professional relationship between LNBYB and Force 10 in connection with other unrelated matters should preclude the Debtor's employment of Force 10 in this case as I believe both LNBYB and Force 10 will be able to represent the Debtor in a professional and unbiased manner. Other than as set forth herein, to the best of my knowledge, Force 10 has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

17. I believe that the Debtor's proposed employment of Force 10 upon the terms and conditions set forth above and in the Engagement Agreement is in the best interests of the Debtor's bankruptcy estate.

18.    A true and correct copy of the Notice of this Application, which I am advised and believe was filed and served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached hereto as **Exhibit "C"**.

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 14th day of December, 2016, at Newport Beach, California.

Adam Meislik, Declarant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

[Engagement Agreement]

# FORCE 10
### P A R T N E R S

20341 SW Birch, Suite 220
Newport Beach CA 92660
W: force10partners.com
Ph: (949) 357-2360

November 9, 2016

Jeff Sunghak Kim
Blue Bee, Inc., Debtor in Possession
2301 E 51st St.
Vernon, CA 90058-2812

RE: Blue Bee, Inc. Chapter 11 Financial Advisory

Dear Mr. Kim:

Thank you for choosing Force 10 Partners LLC ("Force 10") to provide financial advisory services in support of your Chapter 11 proceedings. This letter is to confirm our engagement to provide professional services to Blue Bee, Inc. (the "Debtor").

*Scope of Services*

Financial Advisory Services:

- Assist in the preparation of bankruptcy schedules and the Statement of Financial Affairs;
- Review monthly operating reports, provide training and assistance to the Debtor, as necessary and requested by the Debtor;
- Analyze the Debtor's current revenue, operations and cost structure, and provide recommendations to improve profitability;
- Assist in the preparation of cash flow projections to be used in cash collateral orders and proposed plans of reorganization;
- Support the Debtor's efforts to restructure;
- Provide expert testimony, if required, in support of the Debtor's legal proceedings; and
- Other services mutually agreed upon by the Debtor and Force 10.

*Information*

The Debtor agrees to furnish to Force 10 such information as Force 10 reasonably requests in connection with the performance of its services hereunder (all such information provided is referred to herein as the "Information"). The Debtor agrees that Force 10, in performing its services hereunder, will use and rely upon the Information without assuming any responsibility for independent investigation or verification thereof. Accordingly, Force 10 shall be entitled to assume and rely upon the accuracy and completeness of all such Information. Force 10 will assume that any forecasts and projections have been reasonably prepared and reflect the best currently available estimates and judgments of the management of the Debtor or its other professionals, as the case may be, as to the matters covered thereby.

Force 10 agrees that any non-public information relating to the Debtor received by Force 10 from or at the direction or request of the Debtor will be used by Force 10 solely for the purpose of performing its services hereunder and that Force 10 will maintain the confidentiality thereof except to the extent (a) such information is or becomes otherwise publicly available without breach of this agreement; (b) disclosure

thereof is required by law or requested by any governmental agency or body (including through a subpoena or other valid legal process); or (c) Force 10 discloses such information to a party that is bound by a confidentiality agreement acceptable to the Debtor.

*Compensation*

Our professional fees will be based on the number of hours worked at our standard hourly billing rates set forth below. Hourly rates for the professionals that might be involved in this matter are set out below:

| | |
|---|---|
| Adam Meislik, Partner | $650 |
| Brian Weiss, Partner | $450 |
| Chad Kurtz, Director | $325 |
| Other Staff and Professionals | $195 – $325 |

Invoices for such services, including reimbursable costs and expenses, will be provided to the Debtor at the end of each calendar month-end or other logical points in time. These invoices will describe the time spent by each Force 10 team member for the time-period the service was rendered. In addition to fees paid to Force 10, the Debtor will pay for reasonable out of pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, computer research, messenger, postage/delivery and telephone/fax services.

*Professional Fee Payment Priority*

The Debtor will make a good faith effort to obtain a carve-out from its secured lienholders to pay professional fees. Force 10 understands its invoices will only be paid according to the terms of a court order.

*Governing Law*

The laws of the State of California shall govern this Agreement and any controversy arising under it.

*Termination*

This agreement may be terminated immediately, by either party, in its sole discretion, for any reason. Upon termination, Force 10 is entitled to all expenses incurred under this agreement and the remaining unpaid balance of any professional fees.



*Conclusion*

If this letter correctly sets forth our agreement on the matters covered herein, please so indicate by signing and returning a copy of this letter to Force 10 via email to ameislik@force10partners.com.

The preceding has been read, understood, accepted and approved, and the undersigned hereby agrees to retain Force 10 in agreement with the terms and provisions contained herein.


