TIMOTHY J. YOO (SBN 155531)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: tjy@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:16-bk-23836-SK |
| BLUE BEE, INC. d/b/a ANGL, a California corporation, | ) Chapter 11 |
| Debtor. | ) **NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING DEBTOR'S EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFF SUNGHAK KIM IN SUPPORT THEREOF** |
| | ) [No Hearing Required Unless Requested – Local Bankruptcy Rule 9013-1(o)] |

1

**PLEASE TAKE NOTICE** that Blue Bee, Inc. d/b/a ANGL, the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "<u>Debtor</u>"), hereby submits this motion (the "<u>Motion</u>") for the entry of an order extending the Debtor's exclusive periods to file a plan of reorganization ("<u>Plan</u>") and obtain acceptances thereof pursuant to 11 U.S.C. § 1121(d).

The Debtor's exclusive periods to file a Plan and obtain acceptances thereof under Bankruptcy Code § 1121(d) will expire on February 16, 2017 and April 17, 2017, respectively. By this Motion, and for the reasons set forth in the Memorandum of Points and Authorities annexed hereto, the Debtor seeks an order extending the exclusive periods to file a Plan and obtain acceptances thereof for approximately ninety (90) days, to and including May 17, 2017 and July 17, 2017, respectively. The Debtor seeks the foregoing extensions without prejudice to its right to seek further extensions of its exclusivity periods.

The Debtor filed its voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") on October 19, 2016 (the "<u>Petition Date</u>"). The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers. As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "<u>Retail Stores</u>," and individually, a "<u>Retail Store</u>").

The Debtor submits that "cause" exists to extend its exclusive periods to file a Plan and to obtain acceptances thereof in this case. Given the retail nature of the Debtor's business, the future of many, if not all, of the Debtor's Retail Stores and the Debtor's ultimate reorganization strategy in this case hinge upon the Debtor's evaluation of the Retail Stores and negotiations with its landlords. While the Debtor has begun to undertake the process of evaluating the financial performance of its Retail Stores and negotiating with its landlords for rent concessions and other lease modifications, the Debtor does not believe it will be able to complete such evaluation and negotiations, and then formulate and file a Plan, within its current exclusive period for filing a Plan (which will expire on February 16, 2017, unless extended). Furthermore, to formulate a Plan that is feasible, the Debtor requires additional time to evaluate the post-

holiday sales performance of the Retail Stores, to allow the proposed claims bar date (which the Debtor has requested that the Court establish as March 31, 2017)[1] to pass, and to carefully analyze the amount, validity, and extent of the claims asserted against the Debtor which must be addressed in the Plan.

The Motion is based upon this Notice of Motion and Motion, 11 U.S.C. § 1121, Local Bankruptcy Rule 9013-1, the accompanying Memorandum of Points and Authorities and the Declaration of Jeff Sunghak Kim attached thereto, the entire record in the Debtor's case, and any other evidence properly presented to the Court in support of the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(o)(1), any response to or request for hearing on the Motion must be filed with the Court and served on counsel for the Debtor and the United States Trustee within fourteen (14) days after the date of service of this Notice, plus 3 additional days if the Notice was served by mail, electronically, or pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), (E), or (F).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely response to and/or request for hearing on the Motion may be deemed by the Court to constitute consent to the relief requested in the Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(1)    granting the Motion in its entirety;

(2)    extending the Debtor's exclusive periods to file a Plan and obtain acceptances thereof for approximately ninety (90) days, to and including May 17, 2017 and July 17, 2017, respectively, without prejudice to the Debtor's right to seek further extensions of such periods; and

/ / /

/ / /

/ / /

---

[1] The Debtor filed a motion on January 6, 2017 requesting that the Court establish a claims bar date of March 31, 2017 in the Debtor's bankruptcy case. *See* Docket No. 91.

1    (3)    granting such other and further relief as the Court deems just and proper.

2   Dated:  January 17, 2017                    BLUE BEE, INC.

3

4

5                                              By:_____

6                                                 TIMOTHY J. YOO
                                                  JULIET Y. OH
7                                                 LEVENE, NEALE, BENDER, YOO
                                                      & BRILL L.L.P.
8                                                 Attorneys for Debtor and
                                                  Debtor in Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Background.**

1.       On October 19, 2016 (the "Petition Date"), Blue Bee, Inc., a California corporation d/b/a ANGL and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.       The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers. As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

3.       The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim, and was dissolved on August 30, 2013. Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes. The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor. Jeff Sunghak Kim and his wife, Young Ae Kim, continue to be actively involved in the Debtor's business operations as the President and Secretary of the Debtor, respectively.

