TIMOTHY J. YOO (SBN 155531)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: tjy@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:16-bk-23836-SK |
| | ) |
| BLUE BEE, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) **DEBTOR'S SECOND CHAPTER 11** |
| | ) **CASE STATUS REPORT;** |
| | ) **DECLARATION OFF JEFF SUNGHAK** |
| | ) **KIM IN SUPPORT THEREOF** |
| | ) |
| | ) Status Conference: |
| | ) Date:            March 30, 2017 |
| | ) Time:            8:30 a.m. |
| | ) Courtroom:    1575 |
| | ) Location:       255 E. Temple Street |
| | )                     Los Angeles, California |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

1

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE IN THIS CASE:**

Blue Bee, Inc. d/b/a ANGL, a California corporation and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby files this second Chapter 11 case status report ("Status Report") in compliance with this Court's *Order: (1) Setting Status Conference; (2) Requiring Debtor-In-Possession To Appear And File Report Re: Status Of Reorganization; (3) Giving Notice Of Probable Use Of Court-Appointed Expert For Contested Valuation Requests; (4) Mandating Use Of Specific Forms By Non-Individual And Individual Debtors; And (5) Establishing Procedure For Motion For Order Approving Adequacy Of Disclosure Statement; And Motion For Order Confirming Plan* [Doc. No. 25] (the "Scheduling Order") and in advance of the continued Chapter 11 status conference scheduled on March 30, 2017.

## I.

## __INTRODUCTION__

The Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on October 19, 2016 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers. As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim, and was dissolved on August 30,

2013.  Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor.  Jeff Sunghak Kim and his wife, Young Ae Kim, continue to be actively involved in the Debtor's business operations as the President and Secretary of the Debtor, respectively.

The Debtor is headquartered near downtown Los Angeles, in Vernon, California and, as of the Petition Date, employed a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the seven-year period prior to the Petition Date.  This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores.  While the Debtor had already closed a number of its less profitable retail store locations, leaving open 21 Retail Stores as of the Petition Date, the Debtor required time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease

1   operational costs and increase profitability.  In order to preserve the Debtor's rights under its

2   lease agreements and to have an opportunity to restructure its business and financial affairs and

3   ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

4       Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around

5   which the Debtor can successfully reorganize and expeditiously close those Retail Stores which

6   are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent

7   concessions from the landlords (a process which the Debtor has already undertaken), which the

8   Debtor believes will ultimately pave the way for the formulation (and confirmation) of a plan of

9   reorganization which restructures the Debtor's existing debt in a cohesive and efficient manner

10  while facilitating the continued operation of the Debtor's longstanding business.

**II.**

**UPDATED INFORMATION REQUIRED BY THE SCHEDULING ORDER**

**A.    Estimated Timing For Filing Of Disclosure Statement Motion And Plan
Confirmation Motion.**

As noted above, the Debtor believes it was critical that it first identify the core Retail Stores

around which it believes it might ultimately be able to reorganize before the Debtor could begin

exploring and formulating the terms of a feasible plan of reorganization in this case.  Accordingly,

shortly after the Petition Date, the Debtor began the process of analyzing the financial performance

of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine which of the

Retail Stores were currently profitable or potentially profitable if rent concessions could be

successfully negotiated with the landlords, and which of the Retail Stores were not profitable and

therefore needed to be closed on an expeditious basis.

As a result of such analysis, the Debtor identified seven (7) Retail Stores which the Debtor

believed were unprofitable and would continue to be unprofitable unless meaningful rent

concessions could be negotiated with the respective landlords, as follows:

/ / /

/ / /

4

| Landlord | Store No. & And Name | Store Address |
|---|---|---|
| Glendale II Mall Associates, LLC | Glendale Galleria (#31) | 2101 Galleria Way Glendale, California |
| La Cienega Partners Limited Partnership | Beverly Center (#27) | 8500 Beverly Blvd., #6622 Los Angeles, California |
| Rancho Mall, LLC | Rancho Cucamonga Victoria Gardens (#38) | 12543 South Main Street, #1615 Rancho Cucamonga, California |
| The Retail Property Trust c/o M.S. Management Associates, Inc. | Brea Mall (#43) | 2110 Brea Mall, #2110 Brea, California |
| South Bay Center SPE, LLC | South Bay Galleria (#14) | 1815 Hawthorne Blvd., #258 Redondo Beach, California |
| Temecula Towne Center Associates LP | Promenade in Temecula (#17) | 40820 Winchester Road, #2610 Temecula, California |
| W/A SVT Holdings VI, LLC | Simi Valley Town Center (#12) | 1555 Simi Town Center Way, #135 Simi Valley, California |

