1  TIMOTHY J. YOO (SBN 155531)
   JULIET Y. OH (SBN 211414)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
   Email: tjy@lnbyb.com, jyo@lnbyb.com
5

6  Attorneys for Chapter 11 Debtor and
   Debtor in Possession

7

8

9                    **UNITED STATES BANKRUPTCY COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11                        **LOS ANGELES DIVISION**

12

13  In re                                    )  Case No. 2:16-bk-23836-SK
                                             )
14  BLUE BEE, INC.,                          )  Chapter 11
                                             )
15                    Debtor.                )
                                             )
16                                           )  **NOTICE OF MOTION AND MOTION**
                                             )  **FOR ENTRY OF ORDER AUTHORIZING**
17                                           )  **DEBTOR TO USE CASH COLLATERAL**
                                             )  **THROUGH AND INCLUDING OCTOBER**
18                                           )  **21, 2017; MEMORANDUM OF POINTS**
                                             )  **AND AUTHORITIES; DECLARATION**
19                                           )  **OF JEFF SUNGHAK KIM IN SUPPORT**
                                             )  **THEREOF**
20                                           )
                                             )
21                                           )  Date:         July 13, 2017
                                             )  Time:         8:30 a.m.
22                                           )  Courtroom:    1575
                                             )  Location:     255 E. Temple Street
23                                           )                Los Angeles, California
                                             )
24                                           )
                                             )
25                                           )
                                             )
26  _____ )

27

28

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................... **4**

**I.     STATEMENT OF FACTS** ............................................................................ **4**

    **A.     Background** ............................................................................................ **4**

    **B.     Postpetition Cash Collateral Use, Business Operations And
      Reorganization Efforts.** ........................................................................ **6**

    **C.     The Debtor's Primary Assets And Secured Debts** ......................... **9**

    **D.     The Need For Use Of Cash Collateral And Proposed New Operating
      Budget** ................................................................................................. **13**

**II.    DISCUSSION** ............................................................................................. **14**

    **A.     The Debtor Must Be Authorized To Use Cash Collateral To Operate
      Its Business And To Maintain And Preserve The Value Of Its Assets** ........ **14**

    **B.     The Debtor's Prepetition Secured Creditors Are Adequately Protected
      By A Substantial Equity Cushion, The Continued Operation Of The
      Debtor's Business And Other Forms Of Adequate Protection** .................. **16**

**III.   PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF THE
      MOTION HAVE BEEN SATISFIED** ...................................................... **19**

**IV.   CONCLUSION** ........................................................................................... **20**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3    **FEDERAL CASES**

4    *In re Dynaco Corporation*
        162 B.R. 389 (Bankr. D.N.H. 1993) ................................................................ 15, 18

5

6    *In re Immenhausen Corp.*
        164 B.R. 347 (Bankr. M.D. Fla. 1994).............................................................. 18

7

8    *In re McCombs Properties VI, Ltd.*
        88 B.R. 261 (Bankr. C.D. Cal. l988)................................................................. 16, 18

9    *In re McGowan*
        6 B.R. 241 (Bankr. E.D. Pa. 1980)................................................................... 17

10

11   *In re Mellor*
        734 F.2d 1396 (9th Cir. 1984) .......................................................................... 16

12

13   *In re Newark Airport/Hotel Ltd. Partnership*
        156 B.R. 444 (Bankr. D.N.J. 1993)................................................................... 18

14   *In re O'Connor*
        808 F.2d 1393 (10th Cir. 1987)......................................................................... 16, 18, 19

15

16   *In re Oak Glen R-Vee*
        8 B.R. 213 (Bankr. C.D. Cal. 1981) ................................................................. 15

17   *In re Opelika Manufacturing Corporation*
        66 B.R. 444 (Bankr. N.D. Ill. 1986)................................................................. 17

18

19   *In re Rogers Development Corp.*
        2 B.R. 679 (Bankr. E.D. Vir. 1980) .................................................................. 17

20   *In re Stein*
        19 B.R. 458. (Bankr. E.D. Pa. 1982)................................................................ 17, 18

21

22   *In re Triplett*
        87 B.R. 25 (Bankr. W.D.Tex. 1988) ................................................................. 17

23

24   *In re Tucson Industrial Partners*
        129 B.R. 614 (9th Cir. BAP 1991).................................................................... 15

25   *Matter of Pursuit Athletic Footwear, Inc.*
        193 B.R. 713 (Bankr. D. Del. 1996) ................................................................. 18

26

27   *United Savings Association v. Timbers of Inwood Forest Associates*
        108 S.Ct. 626 (1988) ......................................................................................... 16

28

**FEDERAL STATUTES**

11 U.S.C. § 361(1) ........................................................................................................ 16

11 U.S.C. § 361(2) ........................................................................................................ 16

11 U.S.C. § 363 ........................................................................................................ 2, 14

11 U.S.C. § 363(a) ........................................................................................................ 15

11 U.S.C. § 363(c)(1) .................................................................................................... 14

11 U.S.C. § 363(c)(2) ......................................................................................... 15, 16, 19

11 U.S.C. § 506(a) ........................................................................................................ 16

11 U.S.C. § 1107 ........................................................................................................ 4, 14

11 U.S.C. § 1108 ............................................................................................................. 4

**FEDERAL RULES**

Fed.R.Bankr.P. 4001 ....................................................................................................... 2

Fed.R.Bankr.P. 4001(b) ........................................................................................... 19, 20

Fed.R.Bankr.P. 4001-2 ............................................................................................... 2, 20

Fed.R.Bankr.P. 9013-1 ................................................................................................... 2

Fed.R.Bankr.P. 9014 ...................................................................................................... 2

Fed.R.Evid. 201 ...................................................................................................... 11, 12

**PLEASE TAKE NOTICE** that a hearing will be held on July 13, 2017 at 8:30 a.m., before the Honorable Sandra R. Klein, United States Bankruptcy Judge for the Central District of California, Los Angeles Division, in Courtroom "1575" located at 255 East Temple Street, Los Angeles, California, for the Court to consider the motion (the "Motion") filed by Blue Bee, Inc., a California corporation d/b/a Angl and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), for the entry of an order, pursuant to 11 U.S.C. § 363, authorizing the Debtor to use cash collateral in accordance with the Debtor's operating budget for the 13-week period from July 23, 2017 through and including October 21, 2017 (the "Budget"), a copy of which is attached as **Exhibit "1"** to the Declaration of Jeff Sunghak Kim annexed hereto (the "Kim Declaration").    The full basis for the Motion is described in the Memorandum of Points and Authorities and the Kim Declaration attached hereto.

The Motion is based upon 11 U.S.C. § 363, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules 4001-2 and 9013-1, the supporting Memorandum of Points and Authorities and the Kim Declaration attached hereto, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be in writing, filed with the Court and served upon the United States Trustee as well as counsel for the Debtor at the address set forth in the upper left-hand corner of the first page of this Notice and Motion by no later than fourteen (14) days before the date of the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court to constitute consent to the granting of the relief requested in the Motion.

/ / /

/ / /

1    **WHEREFORE,** the Debtor respectfully requests that this Court enter an order in

2 substantially the form attached as <u>**Exhibit "2"**</u> to the Kim Declaration annexed hereto:

3        (1)    granting the Motion in its entirety;

4        (2)    authorizing the Debtor to use cash collateral to (i) pay all of the expenses set

5 forth in the Budget, with authority to deviate from the line items contained in the Budget by up

6 to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into

7 the following week(s); and (ii) pay all quarterly fees owing to the Office of the United States

8 Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and

9        (3)    granting such other and further relief as the Court deems just and proper.

10 Dated:  June 14, 2017                           BLUE BEE, INC.

11

12

13                                             By: _____

14                                                 TIMOTHY J. YOO
                                                  JULIET Y. OH
15                                                 LEVENE, NEALE, BENDER, YOO
                                                     & BRILL L.L.P.
16                                                 Attorneys for Debtor and
                                                  Debtor in Possession

17

18

19

20

21

22

23

24

25

26

27

28

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

**A.    Background.**

1.      On October 19, 2016 (the "Petition Date"), Blue Bee, Inc., a California corporation d/b/a Angl and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").   The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

3.      The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim, and was dissolved on August 30, 2013.   Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.   The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor.  Jeff Sunghak Kim and his wife, Young Ae Kim, continue to be actively involved in the Debtor's business operations as the President and Secretary of the Debtor, respectively.

