TIMOTHY J. YOO (SBN 155531)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: tjy@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:16-bk-23836-SK |
| | ) |
| BLUE BEE, INC. d/b/a ANGL, | ) Chapter 11 |
| a California corporation, | ) |
| | ) |
| | ) **NOTICE OF MOTION AND MOTION** |
| | ) **FOR ORDER FURTHER EXTENDING** |
| Debtor. | ) **DEBTOR'S EXCLUSIVE PERIODS TO** |
| | ) **FILE PLAN OF REORGANIZATION** |
| | ) **AND OBTAIN ACCEPTANCES** |
| | ) **THEREOF; MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES;** |
| | ) **DECLARATION OF JEFF SUNGHAK** |
| | ) **KIM IN SUPPORT THEREOF** |
| | ) |
| | ) [No Hearing Required Unless Requested – |
| | ) Local Bankruptcy Rule 9013-1(o)] |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**...................................................... **6**

**I.      STATEMENT OF FACTS** ................................................................ **6**

      **A.      Background**............................................................................ **6**

      **B.      Postpetition Business Operations And Case Administration**...................... **8**

      **C.      The Need For An Extension Of The Debtor's Exclusive Periods To File
      A Plan And Obtain Acceptances Thereof** ........................................ **10**

**II.     DISCUSSION**............................................................................... **12**

      **A.      The Court Has Authority To Extend The Debtor's Exclusive Periods
      To File A Plan Of Reorganization And Obtain Acceptances Thereof** ........ **12**

      **B.      The Debtor Is Requesting Extensions Of Its Exclusivity Periods In
      Good Faith, And Not For The Purpose Of Pressuring Creditors To
      Accede To Plan Terms** ............................................................ **15**

      **C.      Progress Towards Reorganization And Proper Motives Warrant An
      Extension Of The Debtor's Plan Exclusivity Periods** ................................... **15**

**III.    CONCLUSION**............................................................................. **16**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re AmKo Plastics, Inc.*
    197 B.R. 74 (Bankr. S.D. Ohio 1996)........................................................................13

*In re Gibson & Cushman Dredging Corp.*
    101 B.R. 405 (Bankr. E.D.N.Y. 1989)......................................................................13

*In re Pine Run Trust, Inc.*
    67 B.R. 432 .......................................................................................................13, 15

*In re Public Service Company of New Hampshire*
    88 B.R. 521 (Bankr. D.N.H. 1988) ..........................................................................13

*In re Trainer's, Inc.*
    17 B.R. 246 (Bankr. E.D. Pa. 1982) ........................................................................15

**FEDERAL STATUTES**

11 U.S.C. § 1121............................................................................................................4, 13

11 U.S.C. § 1121(b) ...........................................................................................................12

11 U.S.C. § 1121(c)(3).......................................................................................................12

11 U.S.C. § 1121(d) ...........................................................................................2, 10, 12, 13

11 U.S.C. § 1107..................................................................................................................6

11 U.S.C. § 1108..................................................................................................................6

**OTHER AUTHORITIES**

Fed.R.Bankr.P. 9013-1........................................................................................................4

Fed.R.Civ.P. 5(b)(2)............................................................................................................4

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) ........................................13

1       **PLEASE TAKE NOTICE** that Blue Bee, Inc. d/b/a ANGL, the debtor and debtor in

2   possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby submits this

3   motion (the "Motion") for the entry of an order further extending the Debtor's exclusive periods

4   to file a plan of reorganization ("Plan") and obtain acceptances thereof pursuant to 11 U.S.C. §

5   1121(d).

6       The Debtor filed its voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the

7   "Bankruptcy Code") on October 19, 2016 (the "Petition Date").  Based on the Petition Date, the

8   Debtor's exclusive periods to file a Plan and obtain acceptances thereof under 11 U.S.C. §

9   1121(d) would have expired on February 16, 2017 and April 17, 2017, respectively.  Pursuant to

10  orders previously entered by the Court, the Debtor's exclusive periods to file a Plan and obtain

11  acceptances thereof have been extended a number of times and are currently set to expire on

12  October 16, 2017 and December 15, 2017, respectively.

13      By this Motion, and for the reasons set forth in the Memorandum of Points and

14  Authorities annexed hereto, the Debtor seeks the entry of an order briefly extending the Debtor's

15  exclusive periods to file a Plan and obtain acceptances thereof, for a period of approximately 30

16  days, to and including November 16, 2017 and January 15, 2018, respectively.  The Debtor seeks

17  the foregoing extensions without prejudice to its right to seek further extensions of its exclusivity

18  periods.

19      The Debtor is a retailer doing business under the "ANGL" brand offering stylish and

20  contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the

21  Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in

22  shopping malls throughout the state of California (collectively, the "Retail Stores," and

23  individually, a "Retail Store").

