TIMOTHY J. YOO (SBN 155531)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: tjy@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:16-bk-23836-SK |
| | ) |
| BLUE BEE, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) **NOTICE OF MOTION AND MOTION** |
| | ) **FOR ENTRY OF ORDER AUTHORIZING** |
| | ) **DEBTOR TO USE CASH COLLATERAL** |
| | ) **THROUGH AND INCLUDING APRIL 21,** |
| | ) **2018; MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES;   DECLARATION   OF** |
| | ) **JEFF  SUNGHAK  KIM  IN  SUPPORT** |
| | ) **THEREOF** |
| | ) |
| | ) Date:        January 11, 2018 |
| | ) Time:        8:30 a.m. |
| | ) Courtroom:   1575 |
| | ) Location:    255 E. Temple Street |
| | )             Los Angeles, California |
| | ) |
| | ) |
| | ) |
| | ) |

1

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................... **4**

**I.** **STATEMENT OF FACTS** ................................................................................... **4**

    **A.** **Background** .................................................................................. **4**

    **B.** **Postpetition Cash Collateral Use, Business Operations And
Reorganization Efforts** ................................................................ **5**

    **C.** **The Debtor's Primary Assets And Secured Debts** ........................ **8**

    **D.** **The Need For Use Of Cash Collateral And Proposed New Operating
Budget** ........................................................................................ **13**

**II.** **DISCUSSION** ..................................................................................................... **14**

    **A.** **The Debtor Must Be Authorized To Use Cash Collateral To Operate
Its Business And To Maintain And Preserve The Value Of Its Assets** ........ **14**

    **B.** **The Debtor's Prepetition Secured Creditors Are Adequately Protected
By A Substantial Equity Cushion, The Continued Operation Of The
Debtor's Business And Other Forms Of Adequate Protection** ................. **15**

**III.** **PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF THE
MOTION HAVE BEEN SATISFIED** .......................................................... **19**

**IV.** **CONCLUSION** ................................................................................................... **20**

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*In re Dynaco Corporation*
    162 B.R. 389 (Bankr. D.N.H. 1993) ........................................................... 15, 18

5

6

*In re Immenhausen Corp.*
    164 B.R. 347 (Bankr. M.D. Fla. 1994) ............................................................... 18

7

*In re McCombs Properties VI, Ltd.*
    88 B.R. 261 (Bankr. C.D. Cal. l988) ........................................................ 15, 16, 17

8

9

*In re McGowan*
    6 B.R. 241 (Bankr. E.D. Pa. 1980) ................................................................... 16

10

*In re Mellor*
    734 F.2d 1396 (9th Cir. 1984) ..................................................................... 15, 16

11

12

*In re Newark Airport/Hotel Ltd. Partnership*
    156 B.R. 444 (Bankr. D.N.J. 1993) ................................................................... 18

13

14

*In re O'Connor*
    808 F.2d 1393 (10th Cir. 1987) ................................................................... 15, 18

15

*In re Oak Glen R-Vee*
    8 B.R. 213 (Bankr. C.D. Cal. 1981) ................................................................. 14

16

17

*In re Opelika Manufacturing Corporation*
    66 B.R. 444 (Bankr. N.D. Ill. 1986) ................................................................. 16

18

19

*In re Rogers Development Corp.*
    2 B.R. 679 (Bankr. E.D. Vir. 1980) ................................................................. 16

20

*In re Stein*
    19 B.R. 458. (Bankr. E.D. Pa. 1982) ............................................................... 17

21

22

*In re Triplett*
    87 B.R. 25 (Bankr. W.D.Tex. 1988) ............................................................... 17

23

24

*In re Tucson Industrial Partners*
    129 B.R. 614 (9th Cir. BAP 1991) ................................................................. 14

25

*Matter of Pursuit Athletic Footwear, Inc.*
    193 B.R. 713 (Bankr. D. Del. 1996) ............................................................... 17

26

27

*United Savings Association v. Timbers of Inwood Forest Associates*
    108 S.Ct. 626 (1988) ................................................................................... 16

28

**FEDERAL STATUTES**

11 U.S.C. § 101 ................................................................................................................ passim

11 U.S.C. § 361 ...................................................................................................................... 16

11 U.S.C. § 363 ................................................................................................................... 2, 14

11 U.S.C. § 363(a) .................................................................................................................. 14

11 U.S.C. § 363(c) ..................................................................................................... 14, 15, 19

11 U.S.C. § 1107 ................................................................................................................. 4, 14

11 U.S.C. § 1108 ...................................................................................................................... 4

**FEDERAL RULES**

Fed.R.Bankr.P.4001 ...................................................................................................... 2, 19, 20

Fed.R.Bankr.P. 9013-1 ............................................................................................................. 2

Fed.R.Bankr.P. 9014 ................................................................................................................. 2

Fed.R.Evid. 201 ................................................................................................................. 10, 11

1    **PLEASE TAKE NOTICE** that a hearing will be held on January 11, 2018 at 8:30

2    a.m., before the Honorable Sandra R. Klein, United States Bankruptcy Judge for the Central

3    District of California, Los Angeles Division, in Courtroom "1575" located at 255 East Temple

4    Street, Los Angeles, California, for the Court to consider the motion (the "Motion") filed by

5    Blue Bee, Inc., a California corporation d/b/a Angl and the debtor and debtor-in-possession in

6    the above-captioned Chapter 11 bankruptcy case (the "Debtor"), for the entry of an order,

7    pursuant to 11 U.S.C. § 363, authorizing the Debtor to use cash collateral in accordance with the

8    Debtor's operating budget for the 13-week period from January 21, 2018 through and including

9    April 21, 2018 (the "Budget"), a copy of which is attached as **Exhibit "1"** to the Declaration of

10   Jeff Sunghak Kim annexed hereto (the "Kim Declaration").  The full basis for the Motion is

11   described in the Memorandum of Points and Authorities and the Kim Declaration attached

12   hereto.

13       The Motion is based upon 11 U.S.C. § 363, Rules 4001 and 9014 of the Federal Rules

14   of Bankruptcy Procedure, and Local Bankruptcy Rules 4001-2 and 9013-1, the supporting

15   Memorandum of Points and Authorities and the Kim Declaration attached hereto, the

16   statements, arguments and representations of counsel to be made at the hearing on the Motion,

17   and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

18       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

19   1(f), any opposition to the Motion must be in writing, filed with the Court and served upon the

20   United States Trustee as well as counsel for the Debtor at the address set forth in the upper left-

21   hand corner of the first page of this Notice and Motion by no later than fourteen (14) days

22   before the date of the hearing on the Motion.

23       **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-

24   1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court

25   to constitute consent to the granting of the relief requested in the Motion.

26   ///

27   ///

28

1    **WHEREFORE,** the Debtor respectfully requests that this Court enter an order in

2    substantially the form attached as **Exhibit "2"** to the Kim Declaration annexed hereto:

3        (1)    granting the Motion in its entirety;

4        (2)    authorizing the Debtor to use cash collateral to (i) pay all of the expenses set

5    forth in the Budget, with authority to deviate from the line items contained in the Budget by up

6    to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into

7    the following week(s); and (ii) pay all quarterly fees owing to the Office of the United States

8    Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and

9        (3)    granting such other and further relief as the Court deems just and proper.

10   Dated: December 14, 2017                    BLUE BEE, INC.

11

12

13                                              By:_____
                                                    TIMOTHY J. YOO
14                                                  JULIET Y. OH
                                                    LEVENE, NEALE, BENDER, YOO
15                                                      & BRILL L.L.P.
                                                    Attorneys for Debtor and
16                                                  Debtor in Possession

17

18

19

20

21

22

23

24

25

26

27

28

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

**A.      Background.**

1.      On October 19, 2016 (the "Petition Date"), Blue Bee, Inc., a California corporation d/b/a Angl and the debtor and debtor-in-possession herein (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").   The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

3.      The Debtor is headquartered near downtown Los Angeles, California in Vernon, California and, as of the Petition Date, employed a workforce of approximately 110 employees. In 2015, the Debtor generated annual gross revenues of more than $24 million.