Agreed and Accepted:


_____

Jeff Sunghak Kim
Blue Bee, Inc.
Date:

_____

Adam Meislik
Force 10 Partners LLC
Date:  11/23/16


FORCE 10₃
PARTNERS

# EXHIBIT "B"

[Professional Biographies]

# ADAM MEISLIK

949-357-2359                                          ameislik@force10partners.com

## OVERVIEW

Mr. Meislik leverages his accomplished career, spanning nearly twenty-five years in restructuring and corporate finance, into various roles for his clients, including Financial Advisor, Investment Banker, CRO, Fiduciary and Expert Witness. His clients have run the gamut, including companies, bank lenders and other secured and unsecured creditors, buyers, sellers, bankruptcy counsel and litigators, all in the context of workouts, insolvency proceedings, fund raising, M&A, and litigation. He provides expert testimony concerning transactions, feasibility, intangible/intellectual assets, valuation, solvency, and reasonably equivalent value issues.

Mr. Meislik combines lateral thinking and a proactive approach with a careful understanding of businesses beyond the financials -- evaluating and identifying advantage, assessing competitive environments, and industry trends. Having a holistic view of a company and its market enables him to derive non-obvious and effective solutions.

Mr. Meislik has a proven record of peak performance in advising, structuring, and executing in excess of 100 mergers, acquisitions, capital transactions restructurings, and litigation support assignments.

## PROFESSIONAL EXPERIENCE

FORCE TEN PARTNERS LLC, Newport Beach, CA                    June 2016-Present
Partner

GLASSRATNER, Irvine, CA                                      June 2012 – June 2016
Co-President and Chief Compliance Officer – GlassRatner Securities LLC
Senior Managing Director
- Team leader focusing on corporate finance, M&A, valuation, solvency, liquidity, strategy and personnel, in and out of bankruptcy as both an advisor and Expert Witness.

XROADS SOLUTIONS GROUPS, LLC, Santa Ana, California          Mar. 2009 – May 2012
Principal
- Team leader in corporate restructuring group focusing on corporate finance, valuation, solvency, liquidity, strategy and personnel, in and out of bankruptcy.
- Lead all aspects of engagements through entire lifecycle: lead generation, retention, case management, strategy and execution.

SALEM PARTNERS LLC, Los Angeles, California                  Oct. 2006 – Dec. 2007
Managing Director, Investment Banking
- Responsible for firm's technology vertical.  Provide advise to emerging growth technology companies on capital formation and business combinations.
- Revamped internal business processes and technology systems.
- Attracted and hired junior investment banking staff.

CIBC WORLD MARKETS, California & Texas                       1996 – 2006
Consultant, Investment Banking                               2005 – 2006
- Advised $250-million-revenue vertically focused software and services firm on business combination.

ADAM MEISLIK

## PROFESSIONAL EXPERIENCE, *continued*

Executive Director, Investment Banking (San Francisco)                    *2000 – 2005*
- Oversaw all aspects of business and transactional development for firm, generating new clients and revenue on a consistent basis.
- Participated in managing day-to-day operations of software group, ensuring superior delivery of investment banking and advisory services to sophisticated and high-standards clients.
- Presented as firm and transaction-team leader to chief executives and CFOs of leading public and private companies at all stages of representation, from initial contact to final closing of transaction.

Executive Director, Investment Banking (San Francisco)                    *2000 – 2005*
- Determined and negotiated fees with clients.
- Developed strategic direction and vision for firm's executive management.
- Executed and negotiated on merger, acquisition, divestiture and restructuring transactions and projects in an involved and fully engaged capacity.
- Recruited, trained and motivated highly efficient professional staff, leveraging the best talent and maximizing effectiveness of firm's expertise and capabilities.
- Provided counsel and advice to senior management and boards of directors on a range of valuation, fairness and transactional matters.

Director, Investment Banking - Houston Energy Group                    1996 – 2000
- Recruited by *Oppenheimer & Company* to help establish and develop energy practice, oversee key aspects of business and transactional development, and generate new clients and revenue streams for firm.

JEFFERIES & COMPANY, INC., Houston, Texas                    1993 – 1995
Associate, Corporate Finance - Energy
- Provided financial advisory services to energy sector clients for full service investment bank and institutional securities firm focusing on mid-cap and high-growth companies.
- Structured numerous public and private debt and equity offerings for oil and gas exploration, production and service companies.
- Performed comprehensive and rigorous analysis on all transactions using cash-flow projections, valuations, financing and business combination scenarios.