4.       The Debtor is headquartered near downtown Los Angeles, California and currently employs a workforce of approximately 110 employees. In 2015, the Debtor generated annual gross revenues of more than $24 million.

5.       After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015. The

1   vast majority of these new retail stores (approximately 43 stores) were opened within the last seven

2   years.  This large expansion effort, which was conducted within a relatively compressed period of

3   time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole

4   as it incurred construction and other "start up" costs with the opening of each new store as well as a

5   significant increase in operating expenses typically associated with a retail store chain operation.

6          6.       The high cost of expansion combined with decreasing store sales as a result of a

7   general industry-wide shift in consumer shopping preferences from in-store to online shopping,

8   and the increased competition arising therefrom, left the Debtor with insufficient liquidity to meet

9   all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords

10  and vendors.  As a result of the Debtor's defaults, numerous landlords commenced actions to evict

11  the Debtor and/or terminate the Debtor's lease agreements for certain of its Retail Stores.  While

12  the Debtor had already closed a number of its less profitable retail store locations, leaving open

13  approximately 21 Retail Stores as of the Petition Date, the Debtor required time to evaluate the

14  viability of its remaining Retail Stores and identify other ways to decrease operational costs and

15  increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to

16  have an opportunity to restructure its business and financial affairs and ultimately reorganize, the

17  Debtor filed this Chapter 11 bankruptcy case.

18         7.       Through its bankruptcy case, the Debtor intends to identify the core Retail Stores

19  around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores

20  which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful

21  rent concessions from the landlords, to identify and implement reasonable cost cutting measures

22  and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail

23  Stores, all of which the Debtor believes will enable it to formulate and pursue confirmation of a

24  plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and

25  efficient manner while continuing to operate its longstanding business.

26  ///

27  ///

28

**B.    Post-Petition Business Operations And Case Administration.**

8.    Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "First CC Motion") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "Initial Budget").   On November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing which was set for November 30, 2016 at 9:30 a.m. (the "Interim Order").

9.    On November 16, 2016, the Debtor filed a status report in advance of the final hearing on the First CC Motion, pursuant to which the Debtor submitted a revised version of the Initial Budget (the "Revised Initial Budget").

10.    On December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with the Revised Initial Budget, subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "Final Order," and together with the Interim Order, the "First CC Orders").

11.    Pursuant to the First CC Orders, the Debtor has been using its cash collateral in accordance with the Revised Initial Budget to operate its business.

12.    The Debtor's authority to use cash collateral pursuant to the First CC Orders will expire on or about January 21, 2017.   Accordingly, on December 29, 2016, the Debtor filed a motion [Doc. No. 79] (the "Second CC Motion"), pursuant to which the Debtor seeks an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from January 22, 2017 through and including April 22, 2017.  The hearing on the Second CC Motion is currently set for January 19, 2017 at 8:30 a.m.

13.    On January 6, 2017, the Debtor filed a motion requesting that the Court establish March 31, 2017 as the bar date (the "Claims Bar Date") by which parties who wish to assert pre-petition claims against, and interests in, the Debtor must file and serve proofs of claim or proofs of

1  interest in the Debtor's bankruptcy case [Doc. No. 91].  The foregoing motion is currently still

2  pending Court approval.

3  **C.**    **The Need For An Extension Of The Debtor's Exclusive Periods To File A Plan And**

4        **Obtain Acceptances Thereof.**

5        14.    Given the retail nature of the Debtor's business, the future of many, if not all, of the

6  Debtor's Retail Stores and the Debtor's ultimate reorganization strategy in this case hinge upon the

7  Debtor's evaluation of the Retail Stores and negotiations with its landlords.

8        15.    The Debtor has begun performing a detailed store-by-store analysis of its 21 Retail

9  Stores to determine which of the Retail Stores are profitable (or potentially profitable if rent

10  concessions can be successfully negotiated) and which of the Retail Stores are not profitable and

11  therefore must be closed on an expeditious basis.  The Debtor has also begun negotiations with

12  certain of its landlords to try to obtain rent concessions which would reduce rent to a level that

13  would render currently underperforming Retail Stores profitable.