On December 29, 2016, the Debtor filed a motion [Doc. No. 81] (the "First Lease Rejection Motion"), pursuant to which the Debtor sought authority to reject all or some of the 7 Retail Stores identified in the table above (collectively, the "Potentially Rejected Leases"). The Court entered an order granting the First Lease Rejection Motion on January 24, 2017 [Doc. No. 103]. Ultimately, the Debtor rejected only six (6) of the seven Potentially Rejected Leases – i.e., all of the Potentially Rejected Leases other than the lease with Glendale II Mall Associates, LLC for the Debtor's Glendale, California Retail Store (the "Glendale Lease") – thereby leaving the Debtor with a total of fifteen (15) Retail Stores.

Instead of rejecting the Glendale Lease, the Debtor was able to negotiate an amendment of the Glendale Lease, which included certain rent concessions. On February 7, 2017, the Debtor filed a motion seeking authority to enter into the amendment of the Glendale Lease and assume and cure defaults under the Glendale Lease (as amended) [Doc. No. 119] (the "Glendale Lease Motion"). The Court entered an order granting the Glendale Lease Motion on February 28, 2017

[Doc. No. 128].  Therefore, the Glendale Lease has been effectively modified and assumed by the Debtor.

Thereafter, on February 21, 2017, the Debtor filed a motion seeking to reject the lease for its lease with VTC Business Center, LLC for the Debtor's Valencia, California Retail Store located at 24305 Town Center Drive, Suite 120, Valencia, California 91355 (the "Valencia Lease") [Doc. No. 124].  The Debtor vacated the Valencia Retail Store on February 21, 2017 and therefore sought to have the Valencia Lease deemed rejected effective as of such date.  The Debtor's motion to reject the Valencia Lease, which is unopposed, is currently pending approval by this Court.

On February 27, 2017, the Debtor filed a stipulation with Macerich Cerritos, LLC, the landlord of the Debtor's Retail Store located at 330 Los Cerritos Center, Space 07, Cerritos, California 90703 (the "Cerritos Retail Store"), seeking to reject the lease for the Cerritos Retail Store (the "Cerritos Lease") effective as of February 27, 2017 [Doc. No. 125].  The Court entered an order approving such stipulation on February 28, 2017 [Doc. No. 127].

Based on the foregoing, the Debtor is currently operating a total of thirteen (13) Retail Stores, as follows (the "Remaining Retail Stores"):

| Store No. & Name | Store Address | Landlord | Status |
|---|---|---|---|
| Oxnard (#1) | 531 Town Center Dr. Oxnard, CA | SOCM I, LLC | Lease not assumed. |
| Santa Barbara (#3) | 505 Paseo Nuevo Santa Barbara, CA | Paseo Nuevo Owner LLC | Lease not assumed. |
| Irvine Spectrum (#5) | 71 Fortune Drive #810 Irvine, CA | The Irvine Company LLC | Lease amendment negotiated – motion to amend and assume lease to be filed shortly. |
| Manhattan Village (#6) | 3200 N. Sepulveda Blvd. #C15 Manhattan Beach, CA | 6 RREEF America REIT II Corp. BBB | Lease not assumed. |
| Del Amo Fashion Center (#9) | 21540 Hawthorne Blvd. #522 Torrance, CA | Del Amo Fashion Center Operating Company, LLC | Lease amendment being negotiated. |
| Topanga Mall (#20) | 6600 Topanga Canyon Blvd. #2066 Canoga Park, CA | Westfield Topanga Owner LLC | Lease not assumed. |