4.      The Debtor is headquartered near downtown Los Angeles, California in Vernon, California and, as of the Petition Date, employed a workforce of approximately 110 employees. In 2015, the Debtor generated annual gross revenues of more than $24 million.

5.      After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a

4

1  total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by

2  2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within

3  the seven-year period prior to the Petition Date.  This large expansion effort, which was

4  conducted within a relatively compressed period of time, took a heavy financial toll on the

5  business operations of the Debtor's predecessor as a whole as it incurred construction and other

6  "start up" costs with the opening of each new store as well as a significant increase in operating

7  expenses typically associated with a retail store chain operation.

8       6.    The high cost of expansion combined with decreasing store sales as a result of a

9  general industry-wide shift in consumer shopping preferences from in-store to online shopping,

10  and the increased competition arising therefrom, left the Debtor with insufficient liquidity to

11  meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's

12  landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began

13  commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for

14  certain of the Retail Stores.  While the Debtor had already closed a number of its less profitable

15  retail store locations, leaving open 21 Retail Stores as of the Petition Date, the Debtor required

16  time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease

17  operational costs and increase profitability.  In order to preserve the Debtor's rights under its

18  lease agreements and to have an opportunity to restructure its business and financial affairs and

19  ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

20       7.    Through its bankruptcy case, the Debtor intends to identify the core Retail Stores

21  around which the Debtor can successfully reorganize and expeditiously close those Retail Stores

22  which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful

23  rent concessions from the landlords (a process which the Debtor has already undertaken), which

24  the Debtor believes will ultimately pave the way for the formulation (and confirmation) of a

25  plan of reorganization which restructures the Debtor's existing debt in a cohesive and efficient

26  manner while facilitating the continued operation of the Debtor's longstanding business.

27  ///

28  ///

5

**B.**      <u>**Postpetition Cash Collateral Use, Business Operations And Reorganization Efforts**</u>.

8.      Since the Petition Date, the Debtor has continued operating its business in the normal course.

9.      Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "<u>First CC Motion</u>") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "<u>Initial Budget</u>").

10.      On November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing (the "<u>Interim Order</u>").  On December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial Budget (the "<u>Revised Initial Budget</u>"), subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "<u>Final Order</u>," and together with the Interim Order, the "<u>First CC Orders</u>")).

11.      On December 29, 2016, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the First CC Orders, the Debtor filed a motion (the "<u>Second CC Motion</u>"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from January 22, 2017 through and including April 22, 2017 (the "<u>Second Budget</u>").

12.      On January 24, 2017, the Court entered an order granting the Second CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Second Budget and in accordance with the terms and conditions set forth in the Second CC Motion (the "<u>Second CC Order</u>").

13.      Pursuant to the First CC Orders and the Second CC Order, the Debtor used its cash collateral in accordance with the Revised Budget and the Second Budget to operate its business.

14.      On March 31, 2017, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the Second CC Order, the Debtor filed a motion (the "<u>Third CC Motion</u>"),

1  pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash

2  collateral in accordance with the Debtor's operating budget for the 13-week period from April

3  22, 2017 through and including July 22, 2017 (the "Third Budget").

4    15.    On April 28, 2017, the Court entered an order granting the Third CC Motion and

5  authorizing the Debtor to continue using cash collateral in accordance with the Third Budget

6  and in accordance with the terms and conditions set forth in the Third CC Motion (the "Third

7  CC Order").

8    16.    Pursuant to the Third CC Order, the Debtor is continuing to use its cash collateral

9  to operate its business in accordance with the Third Budget and pursuant to the terms of the

10  Third CC Order.

11    17.    The Debtor's authority to use cash collateral pursuant to the Third CC Order will

12  expire on July 22, 2017.  The Debtor has therefore filed this Motion to seek an order authorizing

13  the Debtor to continue using cash collateral in accordance with the Debtor's operating budget

14  for the 13-week period from July 23, 2017 through and including October 21, 2017 (the

15  "Budget"), a copy of which is attached as **Exhibit "1"** to the Declaration of Jeff Sunghak Kim

16  annexed hereto (the "Kim Declaration").

17    18.    Shortly after the Petition Date, the Debtor began the process of analyzing the

18  financial performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to

19  determine which of the Retail Stores were currently profitable or potentially profitable if rent

20  concessions could be successfully negotiated with the landlords, and which of the Retail Stores

21  were not profitable and therefore needed to be closed on an expeditious basis.

22    19.    As a result of such analysis, during the past several months, the Debtor has

23  sought and obtained Court approval to close eight (8) of its Retail Stores and to reject the real

24  property leases associated therewith.  Based on the foregoing, the Debtor is currently operating

25  the following thirteen (13) Retail Stores (the "Operating Retail Stores"):

26

27

28

| Store No. & Name | Store Address | Landlord | Lease Status |
|---|---|---|---|
| Oxnard (#1) | 531 Town Center Dr. Oxnard, CA | SOCM I, LLC | Lease not assumed. |

| Santa Barbara (#3) | 505 Paseo Nuevo Santa Barbara, CA | Paseo Nuevo Owner LLC | Lease not assumed. |
|---|---|---|---|
| Irvine Spectrum (#5) | 71 Fortune Drive #810 Irvine, CA | The Irvine Company LLC | Lease amended and assumed. |
| Manhattan Village (#6) | 3200 N. Sepulveda Blvd. #C15 Manhattan Beach, CA | 6 RREEF America REIT II Corp. BBB | Lease amendment being negotiated. |
| Del Amo Fashion Center (#9) | 21540 Hawthorne Blvd. #522 Torrance, CA | Del Amo Fashion Center Operating Company, LLC | Lease amended and assumed. |
| Topanga Mall (#20) | 6600 Topanga Canyon Blvd. #2066 Canoga Park, CA | Westfield Topanga Owner LLC | Lease not assumed. |
| Fashion Square Mall (#21) | 14006 Riverside Dr. #21 Sherman Oaks, CA | Sherman Oaks Fashion Associates, LP | Lease not assumed. |
| Bella Terra Mall (#22) | 7777 Edinger Ave. #D148 Huntington Beach, CA | Bella Terra Associates, LLC | Lease not assumed. |
| Universal City Walk (#28) | 1000 Universal Center Dr. #172 Universal City, CA | Universal CityWalk | Lease not assumed. |
| Northridge Fashion Center (#29) | 9301 Tampa Avenue #27 Northridge, CA | Northridge Fashion Center | Lease not assumed. |
| Glendale Galleria (#31) | 2101 Galleria Way Glendale, CA | Glendale II Mall Associates, LLC | Lease amended and assumed. |
| Westfield Culver City (#33) | 6000 Sepulveda Blvd. #1444 Culver City, CA | Culver City Mall LLC | Lease not assumed. |
| Newport Beach Fashion Island (#47) | 1031 Newport Center Drive Newport Beach, CA | Irvine Company LLC | Lease not assumed. |

20.     As reflected in the table above, the Debtor has sought and obtained Court approval to amend and assume the real property leases for three (3) of its Operating Retail Stores, specifically, the Operating Retail Stores located in Del Amo, California, Glendale, California, and Irvine, California.

21.     Since the Petition Date, in addition to analyzing the business operations of the Debtor's Retail Stores to determine which of the stores were profitable or potentially profitable, engaging in negotiations with certain of its landlords for rent concessions and other lease

8

1   modifications, and moving forward with the closure (and rejection of the corresponding leases)

2   of eight (8) of its Retail Stores and the amendment and assumption of three (3) of its Retail

3   Stores, the Debtor has also spent time identifying and implementing cost cutting measures as

4   part of its efforts to streamline its business operations, including by, among other things,

5   reducing the number of its employees and implementing payroll cuts to decrease the overall

6   payroll costs of the company.

7       22.    As noted in the table above, there are a total of ten (10) real property leases

8   relating to the Operating Retail Stores which the Debtor has yet to assume or reject.