24      The Debtor submits that "cause" exists to briefly extend its exclusive periods to file a

25  Plan and to obtain acceptances thereof in this case.  As noted by the Debtor at the outset of its

26  bankruptcy case, the Debtor believed it was critical that it first identify the core Retail Stores

27  around which it might ultimately be able to reorganize before the Debtor could begin exploring

28

and formulating the terms of a feasible plan of reorganization in this case.  Ultimately, as a result of the Debtor's analysis of the business operations of the Retail Stores and negotiation with certain of its landlords for rent concessions and other lease modifications, the Debtor ultimately elected to close (and reject the corresponding leases for) eight (8) of its Retail Stores, leaving the Debtor with a total of thirteen (13) currently operating Retail Stores (the "Operating Retail Stores").  On July 31, 2017, the Court entered an order authorizing the Debtor to assume the real property leases for nine (9) of the Operating Retail Stores, thereby concluding the Debtor's analysis and final determination regarding the assumption or rejection of the leases for the Retail Stores.

While the Debtor has been in the process of evaluating and formulating the potential terms of a Plan, the Debtor requires a brief extension of time to complete its review of the proofs of claim that have been filed by creditors in the Debtor's case (which claims will need to be accounted for in any Plan), to continue to evaluate and determine the feasibility of potential terms of a Plan, to continue to evaluate its business operations and to prepare accurate cash flow forecasts in support of a Plan, and to complete the preparation of a Plan and disclosure statement and other documents related thereto.

The Debtor also intends to use the brief extension of time, if granted by the Court, to engage in discussions with its primary secured creditor, Pacific City Bank, regarding the potential consensual treatment of Pacific City Bank's claim against the Debtor under a Plan. Pacific City Bank's claim is secured by substantially all assets of the Debtor and, among other things, the personal residence in Malibu, California owned by the Debtor's principals, Jeff Sunghak Kim and Young Ae Kim.  Mr. and Mrs. Kim have placed their Malibu residence on the market and have accepted an offer from a third party buyer to purchase the residence.  Although the sale of the Malibu residence has been pending for a number of months, the sale is now on the verge of closing and is anticipated to close within the next approximately thirty (30) days.  The closing of the sale of the Malibu residence will result in a substantial reduction of Pacific City Bank's claim against the Debtor, and will therefore have a significant impact upon the Debtor's

1  discussions with Pacific City Bank regarding the potential consensual treatment of Pacific City

2  Bank's claim under a Plan.

3       Based on the foregoing, the Debtor hopes to file a Plan and disclosure statement in this

4  case by mid-November 2017.  Given this anticipated timing, the Debtor seeks a brief further

5  extension of its exclusive periods to file a Plan and obtain acceptances thereof for approximately

6  thirty (30) days, to and including November 16, 2017 and January 15, 2018, respectively.

7       The Motion is based upon this Notice of Motion and Motion, 11 U.S.C. § 1121, Local

8  Bankruptcy Rule 9013-1, the accompanying Memorandum of Points and Authorities and the

9  Declaration of Jeff Sunghak Kim attached thereto, the entire record in the Debtor's case, and any

10 other evidence properly presented to the Court in support of the Motion.

11      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

12 1(o)(1), any response to or request for hearing on the Motion must be filed with the Court and

13 served on counsel for the Debtor and the United States Trustee within fourteen (14) days after

14 the date of service of this Notice, plus 3 additional days if the Notice was served by mail,

15 electronically, or pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), (E), or (F).

16      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

17 1(h), the failure to file and serve a timely response to and/or request for hearing on the Motion

18 may be deemed by the Court to constitute consent to the relief requested in the Motion.

19      **WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

20      (1)    granting the Motion in its entirety;

21      (2)    further extending the Debtor's exclusive periods to file a Plan and obtain

22 acceptances thereof for approximately thirty (30) days, to and including November 16, 2017 and

23 January 15, 2018, respectively, without prejudice to the Debtor's right to seek further extensions

24 of such periods; and

25 / / /

26 / / /

27 / / /

28

1          (3)      granting such other and further relief as the Court deems just and proper.

2  Dated:  September 28, 2017                    BLUE BEE, INC.

3

4

5                                             By:_____

6                                                  TIMOTHY J. YOO
                                                   JULIET Y. OH
7                                                  LEVENE, NEALE, BENDER, YOO
                                                      & BRILL L.L.P.
8                                                  Attorneys for Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Background.**

1.        On October 19, 2016 (the "Petition Date"), Blue Bee, Inc., a California corporation d/b/a Angl and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.        The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

3.        The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by Jeff Sunghak Kim and his wife, Young Ae Kim, and was dissolved on August 30, 2013.  Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes.  The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor. Jeff Sunghak Kim and his wife, Young Ae Kim, continue to be actively involved in the Debtor's business operations as the President and Secretary of the Debtor, respectively.