4.      After opening its first retail store approximately 24 years ago in 1992, the Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by 2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within the seven-year period prior to the Petition Date.   This large expansion effort, which was conducted within a relatively compressed period of time, took a heavy financial toll on the business operations of the Debtor's predecessor as a whole as it incurred construction and other "start up" costs with the opening of each new store as well as a significant increase in operating expenses typically associated with a retail store chain operation.

5.      The high cost of expansion combined with decreasing store sales as a result of a general industry-wide shift in consumer shopping preferences from in-store to online shopping,

1    and the increased competition arising therefrom, left the Debtor with insufficient liquidity to

2    meet all of its financial obligations, ultimately resulting in defaults in payments to the Debtor's

3    landlords and vendors.    As a result of the Debtor's defaults, numerous landlords began

4    commencing actions to evict the Debtor and/or terminate the Debtor's lease agreements for

5    certain of the Retail Stores.  While the Debtor had already closed a number of its less profitable

6    retail store locations, leaving open 21 Retail Stores as of the Petition Date, the Debtor required

7    time to evaluate the viability of the remaining Retail Stores and identify other ways to decrease

8    operational costs and increase profitability.  In order to preserve the Debtor's rights under its

9    lease agreements and to have an opportunity to restructure its business and financial affairs and

10    ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

11        6.    Through its bankruptcy case, the Debtor intended to identify the core Retail

12    Stores around which the Debtor could successfully reorganize and expeditiously close those

13    Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to

14    obtain meaningful rent concessions from the landlords (a process which has now been

15    completed), and thereafter formulate and seek confirmation of a plan of reorganization which

16    restructures the Debtor's existing debt in a cohesive and efficient manner while facilitating the

17    continued operation of the Debtor's longstanding business.

18    **B.**    **Postpetition Cash Collateral Use, Business Operations And Reorganization Efforts.**

19        7.    Since the Petition Date, the Debtor has continued operating its business in the

20    normal course.

21        8.    Shortly after the Petition Date, on October 24, 2016, the Debtor filed an

22    emergency motion (the "First CC Motion") seeking an order, among other things, authorizing

23    the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating

24    budget submitted therewith (the "Initial Budget").

25        9.    On November 1, 2016, the Court entered an interim order granting the First CC

26    Motion on an interim basis, pending a final hearing (the "Interim Order").  On December 14,

27    2016, the Court entered a final order granting the First CC Motion on a final basis and

28    authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial

5

1  Budget (the "Revised Initial Budget"), subject to the terms and conditions set forth on the record

2  of the Court at the final hearing on the First CC Motion held on November 30, 2016 (the "Final

3  Order," and together with the Interim Order, the "First CC Orders")).

4        10.    On January 24, 2017, the Court entered a second order authorizing the Debtor to

5  continue using cash collateral in accordance with the operating budget submitted by the Debtor

6  for the 13-week period from January 22, 2017 through and including April 22, 2017 (the

7  "Second CC Order").

8        11.    On April 28, 2017, the Court entered a third order authorizing the Debtor to

9  continue using cash collateral in accordance with the operating budget submitted by the Debtor

10  for the 13-week period from April 22, 2017 through and including July 22, 2017 (the "Third CC

11  Order").

12        12.    On July 19, 2017, the Court entered a fourth order authorizing the Debtor to

13  continue using cash collateral in accordance with the operating budget submitted by the Debtor

14  for the 13-week period from July 23, 2017 through and including October 21, 2017 (the "Fourth

15  CC Order").

16        13.    On October 25, 2017, the Court entered a fifth order authorizing the Debtor to

17  continue using cash collateral in accordance with the operating budget submitted by the Debtor

18  for the 13-week period from October 22, 2017 (the "Fifth Budget") through and including

19  January 20, 2018 (the "Fifth CC Order").

20        14.    The Debtor is continuing to use its cash collateral to operate its business in the

21  ordinary course of business, in accordance with the Fifth Budget and pursuant to the terms of

22  the Fifth CC Order.

23        15.    The Debtor's authority to use cash collateral pursuant to the Fifth CC Order will

24  expire on January 20, 2018.  The Debtor has therefore filed this Motion to seek an order of the

25  Court authorizing the Debtor to continue using cash collateral in accordance with the Debtor's

26  operating budget for the 13-week period from January 21, 2018 through and including April 21,

27  2018 (the "Budget"), a copy of which is attached as **Exhibit "1"** to the Declaration of Jeff

28  Sunghak Kim annexed hereto (the "Kim Declaration").

16.     As noted above, the Debtor believed it was critical that it first identify the core Retail Stores around which it might ultimately be able to reorganize before the Debtor could begin exploring and formulating the terms of a feasible Plan in this case.  Accordingly, shortly after the Petition Date, the Debtor began the process of analyzing the financial performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine which of the Retail Stores were currently profitable or potentially profitable if rent concessions could be successfully negotiated with the landlords, and which of the Retail Stores were not profitable and therefore needed to be closed on an expeditious basis.

17.     As a result of such analysis, during the past several months, the Debtor has sought and obtained Court approval to close eight (8) of its Retail Stores and to reject the real property leases associated therewith.  Based on the foregoing, the Debtor is currently operating a total of thirteen (13) Retail Stores (the "Operating Retail Stores"), which comprise the core group of retail stores around which the Debtor intends to reorganize.

18.     Although the Debtor has made significant efforts during the past year that it has been in Chapter 11 to stabilize its business operations and increase sales, such efforts have been hampered by, among other things, the unexpectedly inclement weather in California during the 2016-2017 winter and spring seasons, which in turn negatively impacted the Debtor's ability to generate sales revenue, and the Debtor's constrained cash flow due to, among other reasons, demands by certain of the Debtor's vendors for up-front payments for necessary merchandise and inventory and the funding of lease cure payments required to be made in conjunction with the Debtor's assumption of the leases for its thirteen (13) Operating Retail Stores.

19.     On November 1, 2017, three of the Debtor's former landlords (whose leases the Debtor rejected) filed motions seeking the allowance and immediate payment of administrative expense priority claims for alleged unpaid post-petition rent totaling over $198,000 (the "Admin Rent Motions").  The hearings on the Admin Rent Motions are currently set for January 11, 2017 at 8:30 a.m. (the same date and time as the hearing on this Motion).  Although the Debtor disputes the calculation and amounts of the administrative expense priority claims asserted by the landlords in the Admin Rent Motions, and is in discussions with such landlords regarding a

7

potential consensual resolution of the Admin Rent Motions, in the event that the Court determines that such landlords are entitled to the allowance and immediate payment of the administrative rent claim asserted in the Admin Rent Motions, the Debtor's ability to continue operating its business and formulate a feasible Plan may be jeopardized, given the Debtor's current cash availability.

20.    Notwithstanding the Debtor's current cash flow situation, and the potential impact that the Admin Rent Motions will have on the Debtor's ability to continue operating its business and to formulate a feasible Plan, the Debtor has begun evaluating and formulating the potential terms of a Plan.  However, the Debtor and its management require additional time to (i) evaluate the Debtor's business operations (particularly during the upcoming holiday selling season, which is a critical period for the Debtor) and to prepare accurate cash flow forecasts in support of a Plan, (ii) complete their analysis of the claims that have been filed by creditors in the Debtor's case, including, without limitation, a number of large administrative rent claims asserted by several of the Debtor's landlords (including those asserted in the Admin Rent Motions), (iii) determine how much cash the Debtor will have available on the anticipated effective date of the Plan to help fund the Plan so that management may determine how much additional cash will be required (either from the Debtor's principals or outside sources) to fund the Plan, and (iv) complete the preparation of the combined form Plan and disclosure statement (and other documents related thereto) required by the Court.  The Debtor also requires time to complete its discussions with its secured lender, Pacific City Bank (the "<u>Bank</u>"), and other creditors regarding the potentially consensual treatment of such creditors' claims in the Plan.

21.    Based on the foregoing, the Debtor hopes to file its Plan and disclosure statement by mid-January, 2018.

**C.    <u>The Debtor's Primary Assets And Secured Debts</u>.**

22.    The Debtor's primary assets are as follows:

a.    <u>Cash</u>.  As of the Petition Date, the Debtor had cash on hand of approximately $93,000.  The Debtor anticipates that the amount of cash it will have on hand as of January 21, 2018 will be approximately $132,520.