## BOARD MEMBERSHIPS

- EVANTIX, a Governance, Risk and Compliance software company (previous)
- SENDIO, an email security provider
- LATERAL DATA, an e-discovery software and services company (previous)
- Origin Oil, a publicly traded bio-fuels technology provider (previous)

## EDUCATION

TULANE UNIVERSITY, FREEMAN SCHOOL OF BUSINESS, New Orleans, Louisiana
***Bachelor of Science in Management,*** 1993
- Majored in Finance

## SECURITIES LICENSES

- FINRA 62, 63, 79 & 24

# ADAM MEISLIK

949-357-2359                                              ameislik@force10partners.com

## REPRESENTATIVE ENGAGEMENTS

- Receiver for Professional Healthcare Billing Services, LLC, a California limited liability company, Professional Healthcare Billing Services, LLC, a Virginia limited liability company, Professional Healthcare Billing Services, LLC, a Wyoming limited liability company, and TreFratelli, LLC, a Wyoming limited liability company. Case No. 8:14-bk-12328-MW, Adv. No. 8:16-ap-01104-MW in California Central District Bankruptcy Court.

- Delaware Chancery Court Receiver for AirFastTickets, Inc., a Delaware corporation with subsidiaries in Greece, Germany and the UK. Responsible party, Debtor in Possession, (1:15-bk-11951) in New York Southern District Bankruptcy Court.

- Financial Advisor and Investment Banker to United Prosperity Group, Debtor in Possession. Chapter 11 case #3:15-bk-30897 in California Northern District Bankruptcy Court.

- Expert Witness for Background Images, Inc., Debtor in Possession. Chapter 11 case #2:15-bk-25957 in California Central District Bankruptcy Court.

- Financial advisor and Expert Witness to Debtor Aletheia Research and Management, Inc. regarding solvency and fraudulent transfer disputes in numerous adversary proceedings. Chapter 7 case #2:12-bk-47718 in California Central Bankruptcy Court.

- Expert Witness in California Superior Court: American Master Lease, LLC v. Idanta Partners, LTD. on valuation and profit disgorgement issues.

- Expert Witness to Debtor Composite Technology Corporation regarding solvency and avoidance actions.  Chapter 11 case 8:11-bk-15058 in California Central Bankruptcy Court.

- Financial advisor and Expert Witness to secured creditor WR Investments (Woori Bank) in re: Chapter 11 case No.: 6:12-bk-13094-MJ United States Bankruptcy Court, Central District of California.  Provided numerous analytical declarations on plan feasibility and in-court testimony.

- Financial advisor and Expert Witness to Debtor in Possession Internet Specialties West in re: Chapter 11 case No.: 1:12-BK-20897-GM.  Provided numerous analytical declarations regarding valuation, solvency and testimony by deposition and financial advisor in Section 363 sale.

- Expert Witness to Plaintiff Alder Capital Partners, et al. v. Susquehanna Financial Group, L.P. Case No. CGC-09-492589, Superior Court of California, County of San Francisco.

- Expert Witness for Plaintiff in re: Signal Hill Service, Inc., et al. v. Macquarie Bank Limited. Case No. CV11-01539-MMM-(JEMx), United States District Court, Central District of California, Western Division.

- Financial advisor to unsecured creditors' committee in Chapter 11 proceeding regarding preference payments to insiders and solvency issues.

- As Expert Witness for Defendant, provided opinion, court and deposition testimony in re: enterprise value, solvency, access to capital and the value of individual securities in regards to litigation arising from a restructuring.  Robert Meister, et al., Plaintiffs, v. Duane Mensinger, Extraview Corporation, et al., Defendants. Superior Court of the State of California for the County of Santa Cruz.

**ADAM MEISLIK**                                                                          Page 2

### REPRESENTATIVE ENGAGEMENTS, *continued*

- Lead investor in acquisition of Evantix, an Orange County-based software and services company via CA Assignment for the Benefit of Creditors. Sold Evantix to Optiv, Inc.

- Financial Advisor in the Chapter 11 restructuring and Section 363 sale of a California-based Software and Services company (Cyberdefender).

- Chief Restructuring Officer and Financial Advisor to Chapter 11 Debtor in the Ambulatory Surgery Center business (Renaissance Surgical Arts).

- Financial Advisor to Unsecured Creditors Committee in the Chapter 11 of a Florida-based furniture retailer (Carl's Furniture).

- Financial Advisor to Unsecured Creditors Committee in the Chapter 11 of a Texas-based ethanol producer.

- Financial Advisor to top three US-based bank (JPM Chase) in their role as secured creditor in a refinery bankruptcy

- Financial advisor to Chapter 11 Debtor in Possession in the after-market automotive and licensed consumer good industries (Trade Union).