14        16.    In connection with its analysis of the Retail Stores, the Debtor has already identified

15  seven (7) Retail Stores which the Debtor believes are unprofitable, unless meaningful rent

16  concessions can be negotiated with the respective landlords.  Accordingly, on December 29, 2016,

17  the Debtor filed a motion [Doc. No. 81] (the "Lease Rejection Motion"), pursuant to which the

18  Debtor seeks authority to reject some or all of the 7 Retail Stores identified in the Lease Rejection

19  Motion (collectively, the "Potentially Rejected Leases").  The hearing on the Lease Rejection

20  Motion is set for January 19, 2017 at 8:30 a.m.

21        17.    Other than the seven (7) Potentially Rejected Leases identified in the Lease

22  Rejection Motion, there are a total of fourteen (14) other unexpired real property leases for the

23  Debtor's remaining Retail Stores (collectively, the "Remaining Leases").  While the Debtor has

24  begun to undertake the process of evaluating the financial performance of the remaining Retail

25  Stores which are the subject of the Remaining Leases, and has begun approaching the landlords of

26  such Retail Stores to negotiate rent concessions and other lease modifications, the Debtor requires

27

28

additional time to complete its evaluation of the Remaining Leases and negotiations with its landlords.

18.    Pursuant to 11 U.S.C. § 1121(d), the Debtor's exclusive periods to file a Plan and obtain acceptances thereof will expire on February 16, 2017 and April 17, 2017, respectively.

19.    The Debtor does not believe it will be able to complete its evaluation of the Remaining Leases and conclude its negotiations with the landlords under the Remaining Leases, both of which necessarily must be done before the Debtor can formulate the terms of a feasible plan of reorganization ("Plan"), within the Debtor's current exclusive period for filing a Plan (which, as noted above, will expire on February 16, 2017, unless extended).

20.    Furthermore, to develop financial projections in support of a Plan which are both accurate and feasible, the Debtor requires additional time to evaluate the post-holiday sales performance of its Retail Stores.

21.    In addition, the Debtor requires additional time to allow the proposed Claims Bar Date (which the Debtor has requested that the Court establish as March 31, 2017) to pass so that the Debtor may carefully analyze the amount, validity, and extent of the claims asserted against the Debtor and formulate Plan terms which are feasible and fully address the universe of claims asserted against it in this case.

22.    Given the issues discussed above, the Debtor believes it would be premature to file a Plan at this time.  A premature Plan will likely lead to further delays in the plan confirmation process and will serve only to increase the administrative costs of this case as any Plan filed now would likely need to be amended or modified.

23.    Accordingly, by this Motion, the Debtor seeks an order extending its exclusive periods to file a Plan and obtain acceptances thereof for approximately ninety (90) days, to and including May 17, 2017 and July 17, 2017, respectively.  The Debtor seeks the foregoing extensions without prejudice to its right to seek further extensions of exclusivity.

/ / /

/ / /

## II.

## DISCUSSION

**A.    The Court Has Authority To Extend The Debtor's Exclusive Periods To File A Plan Of Reorganization And Obtain Acceptances Thereof.**

Pursuant to Sections 1121(b) and (c)(3) of the Bankruptcy Code, a chapter 11 debtor has the exclusive right, for a period of 120 days following the filing of the petition, to file a plan of reorganization, and to thereafter obtain acceptances to any plan so filed for a period of an additional 60 days.

Section 1121(d) of the Bankruptcy Code allows the Court to extend or reduce these time periods for cause.  Section 1121(d) provides, in pertinent part, as follows:

> (d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period [exclusivity period for filing a plan of reorganization] or the 180-day period [exclusivity period for obtaining acceptances of the plan] referred to in this section.
>
>    (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
>    (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d)(1) and (2).

The decision of whether to grant a request to extend or shorten the exclusivity periods lies within the sound discretion of the bankruptcy judge.  *In re AmKo Plastics, Inc.,* 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996); *In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 409 (Bankr. E.D.N.Y. 1989).  The "cause" standard referred to in Section 1121 has been referred to as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization proceedings."  *In re Public Service Company of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988).