| Store No. & Name | Store Address | Landlord | Status |
|---|---|---|---|
| Fashion Square Mall (#21) | 14006 Riverside Dr. #21 Sherman Oaks, CA | Sherman Oaks Fashion Associates, LP | Lease not assumed. |
| Bella Terra Mall (#22) | 7777 Edinger Ave. #D148 Huntington Beach, CA | Bella Terra Associates, LLC | Lease not assumed. |
| Universal City Walk (#28) | 1000 Universal Center Dr. #172 Universal City, CA | Universal CityWalk | Lease not assumed. |
| Northridge Fashion Center (#29) | 9301 Tampa Avenue #27 Northridge, CA | Northridge Fashion Center | Lease not assumed. |
| Glendale Galleria (#31) | 2101 Galleria Way Glendale, CA | Glendale II Mall Associates, LLC | Lease amended and assumed. |
| Westfield Culver City (#33) | 6000 Sepulveda Blvd. #1444 Culver City, CA | Culver City Mall LLC | Lease not assumed. |
| Newport Beach Fashion Island (#47) | 1031 Newport Center Drive Newport Beach, CA | Irvine Company LLC | Lease not assumed. |

The current deadline under 11 U.S.C. § 365(d)(4) by which the Debtor is required to assume or reject its leases for the Remaining Retail Stores (other than the Glendale Lease, which has already been assumed) is May 17, 2017.  The Debtor is optimistic that it will complete its analysis of the Remaining Retail Stores so that it can bring motions seeking to either assume or reject the leases for the Remaining Retail Stores by May 17, 2017.  In the event that the Debtor requires additional time to make a final determination regarding the assumption or rejection of the leases for all or some of the Remaining Retail Stores, and to the extent that the landlords under such leases consent, the Debtor may file a motion seeking to further extend the deadline under 11 U.S.C. § 365(d)(4) for assuming or rejecting such leases.

Once the Debtor has made a final determination regarding the assumption or rejection of the leases for its Remaining Retail Stores, the Debtor will be in a position to formulate and file a

1  plan of reorganization in this case.  The Debtor hopes to file a plan of reorganization and disclosure

2  statement in this case on or before July 17, 2017.

3  **B.      Deadlines For Filing Proofs Of Claim And Hearings On Objections To Claims.**

4          On January 6, 2017, the Debtor filed a motion requesting that the Court establish March

5  31, 2017 as the deadline for creditors to file proofs of claim in the Debtor's bankruptcy case

6  ("Claims Bar Date") so that the Debtor may understand the total amount and types of claims that

7  its creditors are asserting, which claims will ultimately need to be accounted for in any plan of

8  reorganization formulated and filed by the Debtor in this case [Doc. No. 91] ("Bar Date

9  Motion").  On January 25, 2017, the Court entered an order granting the Bar Date Motion and

10  establishing March 31, 2017 as the Claims Bar Date in the Debtor's bankruptcy case.

11          The Debtor anticipates that its plan of reorganization will provide for a deadline by which

12  objections to claims must be filed and, therefore, requests that the Court not establish a deadline for

13  filing objections to claims at this time.  However, if the Court requires that such a deadline be set

14  now, the Debtor respectfully requests that the deadline for filing objections to claims be set for

15  August 31, 2017 or later.

16  **C.      Debtor's Compliance With Duties Under 11 U.S.C. §§ 521, 1106 and 1107.**

17          The Debtor believes that it is in compliance with all applicable requirements under 11

18  U.S.C. §§ 521, 1106, and 1107.

19          Pursuant to orders entered by the Court on November 1, 2016 and November 16, 2016,

20  the deadline for the Debtor to file its Schedules of Assets and Liabilities ("Schedules") and

21  Statement of Financial Affairs ("SOFA") was extended to November 30, 2016.  Thereafter, on

22  November 30, 2016, the Debtor filed its Schedules and SOFA [Doc. No. 61].

23          In addition, on October 31, 2016, the Debtor filed its 7-Day Package with the Office of

24  the United States Trustee (the "OUST").  On November 17, 2016, the Debtor filed an amended

25  version of its 7-Day Package with the OUST to include, among other documents, the declaration

26  of the Debtor in support of the 7-Day Package which had inadvertently been omitted from the

27  initial filing.

28

On November 16, 2016, the Debtor attended the Initial Debtor Interview conducted by the OUST.  Thereafter, on December 2, 2016, the Debtor attended its Section 341(a) meeting of creditors.

The Debtor has filed its Monthly Operating Reports for each post-petition month through and including the month of January 2017, and anticipates filing its Monthly Operating Report for the month of February 2017 shortly.

**D.    Status Of Debtor's Post-Petition Operations, Cash Collateral Use, Litigation Matters And Reorganization Efforts.**

Since the Petition Date, the Debtor has continued operating its business in the normal course.

Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "First CC Motion") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "Initial Budget").  On November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing [Doc. No. 36] (the "Interim Order").  On December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial Budget (the "Revised Initial Budget"), subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "Final Order," and together with the Interim Order, the "First CC Orders").

Pursuant to the First CC Orders, the Debtor used its cash collateral in accordance with the Revised Initial Budget to operate its business.

On December 29, 2016, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the First CC Orders, the Debtor filed a motion [Doc. No. 79] (the "Second CC Motion"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period

from January 22, 2017 through and including April 22, 2017 (the "Second Budget").  On January 24, 2017, the Court entered an order granting the Second CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Second Budget and in accordance with the terms and conditions set forth in the Second CC Motion [Doc. No. 102] (the "Second CC Order").

Pursuant to the Second CC Order, the Debtor is continuing to use its cash collateral in accordance with the Second Budget to operate its business.

All of the Debtor's pre-petition litigation matters have been stayed as a result of the filing of the Debtor's Chapter 11 bankruptcy case and there is no pending post-petition litigation.

**E.    Electronic Filing Of Documents By Debtor's Proposed Counsel.**

The Debtor's bankruptcy counsel, Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), has been and will continue to be filing documents in the Debtor's bankruptcy case electronically via CM/ECF.

**F.    Employment Of Professionals By Debtor And Status Of Court Approval Of Such Employment; Budget Of Estimated Professional Fees And Expenses.**

On October 27, 2016, the Debtor filed its application to employ LNBYB as its bankruptcy counsel, effective as of the Petition Date [Doc. No. 26].  The Court entered an order approving the Debtor's application to employ LNBYB as its bankruptcy counsel on November 16, 2016 [Doc. No. 49].

On December 15, 2016, the Debtor filed its application to employ Force Ten Partners LLC d/b/a Force 10 ("Force 10") as its financial advisor, effective as of November 15, 2016 [Doc. No. 70].  The Court entered an order approving the Debtor's application to employ Force 10 as its financial advisor on January 9, 2017 [Doc. No. 94].

While the Debtor has been reporting the amount of professional fees incurred by LNBYB and Force Ten each month in its Monthly Operating Reports filed with the Court, the Debtor cannot accurately estimate the fees and expenses that will be incurred by LNBYB and Force 10 during the course of its bankruptcy case as the amount of fees and expenses that are ultimately

1  incurred will be largely dependent on, among other factors, (i) whether any of the Debtor's

2  landlords object to the Debtor's proposed rejection or assumption of its real property leases

3  (and/or the cure amounts required to assume any such leases) and/or any request by the Debtor to

4  extend the time by which the Debtor must assume or reject its real property leases, (ii) whether

5  there is any objection to the Debtor's request(s) to continue using cash collateral during the

6  course of this case, (iii) the extent to which LNBYB and Force 10 will need to assist the Debtor

7  in the formulation of a feasible plan of reorganization, and (iv) whether there is any objection to

8  the disclosure statement and/or objection to confirmation of the plan of reorganization ultimately

9  proposed by the Debtor in this case.

10      The Debtor does not intend to employ any other professionals at this time.  However,

11  should the foregoing change, the Debtor will promptly file applications to employ such

12  professionals with the Court.

13  Dated: March 15, 2017                    BLUE BEE, INC.

14

15

16                                          By:_____

17                                              TIMOTHY J. YOO
                                               JULIET Y. OH
18                                             LEVENE, NEALE, BENDER, YOO
                                                  & BRILL L.L.P.
19                                             Attorneys for Debtor and
                                               Debtor-in-Possession
20

21

22

23

24

25

26

27

28

1

## DECLARATION OF JEFF SUNGHAK KIM

2      I, Jeff Sunghak Kim, hereby declare as follows:

3      1.      I am over 18 years of age.  I am the co-founder and President of Blue Bee, Inc.,

4      d/b/a ANGL, a California corporation and the debtor and debtor in possession in the above-

5      captioned Chapter 11 bankruptcy case (the "Debtor"), and am therefore familiar with the business

6      operations and financial books and records of the Debtor.  I have personal knowledge of the facts

7      set forth below and, if called to testify as a witness, I could and would competently testify thereto.