9       23.    One of the real property leases which the Debtor has yet to assume or reject

10  relates to the Debtor's retail store located at in Manhattan Beach, California (the "<u>MB Retail

11  Store</u>").  The Debtor has filed a motion seeking Court approval to amend the lease for the MB

12  Retail Store and to assume such lease (as amended), which motion is still pending.

13      24.    The Debtor has also filed a motion seeking Court approval to assume the nine (9)

14  remaining real property leases (collectively, the "<u>Remaining Leases</u>") relating to the nine

15  remaining Operating Retail Stores (collectively, the "<u>Remaining Retail Stores</u>"), which the

16  Debtor has yet to assume or reject.  The foregoing motion is still pending Court approval.

17      25.    Once the Debtor has obtained Court approval to amend and assume the MB

18  Retail Store lease as well as Court approval to assume the 9 Remaining Leases, the Debtor

19  believes it will be in a position to formulate and file a plan of reorganization in this case.  The

20  Debtor hopes to file a plan of reorganization and disclosure statement in this case within the

21  next 30-60 days.

22  **C.    <u>The Debtor's Primary Assets And Secured Debts</u>.**

23      26. The Debtor's primary assets are as follows:

24      a.    <u>Cash</u>.  As of the Petition Date, the Debtor had cash on hand of

25  approximately $93,000.  The Debtor anticipates that the amount of cash it will have on

26  hand as of July 23, 2017 will be approximately $271,274.

27      b.    <u>Security Deposits</u>.  As of the Petition Date, the Debtor had security

28  deposits with landlords and other parties in the total sum of approximately $87,013.  The

1    Debtor believes that the amount of the Security Deposits remains unchanged since the

2    Petition Date.

3        c.    Inventory.  As of the Petition Date, the Debtor had inventory with an

4    estimated cost value of approximately $3,500,000.  The Debtor believes that the

5    estimated cost value of its inventory has remained relatively constant since the Petition

6    Date as the Debtor has continued to purchase new merchandise to replenish merchandise

7    sold at the Retail Stores.

8        d.    Other Assets.  As of the Petition Date, the Debtor had furniture, fixtures

9    and equipment ("FF&E") with a net book value of $6,299,306.  While the Debtor

10    initially estimated that the FF&E had an estimated aggregate fair value of approximately

11    $1,000,000, based upon discussions that the Debtor has had with a number of liquidation

12    companies, the Debtor believes that the only FF&E that has any actual value are the

13    FF&E contained at the Remaining Retail Stores (consisting of racks, shelving, and other

14    personal property).  The Debtor estimates that the FF&E at the Remaining Retail Stores

15    has an estimated aggregate fair market value of approximately $650,000 (or

16    approximately $50,000 per store).  The Debtor recently "downsized" from its former

17    warehouse facility in Vernon, California to a substantially smaller office space in

18    Vernon, California.  In connection with the move to the smaller office space, and with

19    the consent of the Debtor's senior secured lender, Pacific City Bank, the Debtor disposed

20    of the non-store FF&E that was being maintained at its former warehouse facility, which

21    FF&E the Debtor was not using and the Debtor determined had nominal market value (if

22    any).[1]

23

24

25

26    _____

27    [1] The Debtor contacted a number of liquidation companies to determine whether the non-store FF&E that was
being maintained at the Debtor's former warehouse facility could be sold or otherwise liquidated for cash.  All of
the liquidation companies contacted by the Debtor declined to purchase, or otherwise be retained to liquidate, such
28    FF&E and informed the Debtor that such FF&E had no market value (and that the Debtor would likely have to pay
a third party company out-of-pocket for the cost of removing and disposing of such FF&E).

27.    The Debtor's senior secured lender is Pacific City Bank (the "<u>Bank</u>").  As of the Petition Date, the Debtor was a borrower under three (3) separate loans with the Bank, as described below:[2]

a.    The Debtor is the borrower under a U.S. Small Business Administration loan with the Bank (the "<u>SBA Loan</u>"), pursuant to a Loan Agreement dated July 24, 2014 between the Debtor and the Bank.  The Debtor is currently indebted to the Bank in the amount of approximately $1,660,000 under the SBA Loan.  The Bank filed UCC-1 financing statements against the Debtor and its predecessor, Angl, Inc. asserting a lien against substantially all of the assets of the Debtor and Angl, Inc.

b.    The Debtor was the borrower under a term loan bearing the Loan Number 134077 with the Bank (the "<u>First Term Loan</u>"), pursuant to a Business Loan Agreement dated November 2, 2015 between the Debtor and the Bank.  The First Term Loan was secured by certain non-Debtor assets, including commercial real property owned by the Debtor's affiliate, Peace People, LLC (the "<u>Affiliate Commercial Property</u>").   The Affiliate Commercial Property was recently sold to a third party purchaser, which sale resulted in the full repayment and satisfaction of the First Term Loan.  Therefore, the Debtor has no remaining obligations under the First Term Loan.

c.    The Debtor was the borrower under a second term loan bearing the Loan Number 133776 (the "<u>Second Term Loan</u>"), pursuant to a Business Loan Agreement dated July 23, 2014 between the Debtor and the Bank. The Second Term Loan was also secured by the Affiliate Commercial Property, and was fully repaid and satisfied upon

---

[2] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the *Omnibus Declaration Of Jeff Sunghak Kim In Support Of Debtor's Emergency "First Day" Motions* filed by the Debtor on October 24, 2016 [Doc. No. 12], specifically Exhibit "B" thereto, which includes copies of the pre-petition loan and collateral documents with the Bank.

The Debtor also requests that the Court take judicial notice of the *Declaration Of Juliet Y. Oh In Support Of Debtor's Emergency Motion For An Interim Order Authorizing The Debtor To Use Cash Collateral On An Interim Basis Pending A Final Hearing* [Doc. No. 11], which includes copies of the UCC-1 financing statements filed by the Debtor's alleged secured creditors.

1    the recent successful sale of the Affiliate Commercial Property.  Therefore, the Debtor

2    has no remaining obligations under the Second Term Loan.

3        28.    Prior to the Petition Date, the Debtor obtained a secured loan in the amount of

4    $6,000 from Fashblvd., Inc. ("Fashblvd").  Flashblvd filed a UCC-1 financing statement

5    (Document No. 57738600002) asserting a lien against substantially all of the assets of the

6    Debtor prior to the commencement of the Debtor's bankruptcy case on October 19, 2016.[3]

7        29.    In addition to the financing statements filed by the Bank and Fashblvd against the

8    Debtor and/or its predecessor, Angl, Inc., there are financing statements that have been filed

9    against the Debtor and Angl, Inc. by the following parties[4]:

10            a.    U.S. Bank Equipment Finance.  U.S. Bank Equipment Finance has one

11        active financing statement (filing number 13-7390160767), filed on December 10, 2013,

12        which purports to cover certain specified equipment leased or financed from U.S. Bank

13        Equipment Finance.  U.S. Bank Equipment Finance does not purport to assert a security

14        interest in the Debtor's cash.

15            b.    California State Board Of Equalization ("SBOE").  SBOE has one active

16        state tax lien (filing number 15-7447815850) which was recorded against the Debtor on

17        January 29, 2015.

18            c.    Line & Dot, LLC d/b/a Lumiere Collections ("L&E").  L&E has one

19        active judgment lien (filing number 16-7546469513) which was recorded against the

20        Debtor on September 15, 2016.  The parties entered into a stipulation to avoid the

21        foregoing judgment lien, which stipulation was approved by the Court pursuant to an

22        order entered on December 22, 2016.

23    _____

24    [3] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial
     notice of the *Declaration Of Juliet Y. Oh In Support Of Debtor's Emergency Motion For An Interim Order*
25    *Authorizing The Debtor To Use Cash Collateral On An Interim Basis Pending A Final Hearing* [Doc. No. 11],
     specifically Exhibit "2" thereto, which includes evidence of the filing of the UCC-1 financing statement by
26    Fashblvd against the Debtor.