4.        The Debtor is headquartered near downtown Los Angeles, California in Vernon, California and, as of the Petition Date, employed a workforce of approximately 110 employees.  In 2015, the Debtor generated annual gross revenues of more than $24 million.

5.        After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The

vast majority of these new retail stores (approximately 43 stores) were opened within the seven-year period prior to the Petition Date.  This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

6.      The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores. While the Debtor had already closed a number of its less profitable retail store locations, leaving open 21 Retail Stores as of the Petition Date, the Debtor required time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

7.      Through its bankruptcy case, the Debtor intended to identify the core Retail Stores around which the Debtor could successfully reorganize and expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords (a process which has now been completed), and thereafter formulate and seek confirmation of a plan of reorganization which restructures the Debtor's existing debt in a cohesive and efficient manner while facilitating the continued operation of the Debtor's longstanding business.

/ / /

/ / /

**B.      Postpetition Business Operations And Case Administration.**

8.      Since the Petition Date, the Debtor has continued operating its business in the normal course.

9.      Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "<u>First CC Motion</u>") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "<u>Initial Budget</u>").

10.     On November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing (the "<u>Interim Order</u>").  On December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial Budget (the "<u>Revised Initial Budget</u>"), subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "<u>Final Order</u>," and together with the Interim Order, the "<u>First CC Orders</u>")).

11.     On December 29, 2016, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the First CC Orders, the Debtor filed a motion (the "<u>Second CC Motion</u>"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from January 22, 2017 through and including April 22, 2017 (the "<u>Second Budget</u>").

12.     On January 24, 2017, the Court entered an order granting the Second CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Second Budget and in accordance with the terms and conditions set forth in the Second CC Motion (the "<u>Second CC Order</u>").

13.     On March 31, 2017, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the Second CC Order, the Debtor filed a motion (the "<u>Third CC Motion</u>"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash

collateral in accordance with the Debtor's operating budget for the 13-week period from April 22, 2017 through and including July 22, 2017 (the "Third Budget").

14.    On April 28, 2017, the Court entered an order granting the Third CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Third Budget and in accordance with the terms and conditions set forth in the Third CC Motion (the "Third CC Order").

15.    On June 14, 2017, prior to the expiration of the Debtor's authority to use cash collateral pursuant to the Third CC Order, the Debtor filed a motion (the "Fourth CC Motion"), pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from July 23, 2017 through and including October 21, 2017 (the "Fourth Budget").

16.    On July 19, 2017, the Court entered an order granting the Fourth CC Motion and authorizing the Debtor to continue using cash collateral in accordance with the Fourth Budget and in accordance with the terms and conditions set forth in the Fourth CC Motion (the "Fourth CC Order").

17.    Pursuant to the Fourth CC Order, the Debtor is continuing to use its cash collateral to operate its business in accordance with the Fourth Budget and pursuant to the terms of the Fourth CC Order.

18.    Concurrently herewith, the Debtor has filed a motion (the "Fifth CC Motion"), pursuant to which the Debtor is seeking an order authorizing the Debtor to continue using cash collateral in accordance with the Debtor's operating budget for the 13-week period from October 22, 2017 through and including January 20, 2018.  The hearing on the Fifth CC Motion is scheduled on October 19, 2017 at 8:30 a.m.

19.    On January 25, 2017, the Court entered an order establishing March 31, 2017 as the bar date by which parties who wish to assert pre-petition claims against, and interests in, the Debtor must file and serve proofs of claim or proofs of interest in the Debtor's bankruptcy case (the "Claims Bar Date").

20.      The Debtor has reviewed the proofs of claim that have been filed by creditors in the Debtor's bankruptcy case and is in the process of completing its analysis of the total amount and types of claims that will need to be accounted for in the Debtor's plan of reorganization.

21.      As noted above, the Debtor believed it was critical that it first identify the core Retail Stores around which it might ultimately be able to reorganize before the Debtor could begin exploring and formulating the terms of a feasible plan of reorganization in this case.  Accordingly, shortly after the Petition Date, the Debtor began the process of analyzing the financial performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine which of the Retail Stores were currently profitable or potentially profitable if rent concessions could be successfully negotiated with the landlords, and which of the Retail Stores were not profitable and therefore needed to be closed on an expeditious basis.

22.      As a result of such analysis, during the past several months, the Debtor has sought and obtained Court approval to close eight (8) of its Retail Stores and to reject the real property leases associated therewith.  Based on the foregoing, the Debtor is currently operating a total of thirteen (13) Retail Stores (the "Operating Retail Stores").

23.      On July 31, 2017, the Court entered an order authorizing the Debtor to assume the real property leases for nine (9) of the Operating Retail Stores, thereby concluding the Debtor's analysis and final determination regarding the assumption or rejection of the leases for the Retail Stores.