8

b.    Security Deposits.    As of the Petition Date, the Debtor had security deposits with landlords and other parties in the total sum of approximately $87,013.  The Debtor believes that the amount of the Security Deposits remaining (for the thirteen Operating Retail Stores) is approximately $53,215.

c.    Inventory.    As of the Petition Date, the Debtor had inventory with an estimated cost value of approximately $3,500,000.   In light of the reduction of the number of operating Retail Stores from twenty one (21) Retail Stores as of the Petition Date to the current thirteen (13) Operating Retail Stores, the Debtor believes that the estimated cost value of its current inventory is approximately seventy-five percent (75%) of the estimated cost value of the inventory that the Debtor had as of the Petition Date, or approximately $2,625,000.  The Debtor is generally maintaining this level of inventory in its Operating Retail Stores as the Debtor continues to purchase new merchandise to replenish merchandise sold at the Operating Retail Stores.

d.    Other Assets.    As of the Petition Date, the Debtor had furniture, fixtures and equipment ("FF&E") with a net book value of $6,299,306.   While the Debtor initially estimated that the FF&E had an estimated aggregate fair value of approximately $1,000,000, based upon discussions that the Debtor has had with a number of liquidation companies, the Debtor believes that the only FF&E that has any actual value are the FF&E contained at the thirteen (13) Operating Retail Stores (consisting of racks, shelving, and other personal property).   The Debtor estimates that the FF&E at the Operating Retail Stores has an estimated aggregate fair market value of approximately $650,000 (or approximately $50,000 per store).   Subsequent to the Petition Date, the Debtor "downsized" from its former warehouse facility in Vernon, California to a substantially smaller office space in Vernon, California.  In connection with the move to the smaller office space, and with the consent of the Bank, the Debtor disposed of the non-store FF&E that was being maintained at its former warehouse facility, which FF&E the Debtor was not using and the Debtor determined had nominal market value (if any).

1    23.    The Debtor's senior secured lender is the Bank.  As of the Petition Date, the

2    Debtor was a borrower under three (3) separate loans with the Bank, two of which have since

3    been fully repaid and satisfied, as described below:[1]

4              a.    The Debtor is the borrower under a U.S. Small Business Administration

5    loan with the Bank (the "SBA Loan"), pursuant to a Loan Agreement dated July 24,

6    2014 between the Debtor and the Bank.  The Debtor is currently indebted to the Bank in

7    the amount of approximately $1,180,000 under the SBA Loan.  The Bank filed UCC-1

8    financing statements against the Debtor and its predecessor, Angl, Inc. asserting a lien

9    against substantially all of the assets of the Debtor and Angl, Inc.  The SBA Loan was

10   also secured by a lien against a Malibu, California residence previously owned by the

11   Debtor's principals, Mr. and Mrs. Kim.  Recently, the Malibu residence owned by Mr.

12   and Mrs. Kim was sold to a third party purchaser, from which sale the Bank received a

13   payment of $600,000, thereby reducing the outstanding balance of the SBA Loan to

14   approximately $1,180,000.

15             b.    The Debtor was the borrower under a term loan bearing the Loan Number

16   134077 with the Bank (the "First Term Loan"), pursuant to a Business Loan Agreement

17   dated November 2, 2015 between the Debtor and the Bank.  The First Term Loan was

18   secured by certain non-Debtor assets, including commercial real property owned by the

19   Debtor's affiliate, Peace People, LLC (the "Affiliate Commercial Property").  Following

20   the Petition Date, the Affiliate Commercial Property was sold to a third party purchaser,

21   which sale resulted in the full repayment and satisfaction of the First Term Loan.

22   Therefore, the Debtor has no remaining obligations under the First Term Loan.

23

24   ――――――――――――――――

25   [1] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the *Omnibus Declaration Of Jeff Sunghak Kim In Support Of Debtor's Emergency "First Day" Motions* filed by the Debtor on October 24, 2016 [Doc. No. 12], specifically Exhibit "B" thereto, which includes copies of

26   the pre-petition loan and collateral documents with the Bank.

27       The Debtor also requests that the Court take judicial notice of the *Declaration Of Juliet Y. Oh In Support Of Debtor's Emergency Motion For An Interim Order Authorizing The Debtor To Use Cash Collateral On An Interim*

28   *Basis Pending A Final Hearing* [Doc. No. 11], which includes copies of the UCC-1 financing statements filed by the Debtor's alleged secured creditors.

1          c.      The Debtor was the borrower under a second term loan bearing the Loan

2 Number 133776 (the "Second Term Loan"), pursuant to a Business Loan Agreement

3 dated July 23, 2014 between the Debtor and the Bank. The Second Term Loan was also

4 secured by the Affiliate Commercial Property, and was fully repaid and satisfied upon

5 the closing of the sale of the Affiliate Commercial Property. Therefore, the Debtor has

6 no remaining obligations under the Second Term Loan.

7      24.      Prior to the Petition Date, the Debtor obtained a secured loan in the amount of

8 $6,000 from Fashblvd., Inc. ("Fashblvd"). Flashblvd filed a UCC-1 financing statement

9 (Document No. 57738600002) asserting a lien against substantially all of the assets of the

10 Debtor prior to the commencement of the Debtor's bankruptcy case on October 19, 2016.[2]

11      25.      In addition to the financing statements filed by the Bank and Fashblvd against the

12 Debtor and/or its predecessor, Angl, Inc., there are financing statements that have been filed

13 against the Debtor and Angl, Inc. by the following parties[3]:

14          a.      U.S. Bank Equipment Finance. U.S. Bank Equipment Finance has one

15 active financing statement (filing number 13-7390160767), filed on December 10, 2013,

16 which purports to cover certain specified equipment leased or financed from U.S. Bank

17 Equipment Finance. U.S. Bank Equipment Finance does not purport to assert a security

18 interest in the Debtor's cash.

19          b.      California State Board Of Equalization ("SBOE"). SBOE has one active

20 state tax lien (filing number 15-7447815850) which was recorded against the Debtor on

21 January 29, 2015. The Debtor believes that the amount owed to SBOE which is secured

22 by the foregoing tax lien is $24,160.38.

23 _____

24     [2] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the *Declaration Of Juliet Y. Oh In Support Of Debtor's Emergency Motion For An Interim Order*

25 *Authorizing The Debtor To Use Cash Collateral On An Interim Basis Pending A Final Hearing* [Doc. No. 11], specifically Exhibit "2" thereto, which includes evidence of the filing of the UCC-1 financing statement by

26 Fashblvd against the Debtor.

27     [3] In accordance with Rule 201 of the Federal Rules of Evidence, the Debtor requests that the Court take judicial notice of the *Declaration Of Juliet Y. Oh In Support Of Debtor's Emergency Motion For An Interim Order*

28 *Authorizing The Debtor To Use Cash Collateral On An Interim Basis Pending A Final Hearing* [Doc. No. 11], specifically Exhibit "2" thereto, which includes copies of the UCC-1 financing statements filed against the Debtor.

1            c.      Line & Dot, LLC d/b/a Lumiere Collections ("L&E").  L&E has one

2    active judgment lien (filing number 16-7546469513) which was recorded against the

3    Debtor on September 15, 2016.  The parties entered into a stipulation to avoid the

4    foregoing judgment lien, which stipulation was approved by the Court pursuant to an

5    order entered on December 22, 2016.

6            d.      Tyler Mall Limited Partnership ("Tyler Mall").  Tyler Mall has one active

7    judgment lien (filing number 16-7542925708) which was recorded against Angl, Inc. on

8    August 22, 2016.  The Debtor submits that the foregoing judgment lien, which was

9    recorded within the 90-day period preceding the Petition Date, is avoidable as a

10   preferential transfer and is therefore disputed.

11           e.      GGP-Otay Ranch, L.P. ("GGP").  GGP has one active judgment lien

12   (filing number 16-7542926072) which was recorded against Angl, Inc. on August 22,

13   2016.  The Debtor submits that the foregoing judgment lien, which was recorded within

14   the 90-day period preceding the Petition Date, is avoidable as a preferential transfer and

15   is therefore disputed.

16           f.      Valley Plaza Mall, LP ("Valley Plaza").  Valley Plaza has one active

17   judgment lien (filing number 16-7545824507) which was recorded against Angl, Inc. on

18   September 12, 2016.  The Debtor submits that the foregoing judgment lien, which was

19   recorded within the 90-day period preceding the Petition Date, is avoidable as a

20   preferential transfer and is therefore disputed.