- Turnaround advisory for Israeli-headquartered Plasson at their Houston-based subsidiary.

- Restructuring and refinancing of Personnel Plus, a temporary staffing firm.

- Financial advisor to Schwab Healthcare Services and VantagePoint Venture Partners in Section 363 bid for Lifemasters.

- Advisor to Ambassadors Intl. on their out-of-court restructuring and other liquidity issues.

- Organized and participated in venture investment in 3Tera, a grid operating system company.  Acted in business development role and created sales workflows and contracts while negotiating and securing initial customers and partners.

- Conducted two transactions in the Business Process Management (BPM) sector representing a buyer and a seller.  Devised for large Business Intelligence software vendor the strategic rationale of buying a BPM vendor while providing access to almost every participant in the space to conduct due diligence.  Evaluated numerous *CIBC* business opportunities in the BPM space and advised against many commitments that subsequently failed.

- Structured proprietary unregistered common stock purchases by *CIBC* for both *Peregrine Systems* and *Chordiant Software* for working capital purposes, which included a hedge to lock-in firm profit at execution.

- Executed sale of *Corel Software* to *Vector Capital* for $124 million, a 42% premium over unaffected trading price.

- Steered Israel-based information security company, *Aladdin Knowledge Systems,* through $50-million follow-on offering, overcoming challenges of need to renew U.S. investor sponsorship as well as devising a new marketing strategy.  Crafted much of the registration statement content for the deal, subsequently adopted wholesale by lead underwriter, ushering the transaction through *CIBC* committee and ensuring successful completion by adding value to overall process resulting in increasing *CIBC's* economics.

**ADAM MEISLIK**                                                                                    Page 3

## REPRESENTATIVE ENGAGEMENTS, *continued*

- Won a senior co-manager slot for *CIBC* in the $40-million IPO for *Kintera*, one of the first software-as-a-service vendors to go public with mission-critical need for fresh views on valuation and marketing.

- Participated in *CIBC's* acquisition of the *Accenture Technology Ventures* software portfolio, conducting due diligence, recommending assigned values and setting forth liquidity opportunities as well as strategic and capital-markets advice to portfolio of over 60 companies.

- Sold corporate performance management software vendor *ABC Technologies* to *SAS* for $35 million.

- Secured *CIBC's* participation in the *Peregrine Systems* IPO.

- Sold an emerging intrusion detection software company to another privately held security software company.

- Advised *Connected*, a data integrity software provider, on strategic alternatives.

- Advised large equity sponsor on bid for large EDI provider.

- Engineered and executed sale of emerging intrusion detection software company to another privately held security software company.

- Conducted numerous transactions in the energy software space over a period of five years with *CIBC*, participating in most of the industry's transactions and landing three equity offerings and three M&A deals by demonstrating knowledge of both the technology and the energy vertical as well as through sharing knowledge and insights by educating colleagues.

- Co-managed $66-million IPO for energy software and strategic services firm *Caminus Corporation.*

- Sold *Novistar* to *Petroleum Place* for $24 million.

- Sold *Altra Energy Technologies* to *Caminus* for $85 million.

- Served on Fund Committee of *Nth Power*, a large energy technology fund, helping evaluate *CIBC* investments in the space.

- Served as sole U.S. co-manager for Korean-based online games company *Gravity Interactive* for $108-million IPO, leading the relationship and execution by demonstrating knowledge and reach in the games space while illustrating *CIBC's* U.S. distribution capabilities.

- Led U.S. firm-wide relationship and execution of IPO for China-based online games company, *The9*, distributor of Chinese *World of Warcraft*® multiplayer online game, winning the business along with *CIBC's* Hong Kong capital markets group to steer deal through U.S. committee by determining and articulating the investment opportunity and devising overall IPO marketing strategy.

- Continuously evaluated prospects and strategic alternatives for *CIBC* portfolio company, *Wild Tangent*.

**ADAM MEISLIK**                                                                    Page 4

## REPRESENTATIVE ENGAGEMENTS, *continued*

- On teams that lead-managed two senior note offerings for *TransTexas Gas Corporation* totaling $1.3 billion*, and senior note offerings for *Gothic Energy Corporation* ($100 million) and *TransAmerican Refining Corporation* ($440 million).

- Co-managed $40-million follow-on common stock offering for *Magnum Hunter Resources,* $627-million follow-on offering for *Tosco Corporation,* $206-million unit offering for *Cornerstone Propane Partners*, and $115-million convertible debt offering for *Swift Energy Company*.