The Bankruptcy Code does not define "cause" or establish formal criteria for extensions

of the exclusivity periods. Consistent with a balanced, integrated approach to reorganizations under chapter 11, Congress contemplated that bankruptcy courts would apply the exclusivity provisions flexibly so as to promote the orderly, consensual and successful reorganization of a debtor's affairs. *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) [hereinafter "House Report"]. Appropriate "cause" justifying extensions of the exclusivity periods should be interpreted in the context of the overall purposes of chapter 11 and the means Congress established for accomplishing them. Congress recognized that a debtor must have a reasonable time to formulate and negotiate a plan of reorganization. Denying a debtor an exclusive period to propose and confirm a plan could dissuade a debtor from choosing chapter 11 and encourage creditors to act unilaterally. House Report at 231-32. *See also, In re Pine Run Trust, Inc.*, 67 B.R. 432, 434 (Bankr. E.D. Pa. 1936) (exclusivity determinations should balance creditor and debtor interests in favor of reorganization).

The Debtor respectfully submits that good cause exists to extend the Debtor's plan exclusivity periods as requested herein. Given the retail nature of the Debtor's business, the future of many, if not all, of the Debtor's Retail Stores and the Debtor's ultimate reorganization strategy in this case hinge upon the Debtor's evaluation of the Retail Stores and negotiations with its landlords. While the Debtor has begun to undertake the process of evaluating the financial performance of its Retail Stores and negotiating with its landlords for rent concessions and other lease modifications, the Debtor does not believe it will be able to complete such evaluation and negotiations, and then formulate and file a Plan, within its current exclusive period for filing a Plan (*i.e.,* by February 16, 2017). Furthermore, to formulate a Plan that is feasible and prepare accurate financial projections in support of such Plan, the Debtor requires additional time to evaluate the post-holiday sales performance of its Retail Stores, to allow the proposed Claims Bar Date (*i.e.*, March 31, 2017) to pass, and to carefully analyze the amount, validity, and extent of the claims asserted against the Debtor which will need to be addressed in the Plan.

Given the foregoing issues, the Debtor believes it would be premature to file a Plan at this time.  A premature Plan will likely lead to further delays in the plan confirmation process and will serve only to increase the administrative costs of this case as any Plan filed now would undoubtedly have to be amended or modified.  Under the circumstances, the Debtor submits that the requested extensions of its exclusive periods to file a Plan and obtain acceptances thereof are reasonable and appropriate.

**B.**     **The Debtor Is Requesting Extensions Of Its Exclusivity Periods In Good Faith, And Not For The Purpose Of Pressuring Creditors To Accede To Plan Terms.**

Courts have found cause to justify an extension of a chapter 11 debtor's exclusivity periods where there is no evidence that an extension is being sought for purposes of pressuring creditors into acceding to a debtor's reorganization demands.  *See In re Pine Run Trust, Inc., supra*.  The Debtor's request for extensions of its Plan exclusivity periods in this case is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain Plan terms.  On the contrary, the Debtor is motivated by its desire to pursue a consensual Plan, for the benefit of all of its creditors, in an orderly fashion and with minimal expense to the estate.  The Debtor does not have any interest in delaying its bankruptcy case any longer than absolutely necessary.  However, the Debtor submits that it is neither efficient nor cost-effective to require the Debtor to file a Plan by the current exclusivity deadline given the open issues described above.

**C.**     **Progress Towards Reorganization And Proper Motives Warrant An Extension Of The Debtor's Plan Exclusivity Periods.**

Courts have recognized that the diligence of management and proper administration of the case are yet additional factors supporting an extension of the exclusivity periods.  *See In re United Press International, supra; In re Trainer's, Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982).  The Debtor is properly administering its Chapter 11 case in that it has complied with all of the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and is in compliance with the requirements of the Office of the United States Trustee applicable to

12

1    debtors in possession.  Under these circumstances, the Court may extend the Debtor's exclusivity

2    periods for filing a Plan and obtaining acceptances thereof with the confidence that the Debtor is

3    in compliance with the requirements that are a condition to the Debtor's maintaining control of

4    its bankruptcy case.

## III.

## CONCLUSION

7    **WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

8    (1)    granting the Motion in its entirety;

9    (2)    extending the Debtor's exclusive periods to file a Plan and obtain acceptances

10    thereof for approximately ninety (90) days, to and including May 17, 2017 and July 17, 2017,

11    respectively, without prejudice to the Debtor's right to seek further extensions of such periods;

12    and

13    (3)    granting such other and further relief as the Court deems just and proper.