8      2.      I have access to the Debtor's books and records.  As the co-founder and President

9      of the Debtor, I am familiar with the history, organization, operations and financial condition of the

10     Debtor.  The records and documents referred to in this Declaration constitute writings taken, made,

11     or maintained in the regular or ordinary course of the Debtor's business at or near the time of act,

12     condition or event to which they relate by persons employed by the Debtor who had a business

13     duty to the Debtor to accurately and completely take, make, and maintain such records and

14     documents.   The statements set forth in this declaration are based upon my own personal

15     knowledge and my review of the Debtor's books and records.

16     3.      I make this declaration in support of the Debtor's second Chapter 11 case status

17     report (the "Status Report") to which this declaration is attached.  All capitalized terms not

18     specifically defined herein shall have the meanings ascribed to them in the Status Report.

19     4.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy

20     Code on October 19, 2016 (the "Petition Date").  The Debtor continues to operate its business,

21     manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

22     5.      The Debtor is a retailer doing business under the "ANGL" brand offering stylish

23     and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the

24     Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in

25     shopping malls throughout the state of California (collectively, the "Retail Stores," and

26     individually, a "Retail Store").

27     6.      The Debtor is the successor-in-interest to Angl, Inc., a California corporation,

28

12

which was founded by my wife, Young Ae Kim, and me, and was dissolved on August 30, 2013. Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor.  My wife, Young Ae Kim, and I continue to be actively involved in the Debtor's business operations as the Secretary and President of the Debtor, respectively.

7.    The Debtor is headquartered near downtown Los Angeles, in Vernon, California and, as of the Petition Date, employed a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

8.    After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the seven-year period prior to the Petition Date.  I believe that this large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

9.    The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores. While the Debtor had already closed a number of its less profitable retail store locations, leaving open 21 Retail Stores as of the Petition Date, the Debtor required time to evaluate the viability of

the remaining Retail Stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

10.    Through its bankruptcy case, the Debtor intends to identify the core Retail Stores around which the Debtor can successfully reorganize and expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords (a process which the Debtor has already undertaken), which I believe will ultimately pave the way for the formulation (and confirmation) of a plan of reorganization which restructures the Debtor's existing debt in a cohesive and efficient manner while facilitating the continued operation of the Debtor's longstanding business.

11.    Shortly after the Petition Date, the Debtor began the process of analyzing the financial performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine which of the Retail Stores were currently profitable or potentially profitable if rent concessions could be successfully negotiated with the landlords, and which of the Retail Stores were not profitable and therefore needed to be closed on an expeditious basis.  As a result of such analysis, the Debtor identified seven (7) Retail Stores which the Debtor believed were unprofitable and would continue to be unprofitable unless meaningful rent concessions could be negotiated with the respective landlords, as follows:

| Landlord | Store No. & And Name | Store Address |
|---|---|---|
| Glendale II Mall Associates, LLC | Glendale Galleria (#31) | 2101 Galleria Way Glendale, California |
| La Cienega Partners Limited Partnership | Beverly Center (#27) | 8500 Beverly Blvd., #6622 Los Angeles, California |
| Rancho Mall, LLC | Rancho Cucamonga Victoria Gardens (#38) | 12543 South Main Street, #1615 Rancho Cucamonga, California |
| The Retail Property Trust c/o M.S. Management Associates, Inc. | Brea Mall (#43) | 2110 Brea Mall, #2110 Brea, California |

| Landlord | Store No. & And Name | Store Address |
|---|---|---|
| South Bay Center SPE, LLC | South Bay Galleria (#14) | 1815 Hawthorne Blvd., #258 Redondo Beach, California |
| Temecula Towne Center Associates LP | Promenade in Temecula (#17) | 40820 Winchester Road, #2610 Temecula, California |
| W/A SVT Holdings VI, LLC | Simi Valley Town Center (#12) | 1555 Simi Town Center Way, #135 Simi Valley, California |

12.    On December 29, 2016, the Debtor filed a motion (the "First Lease Rejection Motion"), pursuant to which the Debtor sought authority to reject all or some of the 7 Retail Stores identified in the table above (collectively, the "Potentially Rejected Leases").  I am advised and believe that the Court entered an order granting the First Lease Rejection Motion on January 24, 2017.