27    [4] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial
     notice of the *Declaration Of Juliet Y. Oh In Support Of Debtor's Emergency Motion For An Interim Order*
28    *Authorizing The Debtor To Use Cash Collateral On An Interim Basis Pending A Final Hearing* [Doc. No. 11],
     specifically Exhibit "2" thereto, which includes copies of the UCC-1 financing statements filed against the Debtor.

d.    <u>Tyler Mall Limited Partnership ("Tyler Mall")</u>.  Tyler Mall has one active judgment lien (filing number 16-7542925708) which was recorded against Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing judgment lien, which was recorded within the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and is therefore disputed.

e.    <u>GGP-Otay Ranch, L.P. ("GGP")</u>.  GGP has one active judgment lien (filing number 16-7542926072) which was recorded against Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing judgment lien, which was recorded within the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and is therefore disputed.

f.    <u>Valley Plaza Mall, LP ("Valley Plaza")</u>.  Valley Plaza has one active judgment lien (filing number 16-7545824507) which was recorded against Angl, Inc. on September 12, 2016.  The Debtor submits that the foregoing judgment lien, which was recorded within the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and is therefore disputed.

30.    Based on the foregoing, the Debtor believes that the Bank, Fashblvd and the SBOE are the only parties that may potentially have a perfected security interest in the Debtor's cash.[5]

**D.    <u>The Need For Use Of Cash Collateral And Proposed New Operating Budget</u>.**

31.    By this Motion, the Debtor seeks an order of the Court authorizing the Debtor to use its cash, during the period from July 23, 2017 through and including October 21, 2017, to pay the expenses set forth in the Budget which is attached as Exhibit "1" to the Kim Declaration annexed hereto, as well as all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court.  In addition, the Debtor seeks authority to deviate from the expense line items contained in the Budget, without the need for any further Court order, by up to 20%, on both a line item and aggregate basis, with any unused portions to

---

[5] The Debtor does not concede that such creditors have valid and properly perfected security interests and liens in the Debtor's cash and other assets.

1    be carried over into the following week(s).  The Debtor will not deviate from the Budget beyond

2    the foregoing parameters without further order of the Court.

3       32.  The Debtor requires an order of this Court authorizing the Debtor to use cash

4    collateral in accordance with the Budget to enable the Debtor to pay all of its normal and

5    ordinary operating expenses (such as payroll, rent, utilities, insurance, and payments to vendors)

6    as they come due in the ordinary course of its business and to purchase new inventory to

7    replenish merchandise that is sold to customers at the Debtor's Remaining Retail Stores, which

8    in turn will facilitate the continued operation of the Debtor's business (without any disruption)

9    and the preservation and maximization of the going-concern value of the Debtor's business and

10    assets.  If the Debtor does not obtain authority to use its cash collateral, the Debtor's estate will

11    suffer immediate and irreparable harm, including, without limitation, a cessation of the Debtor's

12    business operations and a corresponding (and likely substantial) decline in the value of the

13    Debtor's business and assets.

14    ## II.  **DISCUSSION**

15    **A.**  **The Debtor Must Be Authorized To Use Cash Collateral To Operate Its Business**

16       **And To Maintain And Preserve The Value Of Its Assets**.

17       The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy

18    Code, which provides, in pertinent part:

19    > If the business of the debtor is authorized to be operated under
20    > section. . .1108. . . of this title and unless the court orders
otherwise, the trustee may enter into transactions, including the
21    > sale or lease of property of the estate, in the ordinary course of
business, without notice or a hearing, and may use property of the
22    > estate in the ordinary course of business without notice or a
hearing.

23

24    11 U.S.C. § 363(c)(1).

25       A debtor in possession has all of the rights and powers of a trustee with respect to

26    property of the estate, including the right to use property of the estate in compliance with

27    section 363.  11 U.S.C. § 1107(a).

28

1    "Cash collateral" is defined as "cash, negotiable instruments, documents of title,

2    securities, deposit accounts or other cash equivalents in which the estate and an entity other than

3    the estate have an interest [.]"  11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special

4    requirement with respect to "cash collateral," providing that the trustee or debtor in possession

5    may use "cash collateral" under subsection (c)(1) if:

6            (A)    each entity that has an interest in such cash collateral
             consents; or

7            (B)    the court, after notice and a hearing, authorizes such use,
             sale or lease in accordance with the provisions of this section.

8

9    11 U. S.C. §363(c)(2)(A) and (B).

10    It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the

11    purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-*

12    *Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614

13    (9th Cir. BAP 1991).  In addition, where the debtor is operating a business, it is extremely

14    important that the access to cash collateral be allowed in order to facilitate the goal of

15    reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash

16    collateral is necessary to operate a business."  *In re Dynaco Corporation*, 162 B.R. 389 (Bankr.

17    D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982).

18    For all of the reasons discussed herein, the Debtor has no ability to continue to maintain

19    its business operations or to preserve and maximize the value of its assets unless the Debtor is

20    authorized to use its cash collateral to pay its projected expenses in accordance with the Budget.

21    The Debtor's inability to pay such expenses would cause immediate and irreparable harm to the

22    Debtor's bankruptcy estate.   Indeed, the Debtor's inability to pay its projected expenses,

23    including payroll, rent, utilities and other operating expenses would result in the immediate

24    shutdown of the Debtor's business and the decimation of the value (going-concern or otherwise)

25    of the Debtor's business and assets.  The maintenance of the Debtor's business and preservation

26    and maximization of the Debtor's inventory and other assets are of the utmost significance and

27    importance to a successful reorganization of the Debtor through this Chapter 11 case.

28

**B.** **The Debtor's Prepetition Secured Creditors Are Adequately Protected By A Substantial Equity Cushion, The Continued Operation Of The Debtor's Business And Other Forms Of Adequate Protection.**

Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize a debtor in possession to use a secured creditor's cash collateral if the secured creditor consents to the use of cash collateral or is adequately protected. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). *See also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. l988) ("McCombs").

The Debtor believes that the Bank, Fashblvd, SBOE and any other creditors who assert that they have perfected security interests in the Debtor's cash (collectively, the "Secured Creditors") will ultimately consent to the Debtor's use of cash collateral to pay the expenses set forth in the Budget in accordance with the terms and conditions set forth in this Motion. Accordingly, the Debtor submits that it should be authorized to use cash collateral pursuant to section 363(c)(2)(A) of the Bankruptcy Code.

Even if the Secured Creditors do not consent to the Debtor's use of cash collateral, the Debtor submits that the value of such Secured Creditors' interests in the Debtor's cash collateral will be adequately protected by a substantial equity cushion. As discussed above, the Debtor believes that the Bank, Fashblvd and the SBOE are the only parties that may have perfected security interests in the Debtor's cash.

Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood Forest Associates*, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. *See also McCombs*, at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs*, at 266.

The Ninth Circuit made clear in *Mellor*, *Id.* at 1401, that an equity cushion of 20% is considered clear adequate protection of a secured creditor's interest in cash collateral. *See also*

16

1  *In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding a 10% cushion is sufficient to

2  be adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Vir.

3  1980) (court decided that an equity cushion of approximately 15% to 20% was sufficient

4  adequate protection to the creditor, even though the debtors had no equity in the property.)

5      Furthermore, in determining whether a secured creditor has equity in property, the Court

6  should consider the "entire security package" not just a portion thereof.  *In re Opelika*

7  *Manufacturing Corporation*, 66 B.R. 444, 447-48 (Bankr. N.D. Ill. 1986).

8      As of July 23, 2017 (the beginning date of the proposed new Budget), the Debtor

9  anticipates that it will be holding cash on hand of approximately $271,274, security deposits

10  totaling $87,013, inventory valued at approximately $3,500,000 (at cost), and FF&E with an

11  estimated fair market value of approximately $650,000.  Based on the foregoing, the aggregate

12  value of the Debtor's assets as of July 23, 2017 is estimated to be $4,508,287.

13      As noted above, the Debtor believes that the total amount owed to the Secured Creditors

14  is approximately $1,690,160, calculated as follows: (i) approximately $1,660,000 to the Bank

15  (based upon the SBA Loan only, since both the First Term Loan and Second Term Loan have

16  now been paid off), (ii) $6,000 to Fashblvd, and (iii) $24,160.38 to the SBOE.  Given the

17  aggregate value of the Debtor's assets (*i.e.*, approximately $4,508,287), and the total estimated

18  amount owed to the Debtor's Secured Creditors (*i.e.*, approximately $1,690,160), the Secured

19  Creditors are adequately protected by an equity cushion of more than 266%, which is far in

20  excess of the 20% equity cushion that the Ninth Circuit has indicated constitutes clear adequate

21  protection of a secured creditor's interest in cash collateral.