**C.      The Need For An Extension Of The Debtor's Exclusive Periods To File A Plan And Obtain Acceptances Thereof.**

24.      Based on the Petition Date, the Debtor's exclusive periods to file a plan of reorganization ("Plan") and obtain acceptances thereof under 11 U.S.C. § 1121(d) would have expired on February 16, 2017 and April 17, 2017, respectively.

25.      Pursuant to orders entered by the Court on February 7, 2017, May 17, 2017, and August 30, 2017, the Debtor's exclusive periods to file a Plan and obtain acceptances thereof are currently set to expire on October 16, 2017 and December 15, 2017, respectively.

26.      As noted above, the Debtor recently concluded its analysis and final determination regarding the assumption or rejection of the leases for the Retail Stores, and believes it is now well positioned to formulate the terms of a Plan in this case.

27.      During the months that the Debtor's bankruptcy case has been pending, the Debtor has worked diligently to stabilize its business operations, decrease expenses and increase store revenue at its thirteen (13) Operating Retail Stores.  Although the Debtor's efforts to stabilize its business operations and increase sales were hampered by, among other things, the unexpectedly inclement weather in California during the 2016-2017 winter season, which in turn negatively impacted the entire retail industry in California, the Debtor believes that its business operations have now substantially stabilized and that it will soon be in a position to accurately forecast its sales revenue and expenditures, based upon historical performance (including its performance during the last approximately 9 months), to formulate and ultimately support a Plan in this case.

28.      While the Debtor has been in the process of evaluating and formulating the potential terms of a Plan, the Debtor requires a brief extension of time to complete its review of the proofs of claim that have been filed by creditors in the Debtor's case (which claims will need to be accounted for in any Plan), to continue to evaluate and determine the feasibility of potential terms of a Plan, to continue to evaluate its business operations and to prepare accurate cash flow forecasts in support of a Plan, and to complete the preparation of a Plan and disclosure statement and other documents related thereto.

29.      The Debtor also intends to use the brief extension of time, if granted by the Court, to engage in discussions with its primary secured creditor, Pacific City Bank, regarding the potential consensual treatment of Pacific City Bank's claim against the Debtor under a Plan. Pacific City Bank's claim is secured by substantially all assets of the Debtor and, among other things, the personal residence in Malibu, California owned by the Debtor's principals, Jeff Sunghak Kim and Young Ae Kim.  Mr. and Mrs. Kim have placed their Malibu residence on the market and have accepted an offer from a third party buyer to purchase the residence.  Although the sale of the Malibu residence has been pending for a number of months, the sale is now on the

1  verge of closing and is anticipated to close within the next approximately thirty (30) days.  The

2  closing of the sale of the Malibu residence will result in a substantial reduction (of approximately

3  $700,000) of Pacific City Bank's claim against the Debtor, and will therefore have a significant

4  impact upon the Debtor's discussions with Pacific City Bank regarding the potential consensual

5  treatment of Pacific City Bank's claim under a Plan.

6  　　　　30.　　　Based on the foregoing, the Debtor hopes to file a Plan and disclosure statement in

7  this case by mid-November 2017.  Given this anticipated timing, the Debtor seeks a brief further

8  extension of its exclusive periods to file a Plan and obtain acceptances thereof for approximately

9  thirty (30) days, to and including November 16, 2017 and January 15, 2018, respectively.   The

10  Debtor seeks the foregoing extensions without prejudice to its right to seek further extensions of

11  exclusivity.

12  　　　　　　　　　　　　　　　　　　**II.**

13  　　　　　　　　　　　　　　　**<u>DISCUSSION</u>**

14  **A.**　　**<u>The Court Has Authority To Extend The Debtor's Exclusive Periods To File A Plan</u>**

15  　　　　**<u>Of Reorganization And Obtain Acceptances Thereof</u>.**

16  　　　　Pursuant to Sections 1121(b) and (c)(3) of the Bankruptcy Code, a chapter 11 debtor has

17  the exclusive right, for a period of 120 days following the filing of the petition, to file a plan of

18  reorganization, and to thereafter obtain acceptances to any plan so filed for a period of an

19  additional 60 days.

20  　　　　Section 1121(d) of the Bankruptcy Code allows the Court to extend or reduce these time

21  periods for cause.  Section 1121(d) provides, in pertinent part, as follows:

22
23  　　　　　　　(d)(1) Subject to paragraph (2), on request of a party in interest
　　　　　　　made within the respective periods specified in subsections (b) and
24  　　　　　　　(c) of this section and after notice and a hearing, the court may for
　　　　　　　cause reduce or increase the 120-day period [exclusivity period for
25  　　　　　　　filing a plan of reorganization] or the 180-day period [exclusivity
　　　　　　　period for obtaining acceptances of the plan] referred to in this
26  　　　　　　　section.
　　　　　　　　(2)(A) The 120-day period specified in paragraph (1) may not be
27  　　　　　　　extended beyond a date that is 18 months after the date of the order
　　　　　　　for relief under this chapter.
28

1
2
        (B) The 180-day period specified in paragraph (1) may not be
extended beyond a date that is 20 months after the date of the order
for relief under this chapter.