21       26.    Based on the foregoing, the Debtor believes that the Bank, Fashblvd and the

22   SBOE are the only parties that may potentially have a perfected security interest in the Debtor's

23   cash.[4]

24   / / /

25   / / /

26   / / /

27   _____

28       [4] The Debtor does not concede that such creditors have valid and properly perfected security interests and liens
in the Debtor's cash and other assets.

**D.** **The Need For Use Of Cash Collateral And Proposed New Operating Budget.**

27.    By this Motion, the Debtor seeks an order of the Court authorizing the Debtor to use its cash, during the period from January 21, 2018 through and including April 21, 2018, to pay the expenses set forth in the Budget which is attached as Exhibit "1" to the Kim Declaration annexed hereto, as well as all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court.  In addition, the Debtor seeks authority to deviate from the expense line items contained in the Budget, without the need for any further Court order, by up to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into the following week(s).  The Debtor will not deviate from the Budget beyond the foregoing parameters without further order of the Court.

28.    The Debtor requires an order of this Court authorizing the Debtor to use cash collateral in accordance with the Budget to enable the Debtor to pay all of its normal and ordinary operating expenses (such as payroll, rent, utilities, insurance, and payments to vendors) as they come due in the ordinary course of its business and to purchase new inventory to replenish merchandise that is sold to customers at the Debtor's Operating Retail Stores, which in turn will facilitate the continued operation of the Debtor's business (without any disruption) and the preservation and maximization of the going-concern value of the Debtor's business and assets.  If the Debtor does not obtain authority to use its cash collateral, the Debtor's estate will suffer immediate and irreparable harm, including, without limitation, a cessation of the Debtor's business operations and a corresponding (and likely substantial) decline in the value of the Debtor's business and assets.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.    DISCUSSION

**A.    The Debtor Must Be Authorized To Use Cash Collateral To Operate Its Business And To Maintain And Preserve The Value Of Its Assets.**

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code, which provides, in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363.  11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest [.]"   11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if:

> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991).  In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of

1   reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash

2   collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389 (Bankr.

3   D.N.H. 1993), *quoting In re Stein*, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982).

4         For all of the reasons discussed herein, the Debtor has no ability to continue to maintain

5   its business operations or to preserve and maximize the value of its assets unless the Debtor is

6   authorized to use its cash collateral to pay its projected expenses in accordance with the Budget.

7   The Debtor's inability to pay such expenses would cause immediate and irreparable harm to the

8   Debtor's bankruptcy estate.    Indeed, the Debtor's inability to pay its projected expenses,

9   including payroll, rent, utilities and other operating expenses would result in the immediate

10  shutdown of the Debtor's business and the decimation of the value (going-concern or otherwise)

11  of the Debtor's business and assets.    The maintenance of the Debtor's business and preservation

12  and maximization of the Debtor's inventory and other assets are of the utmost significance and

13  importance to a successful reorganization of the Debtor through this Chapter 11 case.

14  **B.**    **The Debtor's Prepetition Secured Creditors Are Adequately Protected By A**

15         **Substantial Equity Cushion, The Continued Operation Of The Debtor's Business**

16         **And Other Forms Of Adequate Protection.**

17        Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize a debtor

18  in possession to use a secured creditor's cash collateral if the secured creditor consents to the

19  use of cash collateral or is adequately protected. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.

20  1984). *See also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re McCombs*

21  *Properties VI, Ltd.*, 88 B.R. 261, 265 (Bankr. C.D. Cal. l988) ("McCombs").

22        The Debtor believes that the Bank, Fashblvd, SBOE and any other creditors who assert

23  that they have perfected security interests in the Debtor's cash (collectively, the "Secured

24  Creditors") will ultimately consent to the Debtor's use of cash collateral to pay the expenses set

25  forth in the Budget in accordance with the terms and conditions set forth in this Motion.

26  Accordingly, the Debtor submits that it should be authorized to use cash collateral pursuant to

27  section 363(c)(2)(A) of the Bankruptcy Code.

28

1    Even if the Secured Creditors do not consent to the Debtor's use of cash collateral, the

2    Debtor submits that the value of such Secured Creditors' interests in the Debtor's cash collateral

3    will be adequately protected by a substantial equity cushion.  As discussed above, the Debtor

4    believes that the Bank, Fashblvd and the SBOE are the only parties that may have perfected

5    security interests in the Debtor's cash.

6    Pursuant to the Supreme Court case of *United Savings Association v. Timbers of Inwood*

7    *Forest Associates*, 108 S.Ct. 626, 629 (1988) ("<u>Timbers</u>") and subsequent case law, the property

8    interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the

9    Bankruptcy Code is only the value of the lien that secures the creditor's claim.  108 S.Ct. at 630.

10    *See also McCombs*, at 266.  Section 506(a) "limit[s] the secured status of a creditor (i.e., the

11    secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the

12    collateral."  *McCombs*, at 266.

13    The Ninth Circuit made clear in *Mellor*, *Id.* at 1401, that an equity cushion of 20% is

14    considered clear adequate protection of a secured creditor's interest in cash collateral.  *See also*

15    *In re McGowan,* 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding a 10% cushion is sufficient to

16    be adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Vir.

17    1980) (court decided that an equity cushion of approximately 15% to 20% was sufficient

18    adequate protection to the creditor, even though the debtors had no equity in the property.)

19    Furthermore, in determining whether a secured creditor has equity in property, the Court

20    should consider the "entire security package" not just a portion thereof.  *In re Opelika*

21    *Manufacturing Corporation*, 66 B.R. 444, 447-48 (Bankr. N.D. Ill. 1986).

22    As of January 21, 2018 (the beginning date of the proposed new Budget), the Debtor

23    anticipates that it will be holding cash on hand of approximately $132,520, security deposits

24    totaling approximately $53,215, inventory valued at approximately $2,625,000 (at cost), and

25    FF&E with an estimated fair market value of approximately $650,000.  Based on the foregoing,

26    the aggregate value of the Debtor's assets as of January 21, 2018 is estimated to be $3,460,735.

27    As noted above, the Debtor believes that the total amount currently owed to the Secured

28    Creditors is approximately $1,210,160, calculated as follows: (i) approximately $1,180,000 to

1  the Bank, based upon the SBA Loan only, since both the First Term Loan and Second Term

2  Loan have now been paid off, (ii) $6,000 to Fashblvd, and (iii) approximately $24,160 to the

3  SBOE.  Given the aggregate value of the Debtor's assets (*i.e.*, approximately $3,460,735), and

4  the total estimated amount currently owed to the Debtor's Secured Creditors (*i.e.*, approximately

5  $1,210,160), the Secured Creditors are adequately protected by an equity cushion of more than

6  100%, which is far in excess of the 20% equity cushion that the Ninth Circuit has indicated

7  constitutes clear adequate protection of a secured creditor's interest in cash collateral.

8      Furthermore, the Debtor submits that the value of the Secured Creditors' interest in the

9  Debtor's cash collateral will be adequately protected by, among other things, the maintenance

10  and continued operation of the Debtor's business.

11      The law is clear that the preservation of the value of a secured creditor's lien is sufficient

12  to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral.

13  *In re Triplett*, 87 B.R. 25 (Bankr. W.D.Tex. 1988).  *See also In re Stein*, 19 B.R. 458 (Bankr.

14  E.D.Pa. 1982).  In *Stein*, the Court found that, as a general rule, a debtor may use cash collateral

15  where such use would enhance or preserve the value of the collateral, and allowed the debtor

16  therein to use cash collateral even though the secured party had no equity cushion for protection.

17  The *Stein* Court determined that the use of cash collateral was necessary to the continued

18  operations of the debtor, and that the creditor's secured position could only be enhanced by the

19  continued operation of the debtor's business.  *See also In re McCombs, supra*, where the court

20  determined that the debtor's use of cash collateral for needed repairs, renovations and operating

21  expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and

22  such use would more likely increase cash collateral.