- Lead-managed two follow-on common equity offerings for *Midcoast Energy Resources* totaling $84 million*, and follow-on common equity offerings for *Chieftain International* ($55 million)*, Tejas Gas Corporation* ($108 million), *Basic Petroleum International* ($30 million), *TransTexas Gas Corporation* ($55 million) and *Input/Output Corporation* ($26 million).

- Led IPOs for *TransTexas Gas Corporation (*$70 million), *Continental Natural Gas Corporation* ($26 million) and *PetroCorp Incorporated* ($31 million).

- Other transactions include: $235-million senior note offering for *Gothic Energy Corporation* (co-manager), $125-million senior note offering for *Queen Sand Resources* (co-lead manager), $245-million debt and equity financing for *Heritage Propane Partners* (co-lead manager), $16-million follow-on common stock offering for *Empire District Electric Company,* and a $240-million debt offering for *Tosco Corporation* (co-manager).

- Rendered as sole advisor fairness opinions to *TransTexas Gas Corporation*, and to *National Energy Group* in connection with its acquisition of *Alexander Energy.*

- Served as advisor to *Alexander Energy* in connection with merger with *American Natural Energy.*

- Advised *CRC-Evans* on sale to *LG&E*, and *Computalog Ltd* on sale to *Precision Drilling.*

- Advised *Eagle Geophysical* in connection with restructuring.

- Served as take-over defense advisor to *Kelman Technologies.*

- Advised on the sale of *Continental Natural Gas Corporation* to *CMS Energy.*

- Undertook $238-million financial advisory assignment for *Gothic Energy Corporation*.

- Advised on 1992 Recapitalization of *Global Marine,* and to *Phibro* on divestiture.

**<u>Brian Weiss, CPA, MBA</u>**

Brian Weiss is a founder of Force 10 Partners, LLC.  Mr. Weiss specializes in advising public and private companies with complex transactions including business restructurings/bankruptcies, serving as a turnaround manager/Chief Restructuring Officer/Liquidating Trustee, and consults on complex SEC and GAAP issues.

**Experience**
Prior to founding Force 10 Partners, Mr. Weiss was the founder and principal of BSW & Associates from 2006 to 2016.  Mr. Weiss served as Vice President of Finance, North America for Tomy Co. Ltd. with worldwide revenues in excess of $1 billion.  Mr. Weiss successfully led the financial turnaround of the North America business unit, prior to its merger with its largest competitor.  Mr. Weiss served as Financial Controller for Jazz Semiconductor, a spin-off of Conexant Systems' semiconductor manufacturing operations through a joint venture with The Carlyle Group.  Mr. Weiss was responsible for preparing the company for an initial public offering, leading the acquisition due diligence process, structuring joint ventures/strategic investments, oversight of all finance, accounting and reporting functions as well as the company-wide implementation of the Sarbanes-Oxley Act.

Mr. Weiss also served in senior finance capacities for Avamar Technologies (acquired by EMC Corporation) and Flashcom, Inc. At Flashcom, Mr. Weiss was responsible for preparing for the company for an initial public offering, financial planning, lead the due diligence process for proposed strategic transactions and managing the accounting department.  Mr. Weiss was also previously employed at PricewaterhouseCoopers LLP.

**Education & Professional Certifications**
·   Certified Public Accountant (Active)
·   MBA from University of Southern California
·   Bachelor's Degree in Business, Major in Accounting, San Diego State University

**<u>Select Completed Engagements</u>**

·   Star Ribs LLP / Breckenridge Food Systems (20+ debtors in total) - (Central District – Santa Ana Division) Chief Restructuring Officer - Privately-held restaurant franchisee operating over 110 locations under several franchised concepts and in excess of 25 real property parcels.  Successfully restructured multiple businesses, sold certain restaurants and real properties, and confirmed 3 of 3 separate Plans of Reorganization.
·   Company Confidential – (Central District – Santa Ana Division) – BSWA served as the Financial Advisor to the sole shareholder.  The Debtor, a franchisee of in excess of 40 casual dining franchises, retained BSWA to replace its prior financial advisor in order to restore credibility with the Official Committee of Unsecured Creditors and defend against a motion to appoint a trustee.  BSWA developed a bankruptcy exit strategy, provided financial and operational restructuring services resulting in the Debtor securing $13.5 million in "exiting financing", and successfully confirmed a Plan of Reorganization.  BSWA also managed the claims process involving numerous landlord and lease rejection claims.
·   E.M. Thomas Management – (Central District – Riverside Division) - Financial Advisor to Debtor.  The Reorganized Debtor and related entities own and operate 20 Kentucky Fried Chicken Franchises located in Riverside and Los Angeles counties.  Developed and confirmed a Plan of Reorganization.
·   Desert Restaurant Ventures & Arcadia Restaurant Ventures – (Central District – Santa Ana) - Financial Advisor to Debtor.  The Reorganized Debtor and related entities own and operate 16 Burger King Franchises located in Orange and Los Angeles counties.  Developed and confirmed a Plan of Reorganization for each debtor.