14    Dated:  January 17, 2017                    BLUE BEE, INC.

By:_____
        TIMOTHY J. YOO
        JULIET Y. OH
        LEVENE, NEALE, BENDER, YOO
            & BRILL L.L.P.
        Attorneys for Debtor and
        Debtor in Possession

13

### DECLARATION OF JEFF SUNGHAK KIM

I, Jeff Sunghak Kim, hereby declare as follows:

1. I am over 18 years of age. I am the co-founder and President of Blue Bee, Inc., a California corporation d/b/a ANGL and the debtor and debtor-in-possession herein (the "Debtor"), and am therefore familiar with the business operations and financial books and records of the Debtor. I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2. I have access to the Debtor's books and records. As the co-founder and President of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor. The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents. The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3. I make this declaration in support of the Debtor's motion seeking the entry of an order extending the Debtor's exclusive periods to file a plan of reorganization and obtain acceptances thereof for approximately ninety (90) days, to and including May 17, 2017 and July 17, 2017, respectively, without prejudice to the Debtor's right to seek further extensions of such exclusivity periods (the "Motion"), to which this declaration is attached. All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 19, 2016 (the "Petition Date"). The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5. The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers. As of

the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

6.      The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by my wife, Young Ae Kim, and I, and was dissolved on August 30, 2013. Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor.  My wife, Young Ae Kim, and I continue to be actively involved in the Debtor's business operations as the Secretary and President of the Debtor, respectively.

7.      The Debtor is headquartered near downtown Los Angeles, California and currently employs a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

8.      After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the last seven years.  I believe that this large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

9.      I believe that the high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the

Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords commenced actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of its Retail Stores.  While the Debtor had already closed a number of its less profitable retail store locations, leaving open approximately 21 Retail Stores as of the Petition Date, the Debtor required time to evaluate the viability of its remaining Retail Stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

10.    Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize, to expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords, to identify and implement reasonable cost cutting measures and to maximize the value of the Debtor's inventory by continuing its retail operations at the Retail Stores, all of which I believe will enable the Debtor to formulate and pursue confirmation of a plan of reorganization which allows the Debtor to restructure its existing debt in a cohesive and efficient manner while continuing to operate its longstanding business.

11.    Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "First CC Motion") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "Initial Budget").  I am advised and believe that, on November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing which was set for November 30, 2016 at 9:30 a.m. (the "Interim Order").

12.    On November 16, 2016, the Debtor filed a status report in advance of the final hearing on the First CC Motion, pursuant to which the Debtor submitted a revised version of the Initial Budget (the "Revised Initial Budget").

13.    I am advised and believe that, on December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash

collateral in accordance with the Revised Initial Budget, subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "Final Order," and together with the Interim Order, the "First CC Orders").

14.    Pursuant to the First CC Orders, the Debtor has been using its cash collateral in accordance with the Revised Initial Budget to operate its business.

15.    The Debtor's authority to use cash collateral pursuant to the First CC Orders will expire on or about January 21, 2017.  Accordingly, on December 29, 2016, the Debtor filed a motion (the "Second CC Motion"), pursuant to which the Debtor seeks an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from January 22, 2017 through and including April 22, 2017.  I am advised and believe that the hearing on the Second CC Motion is currently set for January 19, 2017 at 8:30 a.m.

16.    On January 6, 2017, the Debtor filed a motion requesting that the Court establish March 31, 2017 as the bar date (the "Claims Bar Date") by which parties who wish to assert pre-petition claims against, and interests in, the Debtor must file and serve proofs of claim or proofs of interest in the Debtor's bankruptcy case.  I am advised and believe that the foregoing motion is currently still pending Court approval.

17.    Given the retail nature of the Debtor's business, I believe that the future of many, if not all, of the Debtor's Retail Stores and the Debtor's ultimate reorganization strategy in this case hinge upon the Debtor's evaluation of the Retail Stores and negotiations with its landlords.

18.    The Debtor has begun performing a detailed store-by-store analysis of its 21 Retail Stores to determine which of the Retail Stores are profitable (or potentially profitable if rent concessions can be successfully negotiated) and which of the Retail Stores are not profitable and therefore must be closed on an expeditious basis.  The Debtor has also begun negotiations with certain of its landlords to try to obtain rent concessions which would reduce rent to a level that would render currently underperforming Retail Stores profitable.