13.    Ultimately, the Debtor rejected only six (6) of the seven Potentially Rejected Leases – *i.e.*, all of the Potentially Rejected Leases other than the lease with Glendale II Mall Associates, LLC for the Debtor's Glendale, California Retail Store (the "Glendale Lease") – thereby leaving the Debtor with a total of fifteen (15) Retail Stores.

14.    Instead of rejecting the Glendale Lease, the Debtor was able to negotiate an amendment of the Glendale Lease, which included certain rent concessions.  On February 7, 2017, the Debtor filed a motion seeking authority to enter into the amendment of the Glendale Lease and assume and cure defaults under the Glendale Lease (as amended) (the "Glendale Lease Motion"). I am advised and believe that the Court entered an order granting the Glendale Lease Motion on February 28, 2017.  Therefore, the Glendale Lease has been effectively modified and assumed by the Debtor.

15.    Thereafter, on February 21, 2017, the Debtor filed a motion seeking to reject the lease for its lease with VTC Business Center, LLC for the Debtor's Valencia, California Retail Store located at 24305 Town Center Drive, Suite 120, Valencia, California 91355 (the "Valencia Lease").  The Debtor vacated the Valencia Retail Store on February 21, 2017 and therefore sought

to have the Valencia Lease deemed rejected effective as of such date.  I am advised and believe that the Debtor's motion to reject the Valencia Lease, which is unopposed, is currently pending approval by the Court.

16.    On February 27, 2017, the Debtor filed a stipulation with Macerich Cerritos, LLC, the landlord of the Debtor's Retail Store located at 330 Los Cerritos Center, Space 07, Cerritos, California 90703 (the "Cerritos Retail Store"), seeking to reject the lease for the Cerritos Retail Store (the "Cerritos Lease") effective as of February 27, 2017.  I am advised and believe that the Court entered an order approving such stipulation on February 28, 2017.

17.    Based on the foregoing, the Debtor is currently operating a total of thirteen (13) Retail Stores, as follows (the "Remaining Retail Stores"):

| Store No. & Name | Store Address | Landlord | Status |
|---|---|---|---|
| Oxnard (#1) | 531 Town Center Dr. Oxnard, CA | SOCM I, LLC | Lease not assumed. |
| Santa Barbara (#3) | 505 Paseo Nuevo Santa Barbara, CA | Paseo Nuevo Owner LLC | Lease not assumed. |
| Irvine Spectrum (#5) | 71 Fortune Drive #810 Irvine, CA | The Irvine Company LLC | Lease amendment negotiated – motion to amend and assume lease to be filed shortly. |
| Manhattan Village (#6) | 3200 N. Sepulveda Blvd. #C15 Manhattan Beach, CA | 6 RREEF America REIT II Corp. BBB | Lease not assumed. |
| Del Amo Fashion Center (#9) | 21540 Hawthorne Blvd. #522 Torrance, CA | Del Amo Fashion Center Operating Company, LLC | Lease amendment being negotiated. |
| Topanga Mall (#20) | 6600 Topanga Canyon Blvd. #2066 Canoga Park, CA | Westfield Topanga Owner LLC | Lease not assumed. |
| Fashion Square Mall (#21) | 14006 Riverside Dr. #21 Sherman Oaks, CA | Sherman Oaks Fashion Associates, LP | Lease not assumed. |
| Bella Terra Mall (#22) | 7777 Edinger Ave. #D148 Huntington Beach, CA | Bella Terra Associates, LLC | Lease not assumed. |
| Universal City Walk (#28) | 1000 Universal Center Dr. #172 Universal City, CA | Universal CityWalk | Lease not assumed. |

| Store No. & Name | Store Address | Landlord | Status |
|---|---|---|---|
| Northridge Fashion Center (#29) | 9301 Tampa Avenue #27 Northridge, CA | Northridge Fashion Center | Lease not assumed. |
| Glendale Galleria (#31) | 2101 Galleria Way Glendale, CA | Glendale II Mall Associates, LLC | Lease amended and assumed. |
| Westfield Culver City (#33) | 6000 Sepulveda Blvd. #1444 Culver City, CA | Culver City Mall LLC | Lease not assumed. |
| Newport Beach Fashion Island (#47) | 1031 Newport Center Drive Newport Beach, CA | Irvine Company LLC | Lease not assumed. |

18.    I am advised and believe that the current deadline by which the Debtor is required to assume or reject its leases for the Remaining Retail Stores (other than the Glendale Lease, which has already been assumed) is May 17, 2017.  I am optimistic that the Debtor will complete its analysis of the Remaining Retail Stores so that it can bring motions seeking to either assume or reject the leases for the Remaining Retail Stores by May 17, 2017.  In the event that the Debtor requires additional time to make a final determination regarding the assumption or rejection of the leases for all or some of the Remaining Retail Stores, and to the extent that the landlords under such leases consent, the Debtor may file a motion seeking to further extend the deadline by which it must assume or reject such leases.