22      Furthermore, the Debtor submits that the value of the Secured Creditors' interest in the

23  Debtor's cash collateral will be adequately protected by, among other things, the maintenance

24  and continued operation of the Debtor's business.

25      The law is clear that the preservation of the value of a secured creditor's lien is sufficient

26  to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral.

27  *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988).  *See also In re Stein*, 19 B.R. 458 (Bankr.

28  E.D.Pa. 1982).  In *Stein*, the Court found that, as a general rule, a debtor may use cash collateral

1  where such use would enhance or preserve the value of the collateral, and allowed the debtor

2  therein to use cash collateral even though the secured party had no equity cushion for protection.

3  The *Stein* Court determined that the use of cash collateral was necessary to the continued

4  operations of the debtor, and that the creditor's secured position could only be enhanced by the

5  continued operation of the debtor's business. *See also In re McCombs, supra*, where the court

6  determined that the debtor's use of cash collateral for needed repairs, renovations and operating

7  expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and

8  such use would more likely increase cash collateral.

9       As reflected in the Budget, the payment of the expenses necessary for the Debtor to

10  maintain and continue operating its business will adequately protect the Secured Creditors

11  because, by doing so, the Debtor will be able to, among other things, maximize the value of its

12  inventory and generate as much revenue as possible from the sale of such inventory.  Other

13  courts have determined that a debtor's continued business operations can constitute the adequate

14  protection of a secured creditor.  *See Matter of Pursuit Athletic Footwear, Inc.,* 193 B.R. 713

15  (Bankr. D. Del. 1996); *In re Newark Airport/Hotel Ltd. Partnership*, 156 B.R. 444, 450 (Bankr.

16  D.N.J. 1993); *In re Dynaco*, 162 B.R. 389, 394-5 (Bankr. D.N.H. 1993); *In re Immenhausen*

17  *Corp.*, 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

18       Additionally, in determining adequate protection, courts have stressed the importance of

19  promoting a debtor's reorganization.  In *In re O'Connor*, *supra*, the Tenth Circuit stated:

20
21       "In this case, Debtors, in the midst of a Chapter 11 proceeding,
have proposed to deal with cash collateral for the purpose of

22  enhancing the prospects of reorganization.  This quest is the
ultimate goal of Chapter 11.  Hence, the Debtor's efforts are not

23  only to be encouraged, but also their efforts during the
administration of the proceeding are to be measured in light of

24  that quest.  Because the ultimate benefit to be achieved by a
successful reorganization inures to all the creditors of the estate, a

25  fair opportunity must be given to the Debtors to achieve that end.
Thus, while interests of the secured creditor whose property rights

26  are of concern to the court, the interests of all other creditors also
have bearing upon the question of whether use of cash collateral

27  shall be permitted during the early stages of administration."

28

1    808 F.2d at 1937.

2         The use of cash collateral is critical to the Debtor's ability to implement an effective

3    reorganization strategy for the benefit of all creditors.  As discussed above, the Debtor has filed

4    motions seeking to assume the leases for its Remaining Retail Stores and believes it will be in a

5    position to formulate and file a plan of reorganization within the next 30-60 days.  Therefore,

6    the period covered by the Budget (*i.e.*, July 23, 2017 – October 21, 2017) represents a highly

7    critical period in the Debtor's case.  If the Debtor is not permitted to use cash collateral during

8    this period so that the Debtor can focus on formulating and pursuing its ultimate reorganization

9    strategy in this case, while continuing to operate the Debtor's business (without any disruption)

10   and preserving and maximizing the going-concern value of the Debtor's business and assets, the

11   Debtor will be forced to immediately halt all business operations, which will significantly and

12   negatively impact the value of the Debtor's business and assets and the Debtor's ability to

13   successfully reorganize.  Clearly, the use of cash collateral will only enhance the prospect of the

14   Debtor's successful reorganization.

15        In addition to the forms of adequate protection discussed above, the Debtor also

16   proposes to provide its Secured Creditors with replacement liens and security interests against

17   the Debtor's post-petition assets, with such replacement liens to have the same extent, validity,

18   and priority as the pre-petition liens held by such Secured Creditors against the Debtor's assets.

19   Such replacement liens will provide the Secured Creditors with further adequate protection.

20        Given the foregoing forms of adequate protection being provided to the Debtor's pre-

21   petition Secured Creditors for the Debtor's use of cash collateral, the Debtor submits that the

22   requirements of Bankruptcy Code Section 363(c)(2) have been satisfied and that the Debtor

23   should be authorized to use cash collateral in accordance with the terms set forth in this Motion.

24   **III.**

25   **PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF**

26   **THE MOTION HAVE BEEN SATISFIED**

27        Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") sets

28   forth the procedural requirements for obtaining authority to use cash collateral.  The Debtor

1   submits that it has complied with these procedural requirements.  First, the Motion must contain

2   a copy of the proposed form of order granting the Motion, which has been done by attaching the

3   proposed order as **Exhibit "2"** to the Kim Declaration annexed hereto.  Second, the Motion

4   provides a concise statement of the relief requested, which was done above.  Third, the Motion

5   is required to be served on any entity with an interest in the Debtor's cash collateral, any

6   committee appointed or the twenty largest unsecured creditors if there is no committee, and on

7   such other parties as the Court directs.  Here, the Debtor has served the Motion and all

8   supportive papers upon the Office of the United States Trustee, all alleged secured creditors and

9   their counsel (if known), the twenty largest unsecured creditors of the Debtor (as no committee

10  yet exists), and all parties who have requested special notice.  Accordingly, the Motion complies

11  with the procedural requirements of Bankruptcy Rule 4001(b)-(d).

12      In addition, in compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy

13  Rule 4001-2, the Debtor has filed concurrently herewith the mandatory Court-approved Form

14  F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which

15  discloses whether the proposed order granting the Motion and authorizing the Debtor's use of

16  cash collateral contains certain provisions of findings of fact.  Accordingly, the Motion complies

17  with the procedural requirements of Local Bankruptcy Rule 4001-2.

18                                              **IV.**

19                                        **CONCLUSION**

20      **WHEREFORE,** the Debtor respectfully requests that this Court enter an order in

21  substantially the form attached as **Exhibit "2"** to the Kim Declaration annexed hereto:

22          (1)     granting the Motion in its entirety;

23          (2)     authorizing the Debtor to use cash collateral to (i) pay all of the expenses set

24  forth in the Budget, with authority to deviate from the line items contained in the Budget by up

25  to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into

26  the following week(s); and (ii) pay all quarterly fees owing to the Office of the United States

27  Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and

28

1          (3)      granting such other and further relief as the Court deems just and proper.

2    Dated:  June 14, 2017                    BLUE BEE, INC.

3

4

5                                            By:_____

6                                                TIMOTHY J. YOO
                                                 JULIET Y. OH
7                                                LEVENE, NEALE, BENDER, YOO
                                                     & BRILL L.L.P.
8                                                Attorneys for Debtor and
                                                 Debtor in Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JEFF SUNGHAK KIM

I, Jeff Sunghak Kim, hereby declare as follows:

1.      I am over 18 years of age.  I am the co-founder and President of Blue Bee, Inc., a California corporation d/b/a ANGL and the debtor and debtor-in-possession herein (the "<u>Debtor</u>"), and am therefore familiar with the business operations and financial books and records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.      I have access to the Debtor's books and records.  As the co-founder and President of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3.      I make this declaration in support of the Debtor's motion to which this declaration is attached (the "<u>Motion</u>") which seeks the entry of an order authorizing the Debtor to use cash collateral in accordance with the Debtor's operating budget for the 13-week period from July 23, 2017 through and including October 21, 2017 (the "<u>Budget</u>"), a copy of which is attached as **<u>Exhibit "1"</u>** hereto.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4.      On October 19, 2016 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5.      The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "<u>Retail Stores</u>," and

22

individually, a "Retail Store").

6.      The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by my wife, Young Ae Kim, and me, and was dissolved on August 30, 2013.  Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor.  My wife, Young Ae Kim, and I continue to be actively involved in the Debtor's business operations as the Secretary and President of the Debtor, respectively.