3
11 U.S.C. § 1121(d)(1) and (2).

4
5
6
7
8
9
10
        The decision of whether to grant a request to extend or shorten the exclusivity periods lies within the sound discretion of the bankruptcy judge.  *In re AmKo Plastics, Inc.,* 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996); *In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 409 (Bankr. E.D.N.Y. 1989).  The "cause" standard referred to in Section 1121 has been referred to as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization proceedings."  *In re Public Service Company of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988).

11
12
13
14
15
16
17
18
19
20
21
22
23
        The Bankruptcy Code does not define "cause" or establish formal criteria for extensions of the exclusivity periods. Consistent with a balanced, integrated approach to reorganizations under chapter 11, Congress contemplated that bankruptcy courts would apply the exclusivity provisions flexibly so as to promote the orderly, consensual and successful reorganization of a debtor's affairs.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) [hereinafter "House Report"].  Appropriate "cause" justifying extensions of the exclusivity periods should be interpreted in the context of the overall purposes of chapter 11 and the means Congress established for accomplishing them.  Congress recognized that a debtor must have a reasonable time to formulate and negotiate a plan of reorganization.  Denying a debtor an exclusive period to propose and confirm a plan could dissuade a debtor from choosing chapter 11 and encourage creditors to act unilaterally.  House Report at 231-32.  *See also, In re Pine Run Trust, Inc.*, 67 B.R. 432, 434 (Bankr. E.D. Pa. 1936) (exclusivity determinations should balance creditor and debtor interests in favor of reorganization).

24
25
26
27
28
        The Debtor respectfully submits that good cause exists to extend the Debtor's plan exclusivity periods as requested herein.  Given the retail nature of the Debtor's business, the Debtor's ultimate reorganization strategy in this case hinged upon the Debtor's evaluation of the Retail Stores and negotiations with its landlords.  The Debtor recently completed its evaluation

1  of the Retail Stores, which evaluation ultimately resulted in the closure of eight (8) of the

2  Debtor's Retail Stores, leaving the thirteen (13) Operating Retail Stores.  While the Debtor has

3  been in the process of evaluating and formulating the potential terms of a Plan, the Debtor

4  requires a brief extension of time to complete its review of the proofs of claim that have been

5  filed by creditors in the Debtor's case (which claims will need to be accounted for in any Plan),

6  to continue to evaluate and determine the feasibility of potential terms of a Plan, to continue to

7  evaluate its business operations and to prepare accurate cash flow forecasts in support of a Plan,

8  and to complete the preparation of a Plan and disclosure statement and other documents related

9  thereto.

10       In addition, as noted above, the Debtor is also requesting the brief extension of time to

11  engage in discussions with its primary secured creditor, Pacific City Bank, regarding the

12  potential treatment of Pacific City Bank's claim against the Debtor under a Plan.  If the sale of

13  the residence owned by the Debtor's principals, Mr. and Mrs. Kim, closes within the next

14  approximately thirty (30) days, as anticipated, the claim of Pacific City Bank will be

15  substantially reduced (by approximately $700,000).  The closing of the sale of the principals'

16  residence will therefore have a significant impact upon the Debtor's discussions with Pacific

17  City Bank regarding the potential treatment of Pacific City Bank's claim under a Plan.

18       Given the foregoing issues, the Debtor believes it would be premature to file a Plan by

19  October 16, 2017 (the date that the Debtor's Plan filing exclusivity period will expire, if not

20  extended).  A premature Plan will likely lead to further delays in the plan confirmation process and

21  will serve only to increase the administrative costs of this case as any Plan filed now would likely

22  have to be amended or modified.  Under the circumstances, the Debtor submits that the requested

23  extensions of its exclusive periods to file a Plan and obtain acceptances thereof are reasonable and

24  appropriate.

25  / / /

26  / / /

27  / / /

28

**B.** **The Debtor Is Requesting Extensions Of Its Exclusivity Periods In Good Faith, And Not For The Purpose Of Pressuring Creditors To Accede To Plan Terms.**

Courts have found cause to justify an extension of a chapter 11 debtor's exclusivity periods where there is no evidence that an extension is being sought for purposes of pressuring creditors into acceding to a debtor's reorganization demands. *See In re Pine Run Trust, Inc., supra*. The Debtor's request for extensions of its Plan exclusivity periods in this case is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain Plan terms. On the contrary, the Debtor is motivated by its desire to pursue a consensual Plan, for the benefit of all of its creditors, in an orderly fashion and with minimal expense to the estate. The Debtor does not have any interest in delaying its bankruptcy case any longer than absolutely necessary. However, the Debtor submits that it is neither efficient nor cost-effective to require the Debtor to file a Plan which would ultimately require modification, at great administrative expense to the Debtor's estate.