23      As reflected in the Budget, the payment of the expenses necessary for the Debtor to

24  maintain and continue operating its business will adequately protect the Secured Creditors

25  because, by doing so, the Debtor will be able to, among other things, maximize the value of its

26  inventory and generate as much revenue as possible from the sale of such inventory.  Other

27  courts have determined that a debtor's continued business operations can constitute the adequate

28  protection of a secured creditor.  *See Matter of Pursuit Athletic Footwear, Inc.,* 193 B.R. 713

1    (Bankr. D. Del. 1996); *In re Newark Airport/Hotel Ltd. Partnership*, 156 B.R. 444, 450 (Bankr.

2    D.N.J. 1993); *In re Dynaco*, 162 B.R. 389, 394-5 (Bankr. D.N.H. 1993); *In re Immenhausen*

3    *Corp.*, 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

4         Additionally, in determining adequate protection, courts have stressed the importance of

5    promoting a debtor's reorganization.  In *In re O'Connor*, *supra*, the Tenth Circuit stated:

6

7         "In this case, Debtors, in the midst of a Chapter 11 proceeding,
          have proposed to deal with cash collateral for the purpose of
8         enhancing the prospects of reorganization.  This quest is the
          ultimate goal of Chapter 11.  Hence, the Debtor's efforts are not
9         only to be encouraged, but also their efforts during the
          administration of the proceeding are to be measured in light of
10        that quest.  Because the ultimate benefit to be achieved by a
          successful reorganization inures to all the creditors of the estate, a
11        fair opportunity must be given to the Debtors to achieve that end.
          Thus, while interests of the secured creditor whose property rights
12        are of concern to the court, the interests of all other creditors also
          have bearing upon the question of whether use of cash collateral
13        shall be permitted during the early stages of administration."

14

15        808 F.2d at 1937.

16        The use of cash collateral is critical to the Debtor's ability to implement an effective

17   reorganization strategy for the benefit of all creditors.  As discussed above, the Debtor

18   anticipates filing a Plan and disclosure statement in this case by mid-January 2018 and pursuing

19   Court approval of the disclosure statement and confirmation of the Plan immediately thereafter.

20   Therefore, the period covered by the Budget (*i.e.*, January 21, 2018 – April 21, 2018) represents

21   a highly critical period in the Debtor's case.  If the Debtor is not permitted to use cash collateral

22   during this period so that the Debtor can focus on formulating and pursuing its ultimate

23   reorganization strategy in this case, while continuing to operate the Debtor's business (without

24   any disruption) and preserving and maximizing the going-concern value of the Debtor's

25   business and assets, the Debtor will be forced to immediately halt all business operations, which

26   will significantly and negatively impact the value of the Debtor's business and assets and the

27   Debtor's ability to successfully reorganize.  Clearly, the use of cash collateral will only enhance

28   the prospect of the Debtor's successful reorganization.

1    In addition to the forms of adequate protection discussed above, the Debtor also

2  proposes to provide its Secured Creditors with replacement liens and security interests against

3  the Debtor's post-petition assets, with such replacement liens to have the same extent, validity,

4  and priority as the pre-petition liens held by such Secured Creditors against the Debtor's assets.

5  Such replacement liens will provide the Secured Creditors with further adequate protection.

6    Given the foregoing forms of adequate protection being provided to the Debtor's pre-

7  petition Secured Creditors for the Debtor's use of cash collateral, the Debtor submits that the

8  requirements of Bankruptcy Code Section 363(c)(2) have been satisfied and that the Debtor

9  should be authorized to use cash collateral in accordance with the terms set forth in this Motion.

10                                          **III.**

11    **PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF**

12                **THE MOTION HAVE BEEN SATISFIED**

13    Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") sets

14  forth the procedural requirements for obtaining authority to use cash collateral.  The Debtor

15  submits that it has complied with these procedural requirements.  First, the Motion must contain

16  a copy of the proposed form of order granting the Motion, which has been done by attaching the

17  proposed order as **Exhibit "2"** to the Kim Declaration annexed hereto.  Second, the Motion

18  provides a concise statement of the relief requested, which was done above.  Third, the Motion

19  is required to be served on any entity with an interest in the Debtor's cash collateral, any

20  committee appointed or the twenty largest unsecured creditors if there is no committee, and on

21  such other parties as the Court directs.  Here, the Debtor has served the Motion and all

22  supportive papers upon the Office of the United States Trustee, all alleged secured creditors and

23  their counsel (if known), the twenty largest unsecured creditors of the Debtor (as no committee

24  yet exists), and all parties who have requested special notice.  Accordingly, the Motion complies

25  with the procedural requirements of Bankruptcy Rule 4001(b)-(d).

26    In addition, in compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Bankruptcy

27  Rule 4001-2, the Debtor has filed concurrently herewith the mandatory Court-approved Form

28  F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which

1    discloses whether the proposed order granting the Motion and authorizing the Debtor's use of

2    cash collateral contains certain provisions of findings of fact.  Accordingly, the Motion complies

3    with the procedural requirements of Local Bankruptcy Rule 4001-2.

4                                                    **IV.**

5                                               **<u>CONCLUSION</u>**

6           **WHEREFORE,** the Debtor respectfully requests that this Court enter an order in

7    substantially the form attached as **<u>Exhibit "2"</u>** to the Kim Declaration annexed hereto:

8           (1)     granting the Motion in its entirety;

9           (2)     authorizing the Debtor to use cash collateral to (i) pay all of the expenses set

10   forth in the Budget, with authority to deviate from the line items contained in the Budget by up

11   to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into

12   the following week(s); and (ii) pay all quarterly fees owing to the Office of the United States

13   Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and

14          (3)     granting such other and further relief as the Court deems just and proper.

15   Dated:  December 14, 2017                      BLUE BEE, INC.

16

17

18                                      By:_____
                                               TIMOTHY J. YOO
19                                             JULIET Y. OH
                                               LEVENE, NEALE, BENDER, YOO
20                                                 & BRILL L.L.P.
                                               Attorneys for Debtor and
21                                             Debtor in Possession

22

23

24

25

26

27

28

## DECLARATION OF JEFF SUNGHAK KIM

I, Jeff Sunghak Kim, hereby declare as follows:

1.    I am over 18 years of age.  I am the co-founder and President of Blue Bee, Inc., a California corporation d/b/a ANGL and the debtor and debtor-in-possession herein (the "Debtor"), and am therefore familiar with the business operations and financial books and records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.    I have access to the Debtor's books and records.  As the co-founder and President of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3.    I make this declaration in support of the Debtor's motion to which this declaration is attached (the "Motion") which seeks the entry of an order authorizing the Debtor to use cash collateral in accordance with the Debtor's operating budget for the 13-week period from January 21, 2018 through and including April 21, 2018 (the "Budget"), a copy of which is attached as **Exhibit "1"** hereto.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

4.    On October 19, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is continuing to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5.    The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and

1   individually, a "Retail Store").

2      6.      The Debtor is headquartered near downtown Los Angeles, California in Vernon,

3   California and, as of the Petition Date, employed a workforce of approximately 110 employees.

4   In 2015, the Debtor generated annual gross revenues of more than $24 million.

5      7.      After opening its first retail store approximately 24 years ago in 1992, the

6   Debtor's predecessor, Angl, Inc., substantially expanded its business operations to encompass a

7   total of fifty-two (52) retail stores throughout the states of California, Nevada and Arizona by

8   2015.  The vast majority of these new retail stores (approximately 43 stores) were opened within

9   the seven-year period prior to the Petition Date.  I believe that this large expansion effort, which

10  was conducted within a relatively compressed period of time, took a heavy financial toll on the

11  business operations of the Debtor's predecessor as a whole as it incurred construction and other

12  "start up" costs with the opening of each new store as well as a significant increase in operating

13  expenses typically associated with a retail store chain operation.

14     8.      I believe that the high cost of expansion combined with decreasing store sales as

15  a result of a general industry-wide shift in consumer shopping preferences from in-store to

16  online shopping, and the increased competition arising therefrom, left the Debtor with

17  insufficient liquidity to meet all of its financial obligations, ultimately resulting in defaults in

18  payments to the Debtor's landlords and vendors.  As a result of the Debtor's defaults, numerous

19  landlords began commencing actions to evict the Debtor and/or terminate the Debtor's lease

20  agreements for certain of the Retail Stores.  While the Debtor had already closed a number of its

21  less profitable retail store locations, leaving open 21 Retail Stores as of the Petition Date, the

22  Debtor required time to evaluate the viability of the remaining Retail Stores and identify other

23  ways to decrease operational costs and increase profitability.  In order to preserve the Debtor's

24  rights under its lease agreements and to have an opportunity to restructure its business and

25  financial affairs and ultimately reorganize, the Debtor filed this Chapter 11 bankruptcy case.