- Company Confidential – BSWA provided out of court operating and financial restructuring services to the owner of 32 Burger King Franchises located in Southern California.
- Company Confidential – BSWA provided out of court financial restructuring services including assist the shareholders with the sale of 16 Burger King Franchises located in Central California.
- Bankruptcy Consulting Services – provided bankruptcy filing support and reporting services to a 500-unit restaurant franchisor.
- Crystal Cathedral Ministries – (Central District – Santa Ana Division) - Financial Advisor to the Official Creditors' Committee. Developed and confirmed a "Committee" Plan of Reorganization whereby creditors owed in excess of $50 million were repaid in full plus a surplus existed for continuing operations.
- Bacchus Development – (Central District – Santa Ana Division) - Chief Restructuring Officer – Real estate developer with a constructed portfolio of 50 commercial owner-user office buildings and over $70M in senior secured debt. Successfully developed and confirmed a Plan of Reorganization and subsequent post-confirmation sale of the underlying real property.
- Internet Specialties West, Inc. (Central District – Woodland Hills Division) – BSWA served as both the Chief Restructuring Officer and Restructuring Consultant.  ISW owned and operated two data center/colocation facilities in Ventura County, CA.  As a result of Mr. Weiss being appointed as Chief Restructuring Officer, the Debtor requested the Receiver who had a pending sale of the business to be removed.  Turnover was granted and a new sales process was run by Mr. Weiss, which resulted in a sale of all of the assets at 150% of the price which the Receiver was previously proposing.  A Plan of Reorganization was confirmed which approved a sale of the business resulting in a 100% payout to creditors with a $3 million surplus.
- La Reina, Inc. - (Central District – Los Angeles Division) - Financial Advisor to La Reina - Family-Owned Manufacturer of Mexican Food Products.  Successfully restructured the business, developed bidding procedures and sold the company through a confirmed Plan of Reorganization.
- Composite Technology Corporation - (Central District – Santa Ana Division) – Chief Restructuring Officer – Retained subsequent to the sale of the business in order to investigate claims against the directors and officers, pursue multi-million-dollar escrow account, negotiate resolution to multi-million disputes, pursue preference actions, and resolve creditors' claims and conflicts amongst the Committee, Senior Lender and the Debtor.  These efforts resulted in the confirmation of a Joint Plan of Liquidation, including the repayment of approximately $11 million in secured debt, repayment of all priority claims and a substantial distribution to unsecured creditors.  Mr. Weiss also served as the Plan Agent.
- Walldesign Incorporated - (Central District – Santa Ana Division) – Chief Restructuring Officer and Financial Advisor.  Walldesign was largest residential drywall, paint and plaster contractor in the Western United States.  As the Chief Restructuring Officer and Financial Advisor, Mr. Weiss assessed the business's near and long-term prospects and viability and then developed a comprehensive wind-down strategy in order to maximize the potential return to creditors. These efforts resulted in the confirmation of a Joint Plan of Liquidation.  Mr. Weiss was also appointed the Liquidation Trustee responsible for pursuing approximately $23 million in avoidance actions against third parties and the owner of the Debtor.
- RCR Plumbing & Mechanical – (Central District – Riverside Division) - Financial Advisor to the Debtor.  RCR was largest residential and multi-family plumbing contractor in the Western United States.  Developed and confirmed a Liquidating Plan of Reorganization whereby priority creditors were repaid and a distribution to general unsecured creditors was made.
- W/C Imports, a subsidiary of Waterford Wedgewood PLC - (Central District – Santa Ana Division) – Initially retained as Financial Advisors to Debtor, then served as Chief Restructuring Officer. Assessed the probability to successfully restructure the business, developed bid procedures then sold the assets via a 363 sale, allowing for the full repayment to the secured lender, priority creditors and a distribution to the Unsecured Creditors.  Subsequent to the sale, served as Chief Restructuring Officer and pursued litigation against a former officer and also pursued preference actions, resulting in the senior lender being paid in full and permitting a distribution to the General Unsecured Creditors.