19.    In connection with its analysis of the Retail Stores, the Debtor has already identified seven (7) Retail Stores which I believe are unprofitable, unless meaningful rent concessions can be negotiated with the respective landlords.  Accordingly, on December 29, 2016, the Debtor filed a motion (the "Lease Rejection Motion"), pursuant to which the Debtor seeks authority to reject some or all of the 7 Retail Stores identified in the Lease Rejection Motion (collectively, the "Potentially Rejected Leases").  I am advised and believe that the hearing on the Lease Rejection Motion is set for January 19, 2017 at 8:30 a.m.

20.    Other than the seven (7) Potentially Rejected Leases identified in the Lease Rejection Motion, there are a total of fourteen (14) other unexpired real property leases for the Debtor's remaining Retail Stores (collectively, the "Remaining Leases").  While the Debtor has begun to undertake the process of evaluating the financial performance of the remaining Retail Stores which are the subject of the Remaining Leases, and has begun approaching the landlords of such Retail Stores to negotiate rent concessions and other lease modifications, the Debtor requires additional time to complete its evaluation of the Remaining Leases and negotiations with its landlords.

21.    I do not believe that the Debtor will be able to complete its evaluation of the Remaining Leases and conclude its negotiations with the landlords under the Remaining Leases, both of which I believe necessarily must be done before the Debtor can formulate the terms of a feasible plan of reorganization ("Plan"), within the Debtor's current exclusive period for filing a Plan (which I understand will expire on February 16, 2017, unless extended).

22.    Furthermore, to develop financial projections in support of a Plan which are both accurate and feasible, I believe the Debtor requires additional time to evaluate the post-holiday sales performance of its Retail Stores.

/ / /

/ / /

/ / /

/ / /

23.    In addition, I believe that the Debtor requires additional time to allow the proposed Claims Bar Date (which the Debtor has requested that the Court establish as March 31, 2017) to pass so that the Debtor may carefully analyze the amount, validity, and extent of the claims asserted against the Debtor and formulate Plan terms which are feasible and fully address the universe of claims asserted against it in this case.

24.    Given the issues discussed above, I believe it would be premature for the Debtor to file a Plan at this time.  It is my understanding and belief that a premature Plan will likely lead to further delays in the plan confirmation process and will serve only to increase the administrative costs of this case as any Plan filed now would undoubtedly need to be amended or modified.

25.    The Debtor's request in the Motion to extend its Plan exclusivity periods in this case is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain Plan terms.  On the contrary, the Debtor is motivated by its desire to pursue a consensual Plan, for the benefit of all of its creditors, in an orderly fashion and with minimal expense to the estate.  The Debtor does not have any interest in delaying its bankruptcy case any longer than absolutely necessary.

26.    To the best of my knowledge, the Debtor has complied with all of the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and is in compliance with the requirements of the Office of the United States Trustee applicable to debtors in possession.

I declare under penalty of perjury under the laws of the United States of America that that the foregoing is true and correct.

Executed this ____ day of January, 2017, at Vernon, California.


Jeff Sunghak Kim, Declarant

19

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER EXTENDING DEBTOR'S EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFF SUNGHAK KIM IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 17, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Marc Andrews    bankruptcycls@wellsfargo.com, andrewma@wellsfargo.com**
- **Dustin P Branch    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **Lynn Brown    notices@becket-lee.com**
- **John H Choi    johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com**
- **Dare Law    dare.law@usdoj.gov**
- **Thor D McLaughlin    tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ronald M Tucker    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Michael A Wallin    mwallin@slaterhersey.com, mrivera@slaterhersey.com**

**2. SERVED BY UNITED STATES MAIL**: On **January 17, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 17, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***Served via Attorney Service***
The Honorable Sandra R. Klein
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 17, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Blue Bee, Inc.
Top 20, Secured Creditors, OUST, RSN

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Brian D. Huben
Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018

_Counsel to Caribbean Queen Inc._
Law Offices of Jacqueline N. Anker
27 W Anapamu, Suite 325
Santa Barbara, CA 93101

_Counsel to Macerich Cerritos LLC_
David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Michael A. Wallin
Slater Hersey & Lieberman LLP
18301 Von Karman Ave, Suite 1060
Irvine, CA 92612

Marc Andrews
Office of the General Counsel
Wells Fargo & Company
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435