19.    Once the Debtor has made a final determination regarding the assumption or rejection of the leases for its Remaining Retail Stores, I believe the Debtor will be in a position to formulate and file a plan of reorganization in its bankruptcy case.  I believe the Debtor will be able to file a plan of reorganization and disclosure statement in its case on or before July 17, 2017.

20.    On January 6, 2017, the Debtor filed a motion requesting that the Court establish March 31, 2017 as the deadline for creditors to file proofs of claim in the Debtor's bankruptcy case ("Claims Bar Date") so that the Debtor may understand the total amount and types of claims that its creditors are asserting, which claims will ultimately need to be accounted for in any plan of

reorganization formulated and filed by the Debtor in this case ("Bar Date Motion").  I am advised and believe that, on January 25, 2017, the Court entered an order granting the Bar Date Motion and establishing March 31, 2017 as the Claims Bar Date in the Debtor's bankruptcy case.

21.     I anticipate that the Debtor's plan of reorganization will provide for a deadline by which objections to claims must be filed and therefore request that the Court not establish a deadline for the Debtor to file objections to claims at this time.  However, if the Court requires that such a deadline be set now, I respectfully request that the deadline for the Debtor to file objections to claims be set for August 31, 2017 or later.

22.     I believe that the Debtor is in compliance with all applicable requirements under the Bankruptcy Code.

23.     It is my understanding and belief that, pursuant to orders entered by the Court on November 1, 2016 and November 16, 2016, the deadline for the Debtor to file its Schedules of Assets and Liabilities ("Schedules") and Statement of Financial Affairs ("SOFA") was extended to November 30, 2016.  The Debtor filed its Schedules and SOFA accordingly on November 30, 2016.

24.     The Debtor filed its 7-Day Package with the Office of the United States Trustee (the "OUST") on October 31, 2016.  On November 17, 2016, the Debtor filed an amended version of its 7-Day Package with the OUST to include, among other documents, the declaration of the Debtor in support of the 7-Day Package which had inadvertently been omitted from the initial filing.

25.     On November 16, 2016, the Debtor attended the Initial Debtor Interview conducted by the OUST.  Thereafter, on December 2, 2016, I attended the Debtor's Section 341(a) meeting of creditors.

26.     To the best of my knowledge, the Debtor has filed its Monthly Operating Reports for each post-petition month through and including the month of January 2017.  I anticipate that the Debtor will be filing its Monthly Operating Report for the month of February 2017 shortly.

27.     Since the Petition Date, the Debtor has continued operating its business in the

normal course.

28.    On October 24, 2016, the Debtor filed an emergency motion (the "<u>First CC Motion</u>") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "<u>Initial Budget</u>").  I am advised and believe that, on November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing (the "<u>Interim Order</u>").  I am further advised and believe that, on December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial Budget (the "<u>Revised Initial Budget</u>"), subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "<u>Final Order</u>," and together with the Interim Order, the "<u>First CC Orders</u>").

29.    Pursuant to the First CC Orders, the Debtor used its cash collateral in accordance with the Revised Initial Budget to operate its business.

30.    On December 29, 2016, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the First CC Orders, the Debtor filed a motion (the "<u>Second CC Motion</u>"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from January 22, 2017 through and including April 22, 2017 (the "<u>Second Budget</u>").  I am advised and believe that, on January 24, 2017, the Court entered an order granting the Second CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Second Budget and in accordance with the terms and conditions set forth in the Second CC Motion (the "<u>Second CC Order</u>").

31.    Pursuant to the Second CC Order, the Debtor is continuing to use its cash collateral in accordance with the Second Budget to operate its business.

32.    To the best of my knowledge, all of the Debtor's pre-petition litigation matters have been stayed as a result of the filing of the Debtor's bankruptcy case and there is no pending post-

petition litigation.