7.      The Debtor is headquartered near downtown Los Angeles, California in Vernon, California and, as of the Petition Date, employed a workforce of approximately 110 employees. In 2015, the Debtor generated annual gross revenues of more than $24 million.

8.      After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the seven-year period prior to the Petition Date.  I believe this large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

9.      I believe the high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores.  While the Debtor had already closed a number of its less

1    profitable retail store locations, leaving open approximately 21 Retail Stores as of the Petition

2    Date, the Debtor required time to evaluate the viability of the remaining Retail Stores and

3    identify other ways to decrease operational costs and increase profitability.  In order to preserve

4    the Debtor's rights under its lease agreements and to have an opportunity to restructure its

5    business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11

6    bankruptcy case.

7          10.    Through its bankruptcy case, the Debtor intends to identify the core Retail Stores

8    around which the Debtor can successfully reorganize and expeditiously close those Retail Stores

9    which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful

10   rent concessions from the landlords (a process which the Debtor has already undertaken), which

11   the Debtor believes will ultimately pave the way for the formulation (and confirmation) of a

12   plan of reorganization which restructures the Debtor's existing debt in a cohesive and efficient

13   manner while facilitating the continued operation of the Debtor's longstanding business.

14          **Post-Petition Cash Collateral Use, Business Operations And Reorganization Efforts**

15          11.    Since the Petition Date, the Debtor has continued operating its business in the

16   normal course.

17          12.    Shortly after the Petition Date, on October 24, 2016, the Debtor filed an

18   emergency motion (the "First CC Motion") seeking an order, among other things, authorizing

19   the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating

20   budget submitted therewith (the "Initial Budget").

21          13.    I am advised and believe that, on November 1, 2016, the Court entered an interim

22   order granting the First CC Motion on an interim basis, pending a final hearing (the "Interim

23   Order").  I am further advised and believe that, on December 14, 2016, the Court entered a final

24   order granting the First CC Motion on a final basis and authorizing the Debtor to use cash

25   collateral in accordance with a revised form of the Initial Budget (the "Revised Initial Budget"),

26   subject to the terms and conditions set forth on the record of the Court at the final hearing on the

27   First CC Motion held on November 30, 2016 (the "Final Order," and together with the Interim

28   Order, the "First CC Orders")).

14.     On December 29, 2016, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the First CC Orders, the Debtor filed a motion (the "Second CC Motion"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from January 22, 2017 through and including April 22, 2017 (the "Second Budget").

15.     I am advised and believe that, on January 24, 2017, the Court entered an order granting the Second CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Second Budget and in accordance with the terms and conditions set forth in the Second CC Motion (the "Second CC Order").

16.     Pursuant to the First CC Orders and the Second CC Order, the Debtor used its cash collateral in accordance with the Revised Budget and the Second Budget to operate its business.

17.     On March 31, 2017, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the Second CC Order, the Debtor filed a motion (the "Third CC Motion"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from April 22, 2017 through and including July 22, 2017 (the "Third Budget").

18.     I am advised and believe that, on April 28, 2017, the Court entered an order granting the Third CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Third Budget and in accordance with the terms and conditions set forth in the Third CC Motion (the "Third CC Order").

19.     Pursuant to the Third CC Order, the Debtor is continuing to use its cash collateral to operate its business in accordance with the Third Budget and pursuant to the terms of the Third CC Order.

20.     The Debtor's authority to use cash collateral pursuant to the Third CC Order will expire on July 22, 2017.  The Debtor has therefore filed the Motion to seek an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from July 23, 2017 through and including October 21, 2017 (the

1  "Budget"), a copy of which is attached as **Exhibit "1"** hereto.

2      21.    Shortly after the Petition Date, the Debtor began the process of analyzing the

3  financial performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to

4  determine which of the Retail Stores were currently profitable or potentially profitable if rent

5  concessions could be successfully negotiated with the landlords, and which of the Retail Stores

6  were not profitable and therefore needed to be closed on an expeditious basis.

7      22.    As a result of such analysis, during the past several months, the Debtor has

8  sought and obtained Court approval to close eight (8) of its Retail Stores and to reject the real

9  property leases associated therewith.  Based on the foregoing, the Debtor is currently operating

10  the following thirteen (13) Retail Stores (the "Operating Retail Stores"):

| Store No. & Name | Store Address | Landlord | Lease Status |
|---|---|---|---|
| Oxnard (#1) | 531 Town Center Dr. Oxnard, CA | SOCM I, LLC | Lease not assumed. |
| Santa Barbara (#3) | 505 Paseo Nuevo Santa Barbara, CA | Paseo Nuevo Owner LLC | Lease not assumed. |
| Irvine Spectrum (#5) | 71 Fortune Drive #810 Irvine, CA | The Irvine Company LLC | Lease amended and assumed. |
| Manhattan Village (#6) | 3200 N. Sepulveda Blvd. #C15 Manhattan Beach, CA | 6 RREEF America REIT II Corp. BBB | Lease amendment being negotiated. |
| Del Amo Fashion Center (#9) | 21540 Hawthorne Blvd. #522 Torrance, CA | Del Amo Fashion Center Operating Company, LLC | Lease amended and assumed. |
| Topanga Mall (#20) | 6600 Topanga Canyon Blvd. #2066 Canoga Park, CA | Westfield Topanga Owner LLC | Lease not assumed. |
| Fashion Square Mall (#21) | 14006 Riverside Dr. #21 Sherman Oaks, CA | Sherman Oaks Fashion Associates, LP | Lease not assumed. |
| Bella Terra Mall (#22) | 7777 Edinger Ave. #D148 Huntington Beach, CA | Bella Terra Associates, LLC | Lease not assumed. |
| Universal City Walk (#28) | 1000 Universal Center Dr. #172 Universal City, CA | Universal CityWalk | Lease not assumed. |
| Northridge Fashion Center (#29) | 9301 Tampa Avenue #27 Northridge, CA | Northridge Fashion Center | Lease not assumed. |

| Glendale Galleria (#31) | 2101 Galleria Way Glendale, CA | Glendale II Mall Associates, LLC | Lease amended and assumed. |
|---|---|---|---|
| Westfield Culver City (#33) | 6000 Sepulveda Blvd. #1444 Culver City, CA | Culver City Mall LLC | Lease not assumed. |
| Newport Beach Fashion Island (#47) | 1031 Newport Center Drive Newport Beach, CA | Irvine Company LLC | Lease not assumed. |

23.    As reflected in the table above, the Debtor has sought and obtained Court approval to amend and assume the real property leases for three (3) of its Operating Retail Stores, specifically, the Operating Retail Stores located in Del Amo, California, Glendale, California, and Irvine, California.

24.    Since the Petition Date, in addition to analyzing the business operations of the Debtor's Retail Stores to determine which of the stores were profitable or potentially profitable, engaging in negotiations with certain of its landlords for rent concessions and other lease modifications, and moving forward with the closure (and rejection of the corresponding leases) of eight (8) of its Retail Stores and the amendment and assumption of three (3) of its Retail Stores, the Debtor has also spent time identifying and implementing cost cutting measures as part of its efforts to streamline its business operations, including by, among other things, reducing the number of its employees and implementing payroll cuts to decrease the overall payroll costs of the company.

25.    As noted in the table above, there are a total of ten (10) real property leases relating to the Operating Retail Stores which the Debtor has yet to assume or reject.

26.    One of the real property leases which the Debtor has yet to assume or reject relates to the Debtor's retail store located at in Manhattan Beach, California (the "MB Retail Store").  The Debtor has filed a motion seeking Court approval to amend the lease for the MB Retail Store and to assume such lease (as amended), which motion is still pending.

27.    The Debtor has also filed a motion seeking Court approval to assume the nine (9) remaining real property leases (collectively, the "Remaining Leases") relating to the nine

remaining Operating Retail Stores (collectively, the "Remaining Retail Stores"), which the Debtor has yet to assume or reject. The foregoing motion is still pending Court approval.

28. Once the Debtor has obtained Court approval to amend and assume the MB Retail Store lease as well as Court approval to assume the 9 Remaining Leases, I believe that the Debtor will be in a position to formulate and file a plan of reorganization in this case. I anticipate that the Debtor will be able to file a plan of reorganization and disclosure statement in this case within the next 30-60 days.