**C.** **Progress Towards Reorganization And Proper Motives Warrant An Extension Of The Debtor's Plan Exclusivity Periods.**

Courts have recognized that the diligence of management and proper administration of the case are yet additional factors supporting an extension of the exclusivity periods. *See In re United Press International, supra; In re Trainer's, Inc.*, 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982). The Debtor is properly administering its Chapter 11 case in that it has complied with all of the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and is in compliance with the requirements of the Office of the United States Trustee applicable to debtors in possession. Under these circumstances, the Court may extend the Debtor's exclusivity periods for filing a Plan and obtaining acceptances thereof with the confidence that the Debtor is in compliance with the requirements that are a condition to the Debtor's maintaining control of its bankruptcy case.

///

///

**III.**

**CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order:

(1)    granting the Motion in its entirety;

(2)    further extending the Debtor's exclusive periods to file a Plan and obtain acceptances thereof for approximately thirty (30) days, to and including November 16, 2017 and January 15, 2018, respectively, without prejudice to the Debtor's right to seek further extensions of such periods; and

(3)    granting such other and further relief as the Court deems just and proper.

Dated:  September 28, 2017                              BLUE BEE, INC.

By:_____
       TIMOTHY J. YOO
       JULIET Y. OH
       LEVENE, NEALE, BENDER, YOO
         & BRILL L.L.P.
       Attorneys for Debtor in Possession

## **DECLARATION OF JEFF SUNGHAK KIM**

I, Jeff Sunghak Kim, hereby declare as follows:

1.      I am over 18 years of age.  I am the co-founder and President of Blue Bee, Inc., a California corporation d/b/a ANGL and the debtor and debtor-in-possession herein (the "Debtor"), and am therefore familiar with the business operations and financial books and records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.      I have access to the Debtor's books and records.  As the co-founder and President of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.   The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3.      I make this declaration in support of the Debtor's motion seeking the entry of an order further extending the Debtor's exclusive periods to file a plan of reorganization and obtain acceptances thereof for approximately ninety (90) days, to and including August 16, 2017 and October 16, 2017, respectively, without prejudice to the Debtor's right to seek further extensions of such exclusivity periods (the "Motion"), to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4.      On October 19, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5.      The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in

shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

6.    The Debtor is the successor-in-interest to Angl, Inc., a California corporation, which was founded by my wife, Young Ae Kim, and me, and was dissolved on August 30, 2013. Substantially all of the assets of Angl, Inc. were transferred to, and substantially all of the liabilities of Angl, Inc. were assumed by, the Debtor (which was formed on August 30, 2013) for tax and other corporate restructuring and marketing purposes. The same corporate directors and officers of Angl, Inc. have acted as the corporate directors and officers of the Debtor. My wife, Young Ae Kim, and I continue to be actively involved in the Debtor's business operations as the Secretary and President of the Debtor, respectively.

7.    The Debtor is headquartered near downtown Los Angeles, California in Vernon, California and, as of the Petition Date, employed a workforce of approximately 110 employees. In 2015, the Debtor generated annual gross revenues of more than $24 million.

8.    After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015. The vast majority of these new retail stores (approximately 43 stores) were opened within the seven-year period prior to the Petition Date. I believe that this large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

9.    I believe that the high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping, and the increased competition arising therefrom, left the Debtor with insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's landlords and vendors. As a result of the Debtor's defaults, numerous landlords began

commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for certain of the Retail Stores. While the Debtor had already closed a number of its less profitable retail store locations, leaving open 21 Retail Stores as of the Petition Date, the Debtor required time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease operational costs and increase profitability. In order to preserve the Debtor's rights under its lease agreements and to have an opportunity to restructure its business and financial affairs and ultimately reorganize, I caused the Debtor to file this Chapter 11 bankruptcy case.

10.    Through its bankruptcy case, the Debtor intended to identify the core Retail Stores around which the Debtor could successfully reorganize and expeditiously close those Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to obtain meaningful rent concessions from the landlords (a process which has now been completed), and thereafter formulate and seek confirmation of a plan of reorganization which restructures the Debtor's existing debt in a cohesive and efficient manner while facilitating the continued operation of the Debtor's longstanding business.

11.    Since the Petition Date, the Debtor has continued operating its business in the normal course.

12.    Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "First CC Motion") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "Initial Budget").

13.    I am advised and believe that on November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing (the "Interim Order"). I am advised and believe that on December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial Budget (the "Revised Initial Budget"), subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "Final Order," and together with the Interim Order, the

1  "First CC Orders")).