26     9.      Through its bankruptcy case, the Debtor intended to identify the core Retail

27  Stores around which the Debtor could successfully reorganize and expeditiously close those

28  Retail Stores which are not likely to be profitable and/or for which the Debtor is unable to

1    obtain meaningful rent concessions from the landlords (a process which has now been

2    completed), and thereafter formulate and seek confirmation of a plan of reorganization which

3    restructures the Debtor's existing debt in a cohesive and efficient manner while facilitating the

4    continued operation of the Debtor's longstanding business.

5    **Postpetition Cash Collateral Use, Business Operations And Reorganization Efforts.**

6    10.    Since the Petition Date, the Debtor has continued operating its business in the

7    normal course.

8    11.    Shortly after the Petition Date, on October 24, 2016, the Debtor filed an

9    emergency motion (the "First CC Motion") seeking an order, among other things, authorizing

10    the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating

11    budget submitted therewith (the "Initial Budget").

12    12.    I am advised and believe that, on November 1, 2016, the Court entered an interim

13    order granting the First CC Motion on an interim basis, pending a final hearing (the "Interim

14    Order"). I am further advised and believe that, on December 14, 2016, the Court entered a final

15    order granting the First CC Motion on a final basis and authorizing the Debtor to use cash

16    collateral in accordance with a revised form of the Initial Budget (the "Revised Initial Budget"),

17    subject to the terms and conditions set forth on the record of the Court at the final hearing on the

18    First CC Motion held on November 30, 2016 (the "Final Order," and together with the Interim

19    Order, the "First CC Orders")).

20    13.    I am advised and believe that, on January 24, 2017, the Court entered a second

21    order authorizing the Debtor to continue using cash collateral in accordance with the operating

22    budget submitted by the Debtor for the 13-week period from January 22, 2017 through and

23    including April 22, 2017 (the "Second CC Order").

24    14.    I am advised and believe that, on April 28, 2017, the Court entered a third order

25    authorizing the Debtor to continue using cash collateral in accordance with the operating budget

26    submitted by the Debtor for the 13-week period from April 22, 2017 through and including July

27    22, 2017 (the "Third CC Order").

28    15.    I am advised and believe that, on July 19, 2017, the Court entered a fourth order

23

1   authorizing the Debtor to continue using cash collateral in accordance with the operating budget

2   submitted by the Debtor for the 13-week period from July 23, 2017 through and including

3   October 21, 2017 (the "Fourth CC Order").

4   16.    I am advised and believe that, on October 25, 2017, the Court entered a fifth

5   order authorizing the Debtor to continue using cash collateral in accordance with the operating

6   budget submitted by the Debtor for the 13-week period from October 22, 2017 (the "Fifth

7   Budget") through and including January 20, 2018 (the "Fifth CC Order").

8   17.    The Debtor is continuing to use its cash collateral to operate its business in the

9   ordinary course of business, in accordance with the Fifth Budget and pursuant to the terms of

10  the Fifth CC Order.

11  18.    The Debtor's authority to use cash collateral pursuant to the Fifth CC Order will

12  expire on January 20, 2018.  The Debtor has therefore filed the Motion to seek an order of the

13  Court authorizing the Debtor to continue using cash collateral in accordance with the Debtor's

14  operating budget for the 13-week period from January 21, 2018 through and including April 21,

15  2018 (the "Budget"), a copy of which is attached as **Exhibit "1"** hereto.

16  19.    I believe it was critical that the Debtor first identify the core Retail Stores around

17  which it might ultimately be able to reorganize before the Debtor's management could begin

18  exploring and formulating the terms of a feasible Plan in this case.  Accordingly, shortly after

19  the Petition Date, the Debtor's management began the process of analyzing the financial

20  performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine

21  which of the Retail Stores were currently profitable or potentially profitable if rent concessions

22  could be successfully negotiated with the landlords, and which of the Retail Stores were not

23  profitable and therefore needed to be closed on an expeditious basis.

24  20.    As a result of such analysis, during the past several months, the Debtor has

25  sought and obtained Court approval to close eight (8) of its Retail Stores and to reject the real

26  property leases associated therewith.  Based on the foregoing, the Debtor is currently operating a

27  total of thirteen (13) Retail Stores (the "Operating Retail Stores"), which comprise the core

28  group of retail stores around which the Debtor intends to reorganize.

21. Although the Debtor has made significant efforts during the past year that it has been in Chapter 11 to stabilize its business operations and increase sales, such efforts have been hampered by, among other things, the unexpectedly inclement weather in California during the 2016-2017 winter and spring seasons, which in turn negatively impacted the Debtor's ability to generate sales revenue, and the Debtor's constrained cash flow due to, among other reasons, demands by certain of the Debtor's vendors for up-front payments for necessary merchandise and inventory and the funding of lease cure payments required to be made in conjunction with the Debtor's assumption of the leases for its thirteen (13) Operating Retail Stores.

22. On November 1, 2017, three of the Debtor's former landlords (whose leases the Debtor rejected) filed motions seeking the allowance and immediate payment of administrative expense priority claims for alleged unpaid post-petition rent totaling over $198,000 (the "Admin Rent Motions"). The hearings on the Admin Rent Motions are currently set for January 11, 2017 at 8:30 a.m. (the same date and time as the hearing on this Motion). Although the Debtor disputes the calculation and amounts of the administrative expense priority claims asserted by the landlords in the Admin Rent Motions, and is in discussions with such landlords regarding a potential consensual resolution of the Admin Rent Motions, in the event that the Court determines that such landlords are entitled to the allowance and immediate payment of the administrative rent claim asserted in the Admin Rent Motions, the Debtor's ability to continue operating its business and formulate a feasible Plan may be jeopardized, given the Debtor's current cash availability.

23. Notwithstanding the Debtor's current cash flow situation, and the potential impact that the Admin Rent Motions will have on the Debtor's ability to continue operating its business and to formulate a feasible Plan, the Debtor's management has begun evaluating and formulating the potential terms of a Plan. However, the Debtor and its management require additional time to (i) evaluate the Debtor's business operations (particularly during the upcoming holiday selling season, which is a critical period for the Debtor) and to prepare accurate cash flow forecasts in support of a Plan, (ii) complete their analysis of the claims that have been filed by creditors in the Debtor's case, including, without limitation, a number of

1    large administrative rent claims asserted by several of the Debtor's landlords (including those

2    asserted in the Admin Rent Motions), (iii) determine how much cash the Debtor will have

3    available on the anticipated effective date of the Plan to help fund the Plan so that management

4    may determine how much additional cash will be required (either from the Debtor's principals

5    or outside sources) to fund the Plan, and (iv) complete the preparation of the combined form

6    Plan and disclosure statement (and other documents related thereto) required by the Court.  The

7    Debtor also requires time to complete its discussions with its secured lender, Pacific City Bank

8    (the "<u>Bank</u>"), and other creditors regarding the potentially consensual treatment of such

9    creditors' claims in the Plan.

10        24.    Based on the foregoing, I anticipate that the Debtor will be in a position to file its

11   Plan and disclosure statement by mid-January, 2018.

**<u>The Debtor's Primary Assets And Secured Debts</u>**

13        25.    The Debtor's primary assets are as follows:

14        a.    <u>Cash</u>.  As of the Petition Date, the Debtor had cash on hand of

15   approximately $93,000.  I anticipate that the amount of cash that the Debtor will have on

16   hand as of January 21, 2018 will be approximately $132,520.

17        b.    <u>Security Deposits</u>.  As of the Petition Date, the Debtor had security

18   deposits with landlords and other parties in the total sum of approximately $87,013.  I

19   believe that the amount of the Security Deposits remaining (for the thirteen Operating

20   Retail Stores) is approximately $53,215.

21        c.    <u>Inventory</u>.  As of the Petition Date, the Debtor had inventory with an

22   estimated cost value of approximately $3,500,000.  In light of the reduction of the

23   number of operating Retail Stores from twenty one (21) Retail Stores as of the Petition

24   Date to the current thirteen (13) Operating Retail Stores, I believe that the estimated cost

25   value of the Debtor's current inventory is approximately seventy-five percent (75%) of

26   the estimated cost value of the inventory that the Debtor had as of the Petition Date, or

27   approximately $2,625,000.  The Debtor is generally maintaining this level of inventory

28

1    in its Operating Retail Stores as the Debtor continues to purchase new merchandise to

2    replenish merchandise sold at the Operating Retail Stores.