- Advisor to the Board of Directors - Publicly-traded provider of entertainment services to the hospitality industry. Developed a recapitalization plan with numerous investors that restructured $22.5 million of convertible debt and equity into a new class of security allowing a follow-on investment.  Developed strategies for working with creditors and led negotiations with all parties-in-interest.
- Privately-held company providing digital entertainment services to the hospitality industry with in excess of $50 million of invested capital. Worked closely with the company's board of directors, investors and CEO to develop operational, strategic and financial plans including the abolishment of the prior industry stand "broken" business model. Worked with the senior lenders to structure a follow-on investment by a new? Or the same? lender and existing investor.  Developed strategies for working with creditors including leading negotiations.
- Privately-held broadband services company with over 60,000 subscribers and approximately $120 million in invested capital.  Led the process of selling key assets, assisted with pursuing litigation claims to maximize return to creditors and winding down of the company.
- Privately-held broadband services provided subscribers. Managed the estate including the sale of assets, preparing monthly operating reports, identify avoidance actions, and wind-down of the company.
- Privately-held aircraft maintenance company adversely impacted by economic downturn within the industry.  Led the analysis of the cost structure, facility rationalization and business model.  Led negotiations with creditors to avoid filing bankruptcy, thereby maximizing the return to the creditors and ensuring continuity of the business.

HOME (/#HOME-SECTION)    (/#OVERVIEW-SECTION)

SERVICES (/#OUR-SERVICES-SECTION)

TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)

CONTACT (/#CONTACT-US-SECTION)

# CHAD KURTZ

Office: (917) 514-6500
Email: ckurtz@force10partners.com (Mailto: ckurtz@force10partners.com)

Chad specializes in insolvency matters, buy and sell side M&A transactions, and complex modeling/financial analysis. Chad works closely with clients to develop cash collateral forecasts, analyze and improve business operations/cost structures, prepare bankruptcy compliance forms, develop bankruptcy plan projections, and analyze creditor claims. Prior to joining Force 10, Chad worked at BSW & Associates. Chad also spent 10 years at Ernst & Young LLP, including serving as a Director in its Corporate Finance practice, where he led restructuring advisory engagements. In that capacity, Chad has represented debtors, secured lenders, and creditors' committees, advising on businesses that ranged from start-ups to Fortune 500 companies. He started his career with Ernst & Young's Audit department in New York City and ultimately transferred to the Los Angeles office, where he helped lead the West Coast restructuring group that was part of the Corporate Finance practice.

Chad received his MBA from New York University, Stern School of Business and his bachelor's degree from Williams College, and he is a CPA (inactive).

BACK TO TEAM (/#TEAM-SECTION)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"

[Notice of Application]

1  TIMOTHY J. YOO (SBN 155531)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
4  Email: tjy@lnbyb.com, jyo@lnbyb.com

5
   Attorneys for Chapter 11 Debtor and
6  Debtor-in-Possession

7

8                 UNITED STATES BANKRUPTCY COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                    LOS ANGELES DIVISION

11

12

13  In re                                )  Case No. 2:16-bk-23836-SK
                                         )
14  BLUE BEE, INC. d/b/a ANGL,           )  Chapter 11
    a California corporation,            )
15                                       )
                  Debtor.                )
16                                       )  **NOTICE OF APPLICATION OF**
                                         )  **DEBTOR AND DEBTOR-IN-**
17                                       )  **POSSESSION TO EMPLOY FORCE**
                                         )  **TEN PARTNERS LLC AS FINANCIAL**
18                                       )  **ADVISOR TO DEBTOR PURSUANT**
                                         )  **TO 11 U.S.C. §§ 327 AND 330**
19                                       )
                                         )  [No Hearing Required – Local Bankruptcy
20                                       )  Rule 2014-1(b)]
                                         )
21                                       )
                                         )
22                                       )
                                         )
23                                       )
                                         )
24                                       )
                                         )
25                                       )
                                         )
26  _____ )

27

28

**PLEASE TAKE NOTICE** that Blue Bee, Inc. d/b/a ANGL, the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), has filed an application (the "Application") for Court approval of its employment of Force Ten Partners LLC d/b/a Force 10 ("Force 10") as its financial advisor in connection with its bankruptcy case, effective as of November 15, 2016, and upon the terms and conditions set forth in the Application and that certain written engagement agreement between the Debtor and Force 10 (the "Engagement Agreement"), in substantially the form attached as Exhibit "A" to the Declaration of Adam Meislik annexed to the Application .