33. To the best of my knowledge, the Debtor's bankruptcy counsel, Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), has been and will continue to be filing documents in the Debtor's bankruptcy case electronically via CM/ECF.

34. On October 27, 2016, the Debtor filed its application to employ LNBYB as its bankruptcy counsel, effective as of the Petition Date. I am advised and believe that the Court entered an order approving the Debtor's application to employ LNBYB as its bankruptcy counsel on November 16, 2016.

35. On December 15, 2016, the Debtor filed its application to employ Force Ten Partners LLC d/b/a Force 10 ("Force 10") as its financial advisor, effective as of November 15, 2016. I am advised and believe that the Court entered an order approving the Debtor's application to employ Force 10 as its financial advisor on January 9, 2017.

36. While the Debtor has been reporting the amount of professional fees incurred by LNBYB and Force Ten each month in its Monthly Operating Reports filed with the Court, I do not believe that the Debtor can accurately estimate the fees and expenses that will be incurred by LNBYB and Force 10 during the course of the Debtor's bankruptcy case as the amount of fees and expenses that are ultimately incurred will be largely dependent on, among other factors, (i) whether any of the Debtor's landlords object to the Debtor's proposed rejection or assumption of its real property leases (and/or the cure amounts required to assume any such leases) and/or any request by the Debtor to extend the time by which the Debtor must assume or reject its real property leases, (ii) whether there is any objection to the Debtor's request(s) to continue using cash collateral during the course of this case, (iii) the extent to which LNBYB and Force 10 will need to assist the Debtor in the formulation of a feasible plan of reorganization, and (iv) whether there is any objection to the disclosure statement and/or objection to confirmation of the plan of reorganization ultimately proposed by the Debtor in this case.

///

///

1      37.     The Debtor does not intend to employ any other professionals at this time.

2 However, should the foregoing change, the Debtor will promptly file applications to employ such

3 professionals with the Court.

4      I declare under penalty of perjury that the foregoing is true and correct.

5      Executed this 14th day of March, 2017, at Vernon, California.

6

7

8         Jeff Sunghak Kim

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S SECOND CHAPTER 11 CASE STATUS REPORT; DECLARATION OFF OF JEFF SUNGHAK KIM IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 15, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Franklin C Adams     franklin.adams@bbklaw.com,**
  **arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com**
- **Marc Andrews     bankruptcycls@wellsfargo.com, andrewma@wellsfargo.com**
- **Dustin P Branch     branchd@ballardspahr.com,**
  **carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **Lynn Brown     notices@becket-lee.com**
- **Brian W Byun     bbyun@ci.vernon.ca.us**
- **John H Choi     johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Brian D Huben     hubenb@ballardspahr.com, carolod@ballardspahr.com**
- **Dare Law     dare.law@usdoj.gov**
- **Thor D McLaughlin     tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
- **Juliet Y Oh     jyo@lnbrb.com, jyo@lnbrb.com**
- **Ernie Zachary Park     ernie.park@bewleylaw.com**
- **Ronald M Tucker     rtucker@simon.com,**
  **cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov**
- **Michael A Wallin     mwallin@slaterhersey.com, mrivera@slaterhersey.com**
- **Larry D Webb     Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**

**2.   SERVED BY UNITED STATES MAIL**: On **March 15, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 15, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1

***Served via Attorney Service***

The Honorable Sandra R. Klein

2  United States Bankruptcy Court

Edward R. Roybal Federal Building and Courthouse

3  255 E. Temple Street, Suite 1582 / Courtroom 1575

Los Angeles, CA 90012

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is

5  true and correct.

6  March 15, 2017          Stephanie Reichert                    /s/ Stephanie Reichert

   *Date*                   *Type Name*                          *Signature*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

Blue Bee, Inc.
Top 20, Secured Creditors, OUST, RSN

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Brian D. Huben
Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018

*Counsel to Caribbean Queen Inc.*
Law Offices of Jacqueline N. Anker
27 W Anapamu, Suite 325
Santa Barbara, CA 93101

*Counsel to Macerich Cerritos LLC*
David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Michael A. Wallin
Slater Hersey & Lieberman LLP
18301 Von Karman Ave, Suite 1060
Irvine, CA 92612

Marc Andrews
Office of the General Counsel
Wells Fargo & Company
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435