## The Debtor's Primary Assets And Secured Debts

29. The Debtor's primary assets are as follows:

a. Cash. As of the Petition Date, the Debtor had cash on hand of approximately $93,000. I anticipate that the amount of cash that the Debtor will have on hand as of July 23, 2017 will be approximately $271,274.

b. Security Deposits. As of the Petition Date, the Debtor had security deposits with landlords and other parties in the total sum of approximately $87,013. I believe that the amount of the Debtor's Security Deposits remains unchanged since the Petition Date.

c. Inventory. As of the Petition Date, the Debtor had inventory with an estimated cost value of approximately $3,500,000. I believe that the estimated cost value of the Debtor's inventory has remained relatively constant since the Petition Date as the Debtor has continued to purchase new merchandise to replenish merchandise sold at the Retail Stores.

d. Other Assets. As of the Petition Date, the Debtor had furniture, fixtures and equipment ("FF&E") with a net book value of $6,299,306. While the Debtor initially estimated that the FF&E had an estimated aggregate fair value of approximately $1,000,000, based upon discussions that the Debtor and its counsel have had with a number of liquidation companies (including Reich Brothers, LLC, Cheaper Office Solutions, and Pope's Antiques & Auctions, Inc.), I believe that the only FF&E that has any actual value are the FF&E contained at the Remaining Retail Stores (consisting of

1    racks, shelving, and other personal property).  Based upon my experience and

2    knowledge of the retail industry, I estimate that the FF&E at the Remaining Retail Stores

3    has an estimated aggregate fair market value of approximately $650,000 (or

4    approximately $50,000 per store).  The Debtor recently "downsized" from its former

5    warehouse facility in Vernon, California to a substantially smaller office space in

6    Vernon, California.  In connection with the move to the smaller office space, and with

7    the consent of the Debtor's senior secured lender, Pacific City Bank, the Debtor disposed

8    of the non-store FF&E that was being maintained at its former warehouse facility, which

9    FF&E the Debtor was not using and the Debtor determined had nominal market value (if

10   any).[6]

11   30.    Based on the foregoing, the aggregate value of the Debtor's assets as of July 23,

12   2017 is estimated to total $4,508,287.

13   31.    The Debtor's senior secured lender is Pacific City Bank (the "Bank").  As of the

14   Petition Date, the Debtor was a borrower under three (3) separate loans with the Bank, as

15   described below:

16          a.    The Debtor is the borrower under a U.S. Small Business Administration

17   loan with the Bank (the "SBA Loan"), pursuant to a Loan Agreement dated July 24,

18   2014 between the Debtor and the Bank.  The Debtor is currently indebted to the Bank in

19   the amount of approximately $1,660,000 under the SBA Loan.  I am advised and believe

20   that the Bank filed UCC-1 financing statements against the Debtor and its predecessor,

21   Angl, Inc. asserting a lien against substantially all of the assets of the Debtor and Angl,

22   Inc.

23          b.    The Debtor was the borrower under a term loan bearing the Loan Number

24   134077 with the Bank (the "First Term Loan"), pursuant to a Business Loan Agreement

---

26   [6] As noted herein, the Debtor and its counsel contacted a number of liquidation companies to determine
27   whether the non-store FF&E that was being maintained at the Debtor's former warehouse facility could be sold or
     otherwise liquidated for cash.  All of the liquidation companies contacted by the Debtor declined to purchase, or
28   otherwise be retained to liquidate, such FF&E and informed the Debtor that such FF&E had no market value (and
     that the Debtor would likely have to pay a third party company out-of-pocket for the cost of removing and
     disposing of such FF&E).

dated November 2, 2015 between the Debtor and the Bank.  The First Term Loan was secured by certain non-Debtor assets, including commercial real property owned by the Debtor's affiliate, Peace People, LLC (the "Affiliate Commercial Property").    The Affiliate Commercial Property was recently sold to a third party purchaser, which sale resulted in the full repayment and satisfaction of the First Term Loan.  Therefore, the Debtor has no remaining obligations under the First Term Loan.

c.       The Debtor was the borrower under a second term loan bearing the Loan Number 133776 (the "Second Term Loan"), pursuant to a Business Loan Agreement dated July 23, 2014 between the Debtor and the Bank. The Second Term Loan was also secured by the Affiliate Commercial Property, and was fully repaid and satisfied upon the recent successful sale of the Affiliate Commercial Property.  Therefore, the Debtor has no remaining obligations under the Second Term Loan.

32.      Prior to the Petition Date, the Debtor obtained a secured loan in the amount of $6,000 from Fashblvd, Inc. ("Fashblvd").  I am advised and believe that Flashblvd filed a UCC-1 financing statement (Document No. 57738600002) asserting a lien against substantially all of the assets of the Debtor prior to the commencement of the Debtor's bankruptcy case on October 19, 2016.

33.      I am advised and believe that, in addition to the financing statements filed by the Bank and Fashblvd against the Debtor and/or its predecessor, Angl, Inc., there are financing statements that have been filed against the Debtor and Angl, Inc. by the following parties:

a.       U.S. Bank Equipment Finance.  I am advised and believe that U.S. Bank Equipment Finance has one active financing statement (filing number 13-7390160767), filed on December 10, 2013, which purports to cover certain specified equipment leased or financed from U.S. Bank Equipment Finance.  U.S. Bank Equipment Finance does not purport to assert a security interest in the Debtor's cash.

b.       California State Board Of Equalization ("SBOE").  I am advised and believe that SBOE has one active state tax lien (filing number 15-7447815850) which was recorded against the Debtor on January 29, 2015.

30

1    c. <u>Line & Dot, LLC d/b/a Lumiere Collections ("L&E")</u>.  I am advised and

2 believe that L&E recorded a judgment lien against the Debtor (filing number 16-

3 7546469513) on September 15, 2016.  The Debtor and L&E entered into a stipulation to

4 avoid the foregoing judgment lien, which stipulation I am advised and believe was

5 approved by the Court pursuant to an order entered on December 22, 2016.

6    d. <u>Tyler Mall Limited Partnership ("Tyler Mall")</u>.  I am advised and believe

7 that Tyler Mall has one active judgment lien (filing number 16-7542925708) which was

8 recorded against Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing

9 judgment lien, which was recorded within the 90-day period preceding the Petition Date,

10 is avoidable as a preferential transfer and is therefore disputed.

11    e. <u>GGP-Otay Ranch, L.P. ("GGP")</u>.  I am advised and believe that GGP has

12 one active judgment lien (filing number 16-7542926072) which was recorded against

13 Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing judgment lien,

14 which was recorded within the 90-day period preceding the Petition Date, is avoidable as

15 a preferential transfer and is therefore disputed.

16    f. <u>Valley Plaza Mall, LP ("Valley Plaza")</u>.  I am advised and believe that

17 Valley Plaza has one active judgment lien (filing number 16-7545824507) which was

18 recorded against Angl, Inc. on September 12, 2016.  The Debtor submits that the

19 foregoing judgment lien, which was recorded within the 90-day period preceding the

20 Petition Date, is avoidable as a preferential transfer and is therefore disputed.

21  34. Based on the foregoing, I believe that the Bank, Fashblvd and the SBOE are the

22 only parties that may potentially have a perfected security interest in the Debtor's cash.[7]

23  **<u>The Need For Use Of Cash Collateral And Proposed New Operating Budget</u>**

24  35. By this Motion, the Debtor seeks an order of the Court authorizing the Debtor to

25 use its cash, during the period from July 23, 2017 through and including October 21, 2017, to

26 pay the expenses set forth in the Budget which is attached as Exhibit "1" hereto, as well as all

27 _____

28  [7] The Debtor does not concede that such creditors have valid and properly perfected security interests and liens in the Debtor's cash and other assets.

1  quarterly fees owing to the Office of the United States Trustee and all expenses owing to the

2  Clerk of the Bankruptcy Court.  In addition, the Debtor seeks authority to deviate from the

3  expense line items contained in the Budget, without the need for any further Court order, by up

4  to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into

5  the following week(s).  The Debtor will not deviate from the Budget beyond the foregoing

6  parameters without further order of the Court.