2      14.    On December 29, 2016, prior to the expiration of the Debtor's authority to use cash

3  collateral pursuant to the First CC Orders, the Debtor filed a motion (the "Second CC Motion"),

4  pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash

5  collateral in accordance with the Debtor's operating budget for the 13-week period from January

6  22, 2017 through and including April 22, 2017 (the "Second Budget").

7      15.    I am advised and believe that on January 24, 2017, the Court entered an order

8  granting the Second CC Motion and authorizing the Debtor to continue using cash collateral in

9  accordance with the Second Budget and in accordance with the terms and conditions set forth in

10  the Second CC Motion (the "Second CC Order").

11      16.    On March 31, 2017, prior to the expiration of the Debtor's authority to use cash

12  collateral pursuant to the Second CC Order, the Debtor filed a motion (the "Third CC Motion"),

13  pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash

14  collateral in accordance with the Debtor's operating budget for the 13-week period from April 22,

15  2017 through and including July 22, 2017 (the "Third Budget").

16      17.    I am advised and believe that on April 28, 2017, the Court entered an order granting

17  the Third CC Motion and authorizing the Debtor to continue using cash collateral in accordance

18  with the Third Budget and in accordance with the terms and conditions set forth in the Third CC

19  Motion (the "Third CC Order").

20      18.    On June 14, 2017, prior to the expiration of the Debtor's authority to use cash

21  collateral pursuant to the Third CC Order, the Debtor filed a motion (the "Fourth CC Motion"),

22  pursuant to which the Debtor sought an order authorizing the Debtor to continue using cash

23  collateral in accordance with the Debtor's operating budget for the 13-week period from July 23,

24  2017 through and including October 21, 2017 (the "Fourth Budget").

25      19.    I am advised and believe that on July 19, 2017, the Court entered an order granting

26  the Fourth CC Motion and authorizing the Debtor to continue using cash collateral in accordance

27  with the Fourth Budget and in accordance with the terms and conditions set forth in the Fourth CC

28

1    Motion (the "<u>Fourth CC Order</u>").

2        20.    Pursuant to the Fourth CC Order, the Debtor is continuing to use its cash collateral

3    to operate its business in accordance with the Fourth Budget and pursuant to the terms of the

4    Fourth CC Order.

5        21.    Concurrently herewith, the Debtor has filed a motion (the "<u>Fifth CC Motion</u>"),

6    pursuant to which the Debtor is seeking an order authorizing the Debtor to continue using cash

7    collateral in accordance with the Debtor's operating budget for the 13-week period from October

8    22, 2017 through and including January 20, 2018.  I am advised and believe that the hearing on the

9    Fifth CC Motion is scheduled on October 19, 2017 at 8:30 a.m.

10        22.    I am advised and believe that, on January 25, 2017, the Court entered an order

11    establishing March 31, 2017 as the bar date by which parties who wish to assert pre-petition claims

12    against, and interests in, the Debtor must file and serve proofs of claim or proofs of interest in the

13    Debtor's bankruptcy case (the "<u>Claims Bar Date</u>").

14        23.    The Debtor has reviewed the proofs of claim that have been filed by creditors in the

15    Debtor's bankruptcy case and is in the process of completing its analysis of the total amount and

16    types of claims that will need to be accounted for in the Debtor's plan of reorganization.

17        24.    As noted above, I believed it was critical that the Debtor first identify the core

18    Retail Stores around which it might ultimately be able to reorganize before the Debtor could begin

19    exploring and formulating the terms of a feasible plan of reorganization in this case.  Accordingly,

20    shortly after the Petition Date, the Debtor began the process of analyzing the financial performance

21    of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine which of the

22    Retail Stores were currently profitable or potentially profitable if rent concessions could be

23    successfully negotiated with the landlords, and which of the Retail Stores were not profitable and

24    therefore needed to be closed on an expeditious basis.

25        25.    As a result of such analysis, during the past several months, the Debtor has sought

26    and obtained Court approval to close eight (8) of its Retail Stores and to reject the real property

27    leases associated therewith.  Based on the foregoing, the Debtor is currently operating a total of

28

thirteen (13) Retail Stores (the "Operating Retail Stores"):

26.    I am advised and believe that, on July 31, 2017, the Court entered an order authorizing the Debtor to assume the real property leases for nine (9) of the Operating Retail Stores, thereby concluding the Debtor's analysis and final determination regarding the assumption or rejection of the leases for the Retail Stores.