3        d.    Other Assets.  As of the Petition Date, the Debtor had furniture, fixtures

4    and equipment ("FF&E") with a net book value of $6,299,306.  While the Debtor

5    initially estimated that the FF&E had an estimated aggregate fair value of approximately

6    $1,000,000, based upon discussions that the Debtor's management has had with a

7    number of liquidation companies, I believe that the only FF&E that has any actual value

8    are the FF&E contained at the thirteen (13) Operating Retail Stores (consisting of racks,

9    shelving, and other personal property).  I estimate that the FF&E at the Operating Retail

10   Stores has an estimated aggregate fair market value of approximately $650,000 (or

11   approximately $50,000 per store).  Subsequent to the Petition Date, the Debtor

12   "downsized" from its former warehouse facility in Vernon, California to a substantially

13   smaller office space in Vernon, California.  In connection with the move to the smaller

14   office space, and with the consent of the Bank, the Debtor disposed of the non-store

15   FF&E that was being maintained at its former warehouse facility, which FF&E the

16   Debtor was not using and the Debtor determined had nominal market value (if any).

17       26.    Based on the foregoing, the aggregate value of the Debtor's assets as of January

18   21, 2018 is estimated to total $3,460,735.

19       27.    The Debtor's senior secured lender is the Bank.  As of the Petition Date, the

20   Debtor was a borrower under three (3) separate loans with the Bank, two of which have since

21   been fully repaid and satisfied, as described below:

22       a.    The Debtor is the borrower under a U.S. Small Business Administration

23   loan with the Bank (the "SBA Loan"), pursuant to a Loan Agreement dated July 24,

24   2014 between the Debtor and the Bank.  The Debtor is currently indebted to the Bank in

25   the amount of approximately $1,180,000 under the SBA Loan.  The Bank filed UCC-1

26   financing statements against the Debtor and its predecessor, Angl, Inc. asserting a lien

27   against substantially all of the assets of the Debtor and Angl, Inc.  The SBA Loan was

28   also secured by a lien against a Malibu, California residence previously owned by my

wife and me.  Recently, the Malibu residence owned by my wife and me was sold to a third party purchaser, from which sale the Bank received a payment of $600,000, thereby reducing the outstanding balance of the SBA Loan to approximately $1,180,000.

b.    The Debtor was the borrower under a term loan bearing the Loan Number 134077 with the Bank (the "First Term Loan"), pursuant to a Business Loan Agreement dated November 2, 2015 between the Debtor and the Bank.  The First Term Loan was secured by certain non-Debtor assets, including commercial real property owned by the Debtor's affiliate, Peace People, LLC (the "Affiliate Commercial Property").  Following the Petition Date, the Affiliate Commercial Property was sold to a third party purchaser, which sale resulted in the full repayment and satisfaction of the First Term Loan. Therefore, the Debtor has no remaining obligations under the First Term Loan.

c.    The Debtor was the borrower under a second term loan bearing the Loan Number 133776 (the "Second Term Loan"), pursuant to a Business Loan Agreement dated July 23, 2014 between the Debtor and the Bank. The Second Term Loan was also secured by the Affiliate Commercial Property, and was fully repaid and satisfied upon the closing of the sale of the Affiliate Commercial Property.  Therefore, the Debtor has no remaining obligations under the Second Term Loan.

28.    Prior to the Petition Date, the Debtor obtained a secured loan in the amount of $6,000 from Fashblvd, Inc. ("Fashblvd").  I am advised and believe that Flashblvd filed a UCC-1 financing statement (Document No. 57738600002) asserting a lien against substantially all of the assets of the Debtor prior to the commencement of the Debtor's bankruptcy case on October 19, 2016.

29.    I am advised and believe that, in addition to the financing statements filed by the Bank and Fashblvd against the Debtor and/or its predecessor, Angl, Inc., there are financing statements that have been filed against the Debtor and Angl, Inc. by the following parties:

a.    U.S. Bank Equipment Finance.  I am advised and believe that U.S. Bank Equipment Finance has one active financing statement (filing number 13-7390160767), filed on December 10, 2013, which purports to cover certain specified equipment leased

1    or financed from U.S. Bank Equipment Finance.  U.S. Bank Equipment Finance does not

2    purport to assert a security interest in the Debtor's cash.

3           g.     <u>California State Board Of Equalization ("SBOE")</u>.  I am advised and

4    believe that SBOE has one active state tax lien (filing number 15-7447815850) which

5    was recorded against the Debtor on January 29, 2015.  Based upon the Debtor's books

6    and records, I believe that the amount owed to SBOE which is secured by the foregoing

7    tax lien is $24,160.38.

8           b.     <u>Line & Dot, LLC d/b/a Lumiere Collections ("L&E")</u>.  I am advised and

9    believe that L&E recorded a judgment lien against the Debtor (filing number 16-

10    7546469513) on September 15, 2016.  The Debtor and L&E entered into a stipulation to

11    avoid the foregoing judgment lien, which stipulation I am advised and believe was

12    approved by the Court pursuant to an order entered on December 22, 2016.

13           c.     <u>Tyler Mall Limited Partnership ("Tyler Mall")</u>.  I am advised and believe

14    that Tyler Mall has one active judgment lien (filing number 16-7542925708) which was

15    recorded against Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing

16    judgment lien, which was recorded within the 90-day period preceding the Petition Date,

17    is avoidable as a preferential transfer and is therefore disputed.

18           d.     <u>GGP-Otay Ranch, L.P. ("GGP")</u>.  I am advised and believe that GGP has

19    one active judgment lien (filing number 16-7542926072) which was recorded against

20    Angl, Inc. on August 22, 2016.  The Debtor submits that the foregoing judgment lien,

21    which was recorded within the 90-day period preceding the Petition Date, is avoidable as

22    a preferential transfer and is therefore disputed.

23           e.     <u>Valley Plaza Mall, LP ("Valley Plaza")</u>.  I am advised and believe that

24    Valley Plaza has one active judgment lien (filing number 16-7545824507) which was

25    recorded against Angl, Inc. on September 12, 2016.  The Debtor submits that the

26    foregoing judgment lien, which was recorded within the 90-day period preceding the

27    Petition Date, is avoidable as a preferential transfer and is therefore disputed.

28

1    30.    Based on the foregoing, I believe that the Bank, Fashblvd and the SBOE are the

2    only parties that may potentially have a perfected security interest in the Debtor's cash.[5]

3    **The Need For Use Of Cash Collateral And Proposed New Operating Budget**

4    31.    By the Motion, the Debtor seeks an order of the Court authorizing the Debtor to

5    use its cash, during the period from January 21, 2018 through and including April 21, 2018, to

6    pay the expenses set forth in the Budget which is attached as Exhibit "1" hereto, as well as all

7    quarterly fees owing to the Office of the United States Trustee and all expenses owing to the

8    Clerk of the Bankruptcy Court.    In addition, the Debtor seeks authority to deviate from the

9    expense line items contained in the Budget, without the need for any further Court order, by up

10    to 20%, on both a line item and aggregate basis, with any unused portions to be carried over into

11    the following week(s).    The Debtor will not deviate from the Budget beyond the foregoing

12    parameters without further order of the Court.

13    29.    The Debtor requires authority to use cash collateral in accordance with the

14    Budget to enable the Debtor to pay all of its normal and ordinary operating expenses (such as

15    payroll, rent, utilities, insurance, and payments to vendors) as they come due in the ordinary

16    course of its business and to purchase new inventory to replenish merchandise that is sold to

17    customers at the Debtor's Remaining Retail Stores.    I do not believe the Debtor has the ability to

18    maintain its business operations or to preserve and maximize the value of its assets unless the

19    Debtor is authorized to use its cash to pay its projected expenses in accordance with the Budget.

20    I believe the Debtor's inability to pay such expenses would cause immediate and irreparable

21    harm to the Debtor's bankruptcy estate.    Indeed, the Debtor's inability to pay its projected

22    expenses, including payroll, rent, utilities and other operating expenses would result in the

23    immediate shutdown of the Debtor's business and the decimation of the value (going-concern or

24    otherwise) of the Debtor's business and assets.