**PLEASE TAKE FURTHER NOTICE** that the Debtor seeks to employ Force 10 as its financial advisor to render the following types of professional services within the context of its pending Chapter 11 case:

- assist in the preparation of the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs;

- review the Debtor's monthly operating reports and provide assistance in the preparation of such monthly operating reports, as necessary and requested by the Debtor;

- evaluate the Debtor's business operations and financial performance, including, without limitation, the financial performance of each of the Debtor's Retail Stores, and provide recommendations to improve profitability;

- assist in the preparation of cash flow projections to be used in connection with the Debtor's requests for authority to use cash collateral and/or proposed plan(s) of reorganization, as requested by the Debtor;

- provide expert testimony in support of the Debtor's requests for authority to use cash collateral and/or proposed plan(s) of reorganization, if required and/or requested by the Debtor; and

- provide such other financial advisory services as may be requested by the Debtor and mutually agreed to by the Debtor and Force 10.

**PLEASE TAKE FURTHER NOTICE** that Force 10 will bill its time for its representation of the Debtor on an hourly basis in accordance with Force 10's standard hourly billing rates, and will seek reimbursement of its reasonable out-of-pocket expenses incurred in connection with its representation of the Debtor, including, without limitation, expenses related to travel, lodging, duplicating, computer research, messenger, postage/delivery and telephone/fax services.

**PLEASE TAKE FURTHER NOTICE** that Force 10 has not been paid a retainer or any other monies by the Debtor or any other entity in connection with its proposed representation of the Debtor in this bankruptcy case. Force 10 has not received any lien or other interest in property of the Debtor or of a third party to secure payment of Force 10's fees or expenses incurred in this bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that, to the best of Force 10's knowledge and based upon the Declaration of Adam Meislik submitted in support of the Application, Force 10 and all professionals associated with Force 10 who expect to render services in the Debtor's case are "disinterested persons" as that term is defined in Section 101(14) of the Bankruptcy Code, do not hold or represent an interest adverse to the Debtor's estate and, other than as set forth herein, do not have any connections with the Debtor, creditors of the Debtor, or any other party in interest in the Debtor's case, or each of their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee. Although Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), bankruptcy counsel to the Debtor in this case, has worked with Force 10 on other matters which are unrelated to the case herein, Force 10 respectfully submits that its professional relationship with LNBYB in connection with other unrelated matters should not preclude the Debtor's employment of Force 10 in this case as both LNBYB and Force 10 will be able to represent the Debtor in a professional and unbiased manner.

**PLEASE TAKE FURTHER NOTICE** that any request for a copy of the Application must be made in writing to Levene, Neale, Bender, Yoo & Brill L.L.P., 10250 Constellation

3

1  Blvd., Suite 1700, Los Angeles, California 90067, Attention: Juliet Y. Oh, Tel: (310) 229-

2  1234, Fax: (310) 229-1244, Email: JYO@LNBYB.com.

3       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule

4  2014-1(b)(3)(E), any objection to and request for a hearing on the Application, in the form

5  required by Local Bankruptcy Rule 9013-1(f)(1), must be filed and served on the Debtor,

6  LNBYB and the Office of the United States Trustee within fourteen (14) days after the date

7  of service of this Notice plus three (3) additional days if served by mail, electronically, or

8  pursuant to Rule 5(b)(2)(D), (E), or (F) of the Federal Rules of Civil Procedure and Rule

9  9006 of the Federal Rules of Bankruptcy Procedure.

10       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule

11  2014-1(b)(4), if no objection and request for a hearing on the Application is timely filed and

12  served, the Debtor will promptly lodge a proposed order approving the Application.

13  Dated: December 15, 2016          BLUE BEE, INC.

14

15

16                      By:_____

17                            TIMOTHY J. YOO
                          JULIET Y. OH

18                            LEVENE, NEALE, BENDER, YOO
                             & BRILL L.L.P.

19                            Attorneys for Debtor and
                          Debtor-in-Possession

20

21

22

23

24

25

26

27

28

Case 2:16-bk-23836-SK    Doc 70    Filed 12/15/16    Entered 12/15/16 14:56:57    Desc
Main Document    Page 33 of 34

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO EMPLOY FORCE TEN PARTNERS LLC AS FINANCIAL ADVISOR TO DEBTOR PURSUANT TO 11 U.S.C. §§ 327 AND 330; DECLARATION OF ADAM MEISLIK IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 15, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Marc Andrews    bankruptcycls@wellsfargo.com, andrewma@wellsfargo.com**
- **Dustin P Branch    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **Lynn Brown    notices@becket-lee.com**
- **John H Choi    johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com**
- **Dare Law    dare.law@usdoj.gov**
- **Thor D McLaughlin    tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ronald M Tucker    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Michael A Wallin    mwallin@slaterhersey.com, mrivera@slaterhersey.com**

**2. SERVED BY UNITED STATES MAIL**: On **December 15, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 15, 2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

1

***Served via Attorney Service***
The Honorable Sandra R. Klein
2  United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
3  255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is
5  true and correct.

6

| December 15, 2016 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**