7      33.    The Debtor requires authority to use cash collateral in accordance with the

8  Budget to enable the Debtor to pay all of its normal and ordinary operating expenses (such as

9  payroll, rent, utilities, insurance, and payments to vendors) as they come due in the ordinary

10 course of its business and to purchase new inventory to replenish merchandise that is sold to

11 customers at the Debtor's Remaining Retail Stores. I do not believe the Debtor has the ability to

12 maintain its business operations or to preserve and maximize the value of its assets unless the

13 Debtor is authorized to use its cash to pay its projected expenses in accordance with the Budget.

14 I believe the Debtor's inability to pay such expenses would cause immediate and irreparable

15 harm to the Debtor's bankruptcy estate.  Indeed, the Debtor's inability to pay its projected

16 expenses, including payroll, rent, utilities and other operating expenses would result in the

17 immediate shutdown of the Debtor's business and the decimation of the value (going-concern or

18 otherwise) of the Debtor's business and assets.

19     36.    The proposed order granting the Motion is attached as **Exhibit "2"** hereto.

20     I declare under penalty of perjury that the foregoing is true and correct to the best of my

21 knowledge.

22     Executed on this 12th day of June, 2017, at Los Angeles, California.

25     JEFF SUNGHAK KIM

32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>EXHIBIT "1"</u>**

[Budget]

**BLUE BEE, INC.**
**13 Week Cash Flow Projection**
**From 7/23/2017   To   10/21/2017**

| Week No | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning | 23-Jul | 30-Jul | 6-Aug | 13-Aug | 20-Aug | 27-Aug | 3-Sep | 10-Sep | 17-Sep | 24-Sep | 1-Oct | 8-Oct | 15-Oct |
| Week Ending | 29-Jul | 5-Aug | 12-Aug | 19-Aug | 26-Aug | 2-Sep | 9-Sep | 16-Sep | 23-Sep | 30-Sep | 7-Oct | 14-Oct | 21-Oct |
| Beginning Balance | 271,274 | 336,865 | 199,835 | 268,305 | 276,775 | 342,366 | 365,336 | 268,006 | 264,176 | 326,846 | 386,137 | 243,807 | 306,477 |
| Sales | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 125,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 |
| Merchandise Payments | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 |
| Gross Profit | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 |
| Rent & Related | | 160,000 | | | | | 160,000 | | | | 160,000 | | |
| Payroll & Payroll Taxes | | 45,000 | | 45,000 | | 45,000 | | 45,000 | | | 45,000 | | 45,000 |
| General & Adminstrave Exp | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Bank & Card Processing Fee | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 |
| Equipment Payment | 2,879 | | | | 2,879 | | | | | | 2,879 | | |
| Insurance | | | | 15,000 | | | | 15,000 | | | | | 15,000 |
| Repair & Maintenance | | 500 | | | | 500 | | | | 500 | | | |
| Postage & Delivery | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Miscellaneous | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Total Disbursements | 9,409 | 212,030 | 6,530 | 66,530 | 9,409 | 52,030 | 166,330 | 66,330 | 6,330 | 9,709 | 211,330 | 6,330 | 66,330 |
| Operating Cash Flow | 65,591 | (137,030) | 68,470 | 8,470 | 65,591 | 22,970 | (97,330) | 2,670 | 62,670 | 59,291 | (142,330) | 62,670 | 2,670 |
| UST Fees | | | | | | | | 6,500 | | | | | |
| Net Cash Flow | 65,591 | (137,030) | 68,470 | 8,470 | 65,591 | 22,970 | (97,330) | (3,830) | 62,670 | 59,291 | (142,330) | 62,670 | 2,670 |
| Ending Balance | 336,865 | 199,835 | 268,305 | 276,775 | 342,366 | 365,336 | 268,006 | 264,176 | 326,846 | 386,137 | 243,807 | 306,477 | 309,147 |

1
2
3
4
5
6
7
8
# EXHIBIT "2"
9
10
[Proposed Order]
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TIMOTHY J. YOO (SBN 155531)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: tjy@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor in Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:16-bk-23836-SK |
| | ) |
| BLUE BEE, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) **[PROPOSED]  ORDER  GRANTING** |
| | ) **DEBTOR'S MOTION FOR ENTRY OF** |
| | ) **ORDER  AUTHORIZING  DEBTOR  TO** |
| | ) **USE  CASH  COLLATERAL  THROUGH** |
| | ) **AND INCLUDING OCTOBER 21, 2017** |
| | ) |
| | ) Hearing: |
| | ) Date:          July 13, 2017 |
| | ) Time:          8:30 a.m. |
| | ) Courtroom:   1575 |
| | ) Location:     255 E. Temple Street |
| | )                   Los Angeles, California |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

1

1    A hearing was held on July 13, 2017 at 8:30 a.m., before the Honorable Sandra R. Klein,

2    United States Bankruptcy Judge for the Central District of California, Los Angeles Division, in

3    Courtroom "1575" located at 255 E. Temple Street, Los Angeles, California, to consider the

4    motion (the "Motion") filed by Blue Bee, Inc., a California corporation d/b/a ANGL and the

5    debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the

6    "Debtor"), for the entry of an order authorizing the Debtor to use its cash collateral in accordance

7    with the Debtor's operating budget  for the 13-week period from July 23, 2017 through and

8    including October 21, 2017 (the "Budget"), a copy of which is attached as Exhibit "1" to the

9    Declaration of Jeff Sunghak Kim annexed to the Motion and is also attached as **Exhibit "A"**

10   hereto, and granting related relief.  Appearances at the hearing on the Motion were made as set

11   forth on the record of the Court.

12   The Court, having considered the Motion, all papers filed by the Debtor in support of the

13   Motion, and the oral arguments and statements of counsel made at the hearing on the Motion,

14   proper and adequate notice of the Motion and the hearing on the Motion having been provided,

15   and other good cause appearing therefor,

16   IT IS HEREBY ORDERED AS FOLLOWS:

17   A.    The Motion is granted.

18   B.    The Debtor is authorized to use cash collateral to (i) pay all of the expenses set

19   forth in the Budget, with authority to deviate from the line items contained in the Budget by not

20   more than 20%, on both a line item and aggregate basis, with any unused portions to be carried

21   over into the following week(s) and (ii) pay all quarterly fees owing to the Office of the United

22   States Trustee and all expenses owing to the Clerk of the Bankruptcy Court.

23   IT IS SO ORDERED.

24

25                                         ###

26

27

28

1

# EXHIBIT "A"

## [Operating Budget]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL THROUGH AND INCLUDING OCTOBER 21, 2017; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFF SUNGHAK KIM IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 14, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Franklin C Adams    franklin.adams@bbklaw.com,
  arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com**
- **Marc Andrews    bankruptcycls@wellsfargo.com, andrewma@wellsfargo.com**
- **Dustin P Branch    branchd@ballardspahr.com,
  carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **Lynn Brown    notices@becket-lee.com**
- **Brian W Byun    bbyun@ci.vernon.ca.us**
- **John H Choi    johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com**
- **Dare Law    dare.law@usdoj.gov**
- **Thor D McLaughlin    tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ernie Zachary Park    ernie.park@bewleylaw.com**
- **Ronald M Tucker    rtucker@simon.com,
  cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Michael A Wallin    mwallin@slaterhersey.com, mrivera@slaterhersey.com**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**

**2.  SERVED BY UNITED STATES MAIL**: On **June 14, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 14, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

1

***Served via Attorney Service***
The Honorable Sandra R. Klein
2  United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
3  255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012
4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is
5  true and correct.

6  | June 14, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
   | Date | Type Name | Signature |
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                      **F 9013-3.1.PROOF.SERVICE**

Blue Bee, Inc.
Top 20, Secured Creditors, OUST, RSN

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Brian D. Huben
Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018

*Counsel to Caribbean Queen Inc.*
Law Offices of Jacqueline N. Anker
27 W Anapamu, Suite 325
Santa Barbara, CA 93101

*Counsel to Macerich Cerritos LLC*
David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Michael A. Wallin
Slater Hersey & Lieberman LLP
18301 Von Karman Ave, Suite 1060
Irvine, CA 92612

Marc Andrews
Office of the General Counsel
Wells Fargo & Company
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435

RREEF America REIT II Corp. BBB
P.O. Box 209268
Austin, TX 78720-9268