27.    During the months that the Debtor's bankruptcy case has been pending, the Debtor has worked diligently to stabilize its business operations, decrease expenses and increase store revenue at its thirteen (13) Operating Retail Stores.  Although the Debtor's efforts to stabilize its business operations and increase sales were hampered by, among other things, the unexpectedly inclement weather in California during the 2016-2017 winter season, which in turn negatively impacted the entire retail industry in California, I believe that the Debtor's business operations have now substantially stabilized and that the Debtor will soon be in a position to accurately forecast its sales revenue and expenditures, based upon historical performance (including its performance during the last approximately 9 months), to formulate and ultimately support a Plan in this case.

28.    While the Debtor's management has been in the process of evaluating and formulating the potential terms of a Plan, I believe that the Debtor requires a brief extension of time to complete its review of the proofs of claim that have been filed by creditors in the Debtor's case (which claims will need to be accounted for in any Plan), to continue to evaluate and determine the feasibility of potential terms of a Plan, to continue to evaluate its business operations and to prepare accurate cash flow forecasts in support of a Plan, and to complete the preparation of a Plan and disclosure statement and other documents related thereto.

/ / /

/ / /

/ / /

/ / /

/ / /

29.     The Debtor's management also intends to use the brief extension of time, if granted by the Court, to engage in discussions with its primary secured creditor, Pacific City Bank, regarding the potential consensual treatment of Pacific City Bank's claim against the Debtor under a Plan.  Pacific City Bank's claim is secured by substantially all assets of the Debtor and, among other things, the personal residence in Malibu, California owned by my wife and me.  My wife and I have placed our Malibu residence on the market and have accepted an offer from a third party buyer to purchase our residence.  Although the sale of our Malibu residence has been pending for a number of months, the sale is now on the verge of closing and is anticipated to close within the next approximately thirty (30) days.  I believe that the closing of the sale of the Malibu residence will result in a substantial reduction (of approximately $700,000) of Pacific City Bank's claim against the Debtor, and will therefore have a significant impact upon the Debtor's discussions with Pacific City Bank regarding the potential consensual treatment of Pacific City Bank's claim under a Plan.

30.     Based on the foregoing, I believe that the Debtor will be in a position to file a Plan and disclosure statement in this case by mid-November 2017.  Given this anticipated timing, the Debtor seeks a brief further extension of its exclusive periods to file a Plan and obtain acceptances thereof for approximately thirty (30) days, to and including November 16, 2017 and January 15, 2018, respectively, without prejudice to its right to seek further extensions of exclusivity.

31.     The Debtor's request in the Motion to extend its Plan exclusivity periods in this case is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain Plan terms.  On the contrary, the Debtor is motivated by its desire to pursue a consensual Plan, for the benefit of all of its creditors, in an orderly fashion and with minimal expense to the estate.  The Debtor does not have any interest in delaying its bankruptcy case any longer than absolutely necessary.

/ / /

/ / /

/ / /

1        32.    To the best of my knowledge, the Debtor has complied with all of the requirements

2    of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and is in compliance with

3    the requirements of the Office of the United States Trustee applicable to debtors in possession.

4        I declare under penalty of perjury under the laws of the United States of America that that

5    the foregoing is true and correct.

6        Executed this 28th day of September, 2017, at Vernon, California.

7

8

9                                   Jeff Sunghak Kim, Declarant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER FURTHER EXTENDING DEBTOR'S EXCLUSIVE PERIODS TO FILE PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFF SUNGHAK KIM IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 28, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Franklin C Adams    franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com**
- **Marc Andrews    bankruptcycls@wellsfargo.com, andrewma@wellsfargo.com**
- **Dustin P Branch    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com**
- **Lynn Brown    notices@becket-lee.com**
- **Brian W Byun    bbyun@ci.vernon.ca.us**
- **John H Choi    johnchoi@kpcylaw.com, christinewong@kpcylaw.com**
- **Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com**
- **Dare Law    dare.law@usdoj.gov**
- **Thor D McLaughlin    tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
- **Randall P Mroczynski    randym@cookseylaw.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ernie Zachary Park    ernie.park@bewleylaw.com**
- **Ronald M Tucker    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Michael A Wallin    mwallin@slaterhersey.com, mrivera@slaterhersey.com**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com**

**2. SERVED BY UNITED STATES MAIL**: On **September 28, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR
EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
on **September 28, 2017**, I served the following persons and/or entities by personal delivery, overnight
mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or
overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
The Honorable Sandra R. Klein
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is
true and correct.

| September 28, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

Blue Bee, Inc.
Top 20, Secured Creditors, OUST, RSN

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Brian D. Huben
Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018

*Counsel to Caribbean Queen Inc.*
Law Offices of Jacqueline N. Anker
27 W Anapamu, Suite 325
Santa Barbara, CA 93101

*Counsel to Macerich Cerritos LLC*
David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Michael A. Wallin
Slater Hersey & Lieberman LLP
18301 Von Karman Ave, Suite 1060
Irvine, CA 92612

Marc Andrews
Office of the General Counsel
Wells Fargo & Company
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435