25    / / /

26    / / /

27    _____

28    [5] The Debtor does not concede that such creditors have valid and properly perfected security interests and liens
in the Debtor's cash and other assets.

1    32.    The proposed order granting the Motion is attached as **Exhibit "2"** hereto.

2    I declare under penalty of perjury that the foregoing is true and correct to the best of my

3  knowledge.

4    Executed on this 14th day of December, 2017, at Los Angeles, California.

JEFF SUNGHAK KIM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

[Budget]

**BLUE BEE, INC.**
13 Week Cash Flow Projection
From 1/21/2017 To 4/21/2018

| Week No | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Beginning | 21-Jan | 28-Jan | 4-Feb | 11-Feb | 18-Feb | 25-Feb | 4-Mar | 11-Mar | 18-Mar | 25-Mar | 1-Apr | 8-Apr | 15-Apr |
| Week Ending | 27-Jan | 3-Feb | 10-Feb | 17-Feb | 24-Feb | 3-Mar | 10-Mar | 17-Mar | 24-Mar | 31-Mar | 7-Apr | 14-Apr | 21-Apr |
| Beginning Balance | 132,520 | 183,611 | 32,081 | 94,751 | 97,421 | 157,212 | 174,382 | 77,052 | 73,222 | 135,892 | 195,183 | 52,853 | 115,523 |
| Sales | 100,000 | 100,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 | 115,000 |
| Merchandise Payments | 40,000 | 40,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 | 46,000 |
| Gross Profit | 60,000 | 60,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 | 69,000 |
| Rent & Related | | 160,000 | | | | | 160,000 | | | | 160,000 | | |
| Payroll & Payroll Taxes | | 45,000 | | 45,000 | | 45,000 | | 45,000 | | | 45,000 | | 45,000 |
| General & Adminstrave | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Bank & Card Processing | 2,000 | 2,000 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 |
| Equipment Payment | 2,879 | | | | 2,879 | | | | | 2,879 | | | |
| Insurance | | | | 15,000 | | | | 15,000 | | | | | 15,000 |
| Repair & Maintenance | | 500 | | | | 500 | | | | 500 | | | |
| Postage & Delivery | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Miscellaneous | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Total Disbursements | 8,909 | 211,530 | 6,330 | 66,330 | 9,209 | 51,830 | 166,330 | 66,330 | 6,330 | 9,709 | 211,330 | 6,330 | 66,330 |
| Operating Cash Flow | 51,091 | (151,530) | 62,670 | 2,670 | 59,791 | 17,170 | (97,330) | 2,670 | 62,670 | 59,291 | (142,330) | 62,670 | 2,670 |
| UST Fees | | | | | | | | 6,500 | | | | | |
| Net Cash Flow | 51,091 | (151,530) | 62,670 | 2,670 | 59,791 | 17,170 | (97,330) | (3,830) | 62,670 | 59,291 | (142,330) | 62,670 | 2,670 |
| Ending Balance | 183,611 | 32,081 | 94,751 | 97,421 | 157,212 | 174,382 | 77,052 | 73,222 | 135,892 | 195,183 | 52,853 | 115,523 | 118,193 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "2"

[Proposed Order]

1  TIMOTHY J. YOO (SBN 155531)
2  JULIET Y. OH (SBN 211414)
   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
   Email: tjy@lnbyb.com, jyo@lnbyb.com
5
6  Attorneys for Chapter 11 Debtor and
   Debtor in Possession
7
8
9                UNITED STATES BANKRUPTCY COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                    LOS ANGELES DIVISION

12
13  In re                              )  Case No. 2:16-bk-23836-SK
                                       )
14  BLUE BEE, INC.,                    )  Chapter 11
                                       )
15              Debtor.                )  **ORDER      GRANTING      DEBTOR'S**
                                       )  **MOTION   FOR   ENTRY   OF   ORDER**
16                                     )  **AUTHORIZING DEBTOR TO USE CASH**
                                       )  **COLLATERAL      THROUGH      AND**
17                                     )  **INCLUDING APRIL 21, 2018**
                                       )
18                                     )
                                       )  Hearing:
19                                     )  Date:        January 11, 2018
                                       )  Time:        8:30 a.m.
20                                     )  Courtroom:   1575
                                       )  Location:    255 E. Temple Street
21                                     )               Los Angeles, California
                                       )
22                                     )
                                       )
23                                     )
                                       )
24                                     )
                                       )
25                                     )
                                       )
26  _____
27
28

                                    1

1    A hearing was held on January 11, 2018 at 8:30 a.m., before the Honorable Sandra R.

2   Klein, United States Bankruptcy Judge for the Central District of California, Los Angeles

3   Division, in Courtroom "1575" located at 255 E. Temple Street, Los Angeles, California, to

4   consider the motion (the "Motion") filed by Blue Bee, Inc., a California corporation d/b/a ANGL

5   and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the

6   "Debtor"), for the entry of an order authorizing the Debtor to use its cash collateral in accordance

7   with the Debtor's operating budget for the 13-week period from January 21, 2018 through and

8   including April 21, 2018 (the "Budget"), a copy of which is attached as Exhibit "1" to the

9   Declaration of Jeff Sunghak Kim annexed to the Motion, and granting related relief.

10  Appearances at the hearing on the Motion were waived pursuant to the tentative ruling of the

11  Court regarding the Motion.

12    The Court, having considered the Motion and all papers filed by the Debtor in support of

13  the Motion, proper and adequate notice of the Motion and the hearing on the Motion having been

14  provided, having received no opposition to the Motion, and other good cause appearing therefor,

15    IT IS HEREBY ORDERED AS FOLLOWS:

16    A.    The Motion is granted.

17    B.    The Debtor is authorized to use cash collateral to (i) pay all of the expenses set

18  forth in the Budget, with authority to deviate from the line items contained in the Budget by not

19  more than 20%, on both a line item and aggregate basis, with any unused portions to be carried

20  over into the following week(s) and (ii) pay all quarterly fees owing to the Office of the United

21  States Trustee and all expenses owing to the Clerk of the Bankruptcy Court.

22    IT IS SO ORDERED.

###

23

24

25

26

27

28

1

# PROOF OF SERVICE OF DOCUMENT

1

2  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

3

4  A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL THROUGH AND INCLUDING APRIL 21, 2018; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFF SUNGHAK KIM IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

5

6  **1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 15, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

7

8

9  - **Franklin C Adams    franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com**

10  - **Marc Andrews    bankruptcycls@wellsfargo.com, andrewma@wellsfargo.com**
   - **Dustin P Branch    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com**

11  - **Lynn Brown    notices@becket-lee.com**

12  - **Brian W Byun    bbyun@ci.vernon.ca.us**
   - **John H Choi    johnchoi@kpcylaw.com, christinewong@kpcylaw.com**

13  - **Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com**
   - **Dare Law    dare.law@usdoj.gov**

14  - **Thor D McLaughlin    tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
   - **Randall P Moroczynski    randym@cookseylaw.com**

15  - **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
   - **Ernie Zachary Park    ernie.park@bewleylaw.com**

16  - **Ronald M Tucker    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**

17  - **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
   - **Michael A Wallin    mwallin@slaterhersey.com, mrivera@slaterhersey.com**

18  - **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com**

19

20  **2. SERVED BY UNITED STATES MAIL**: On **December 15, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

21

22

23

24        ☒  Service information continued on attached page

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 15, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
The Honorable Sandra R. Klein
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 15, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**

Blue Bee, Inc.
Top 20, Secured Creditors, OUST, RSN

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Brian D. Huben
Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018

_Counsel to Caribbean Queen Inc._
Law Offices of Jacqueline N. Anker
27 W Anapamu, Suite 325
Santa Barbara, CA 93101

_Counsel to Macerich Cerritos LLC_
David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Michael A. Wallin
Slater Hersey & Lieberman LLP
18301 Von Karman Ave, Suite 1060
Irvine, CA 92612

Marc Andrews
Office of the General Counsel
Wells Fargo & Company
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435