TIMOTHY J. YOO (SBN 155531)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: tjy@lnbyb.com, jyo@lnbyb.com

Attorneys for Chapter 11 Debtor and
Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | ) Case No. 2:16-bk-23836-SK |
| | ) |
| BLUE BEE, INC., | ) Chapter 11 |
| | ) |
| Debtor. | ) **DEBTOR'S SEVENTH CHAPTER 11** |
| | ) **CASE STATUS REPORT;** |
| | ) **DECLARATION OFF JEFF SUNGHAK** |
| | ) **KIM IN SUPPORT THEREOF** |
| | ) |
| | ) <u>Status Conference:</u> |
| | ) Date:              December 20, 2018 |
| | ) Time:              8:30 a.m. |
| | ) Courtroom:      1575 |
| | ) Location:         255 E. Temple Street |
| | )                        Los Angeles, California |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL SECURED CREDITORS, THE TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES WHO HAVE REQUESTED SPECIAL NOTICE IN THIS CASE:**

Blue Bee, Inc. d/b/a ANGL, a California corporation and the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), hereby files this seventh Chapter 11 case status report ("Status Report") in compliance with this Court's *Order: (1) Setting Status Conference; (2) Requiring Debtor-In-Possession To Appear And File Report Re: Status Of Reorganization; (3) Giving Notice Of Probable Use Of Court-Appointed Expert For Contested Valuation Requests; (4) Mandating Use Of Specific Forms By Non-Individual And Individual Debtors; And (5) Establishing Procedure For Motion For Order Approving Adequacy Of Disclosure Statement; And Motion For Order Confirming Plan* [Doc. No. 25] (the "Scheduling Order") to provide an update to the Court and interested parties regarding developments in the Debtor's case since the prior Chapter 11 status conference conducted on August 9, 2018.

## I.

## CASE BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on October 19, 2016 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers. As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

2

Through its bankruptcy case, the Debtor intended to identify the core Retail Stores around which the Debtor could successfully reorganize and expeditiously close those Retail Stores which were not likely to be profitable and/or for which the Debtor was unable to obtain meaningful rent concessions from the landlords (a process which has now been completed), and thereafter formulate and seek confirmation of a plan of reorganization which restructures the Debtor's existing debt in a cohesive and efficient manner while facilitating the continued operation of the Debtor's longstanding business.

Accordingly, shortly after the Petition Date, the Debtor began the process of analyzing the financial performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine which of the Retail Stores were currently profitable or potentially profitable if rent concessions could be successfully negotiated with the landlords, and which of the Retail Stores were not profitable and therefore needed to be closed on an expeditious basis.

As a result of such analysis, the Debtor sought and obtained Court approval to close eight (8) of its Retail Stores and to reject the real property leases associated therewith.  With the approval of the Court, the Debtor successfully assumed the real property leases for its remaining thirteen (13) Retail Stores, except for the lease for the Debtor's Retail Store located in Manhattan Beach, California, which lease is with the Debtor's principals, Jeff Sunghak Kim and Young Ae Kim, rather than the Debtor (and therefore could not be assumed by the Debtor).

Thereafter, in February 2018, the Debtor vacated its retail store located in the Northridge Fashion Center after receiving a notice of termination from the landlord.  Subsequently, however, the Debtor engaged in negotiations with the landlord to reopen at a new location within the Northridge Fashion Center.  On May 24, 2018, the Debtor filed a motion seeking Court approval of its lease agreement for the new location within the Northridge Fashion Center, which motion was granted pursuant to an order entered by the Court on June 13, 2018.

On June 13, 2018, the Debtor and The Irvine Company LLC, the landlord of the Debtor's Retail Store at the Fashion Island center located in Newport Beach, California (the "Newport Beach Store"), entered into a stipulation providing for the termination of the Debtor's

lease/license with such landlord effective as of June 30, 2018. The Court entered an order approving the foregoing stipulation on June 13, 2018. The Debtor surrendered possession of the Newport Beach Store premises on or before June 30, 2018.

The Debtor also vacated its Retail Store located in Manhattan Beach, California upon the expiration of the term of that lease.

Based on the foregoing, the Debtor is currently operating a total of eleven (11) Retail Stores, which comprise the core group of retail stores around which the Debtor intends to reorganize.

## II.

## UPDATED INFORMATION REQUIRED BY THE SCHEDULING ORDER

**A.      Estimated Timing For Filing Of Disclosure Statement Motion And Plan Confirmation Motion.**

The Debtor has commenced the process of evaluating and formulating the potential terms of a plan of reorganization ("Plan") in this case. However, earlier this year, the following two proofs of claim were filed in the Debtor's case which, if allowed, will negatively impact and potentially jeopardize the Debtor's ability to propose a feasible Plan in this case:

- a proof of claim filed on behalf of Benix Morante ("Morante"), Jennifer Dominguez, and April Bojorquez, individually and as purported class representatives (together, the "Alleged Class"), pursuant to which the Alleged Class asserts a claim in excess of $30,000,000 against the Debtor, including a priority claim of $214,643.84, based upon certain "wage and hour" claims alleged against the Debtor in a pre-petition action initiated before the Los Angeles Superior Court, which action bears the case number BC542008. The proof of claim filed by the Alleged Class is designated as Claim Number 77 in the claims register for the Debtor's bankruptcy case (the "Alleged Class Claim"); and

- a proof of claim filed on behalf of Morante individually, pursuant to which Morante asserts a claim in the sum of $1,500,000 against the Debtor based upon certain

4

1    claims of discrimination, harassment, sexual battery, retaliation and wrongful

2    termination alleged against the Debtor in a pre-petition action initiated before the

3    Los Angeles Superior Court, which action bears the case number BC567121.  The

4    proof of claim filed by Morante is designated as Claim Number 78 in the claims

5    register for the Debtor's bankruptcy case (the "Morante Claim," and together with

6    the Alleged Class Claim, the "Alleged Labor Claims").

7    Given the potentially significant impact that the Alleged Labor Claims will have on the

8    Debtor's ability to propose and confirm a feasible Plan in this case, the Debtor has obtained

9    Court approval to employ special labor litigation counsel, Ernest Martz, Esq. ("Martz"), to assist

10    in the investigation of the bases for, and the prosecution of the Debtor's objections to, such

11    claims.

12    The Debtor and Martz have been investigating the Alleged Labor Claims and, based upon

13    their investigation and analysis of such claims, the Debtor and Martz believe that the claims

14    asserted in the Alleged Labor Claims are invalid and/or vastly overstated.  The Debtor and Martz

15    hope to complete their analysis of the Alleged Labor Claims and to prepare and file motion(s)

16    seeking to disallow such claims within the next 30-45 days.

17    Although the Debtor and its professionals have spent time evaluating and discussing the

18    potential terms for a Plan in this case, given the magnitude of the claims asserted in the Alleged

19    Labor Claims, and the potential impact of such claims on the Debtor's ability to propose and

20    confirm a feasible Plan, the Debtor believes it must obtain an adjudication of such claims (even

21    if only on a preliminary basis) before the Debtor can prepare and file a plan of reorganization in

22    this case.

23    On October 12, 2018, the Debtor's secured lender, Pacific City Bank ("PCB"), filed a

24    motion requesting the conversion of the Debtor's bankruptcy case to one under Chapter 7 or,

25    alternatively, the dismissal of the Debtor's bankruptcy case [Doc. No. 391] (the "PCB Motion").

26    The Debtor filed an opposition to the PCB Motion on October 24, 2018 [Doc. No. 406], and

27    PCB filed a reply to such opposition on October 31, 2018 [Doc. No. 410].  Thereafter, the Debtor

28

5

and PCB engaged in discussions which culminated in a consensual resolution of the Motion in accordance with the terms and conditions set forth in the parties' stipulation filed on November 5, 2018 [Doc. No. 414] (the "Settlement Stipulation").  The Court entered an order approving the Settlement Stipulation on November 5, 2018 [Doc. No. 415].

Among other things, the Settlement Stipulation requires the Debtor to file a Plan in this case by April 30, 2019, unless the parties hereto mutually agree to an extension of such deadline.

Based on the foregoing, and assuming that the Debtor is able to obtain an adjudication of the Alleged Labor Claims prior to April 30, 2019, the Debtor intends to file a proposed Plan and disclosure statement by April 30, 2019.

However, in the event that the Debtor is not able to obtain an adjudication of the Alleged Labor Claims prior to April 30, 2019, the Debtor will request that PCB agree to extend the deadline set forth in the Settlement Stipulation for the Debtor to file a Plan in this case for an appropriate period of time.  While the Debtor has no interest in unduly delaying the progress of its bankruptcy case, the Debtor believes that it is in the best interests of the estate and its creditors to file a plan of reorganization that is both feasible and has a high chance of success after the Alleged Labor Claims (which unquestionably impact plan feasibility) have been adjudicated.

**B.      Deadlines For Filing Proofs Of Claim And Hearings On Objections To Claims.**

On January 25, 2017, the Court entered an order granting the Debtor's motion to establish March 31, 2017 as the deadline for creditors to file proofs of claim in the Debtor's bankruptcy case.  The Debtor has reviewed the proofs of claim that have been filed by creditors in the Debtor's bankruptcy case and has identified certain objectionable proofs of claim which the Debtor will file motion(s) seeking to disallow, including, without limitation, the Alleged Labor Claims discussed above.

The Debtor anticipates that its Plan will provide for a deadline by which objections to claims must be filed and, therefore, requests that the Court not establish a deadline for filing objections to claims at this time.  However, if the Court requires that such a deadline be set now,

the Debtor respectfully requests that the deadline for filing objections to claims be set for March 15, 2019 or later.

**C.    Debtor's Compliance With Duties Under 11 U.S.C. §§ 521, 1106 and 1107.**

The Debtor believes that it is in compliance with all applicable requirements under 11 U.S.C. §§ 521, 1106, and 1107.  Among other things, the Debtor has filed its Monthly Operating Reports for each post-petition month through and including the month of October, 2018.

**D.    Status Of Debtor's Post-Petition Operations, Cash Collateral Use, Litigation Matters And Reorganization Efforts.**

Since the Petition Date, the Debtor has continued operating its business in the normal course.

Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "First CC Motion") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "Initial Budget").

On November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing.  On December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial Budget, subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016.

On January 24, 2017, the Court entered a second order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from January 22, 2017 through and including April 22, 2017.

On April 28, 2017, the Court entered a third order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from April 22, 2017 through and including July 22, 2017.

On July 19, 2017, the Court entered a fourth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from July 23, 2017 through and including October 21, 2017.

On October 25, 2017, the Court entered a fifth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from October 22, 2017 through and including January 20, 2018.

On January 11, 2018, the Court entered a sixth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from January 21, 2018 through and including April 21, 2018.

On April 12, 2018, the Court entered a seventh order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from April 22, 2018 through and including July 21, 2018.

On July 23, 2018, the Court entered an eighth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from July 22, 2018 through and including October 20, 2018.

On October 15, 2018, the Court entered a ninth order authorizing the Debtor (the "Ninth CC Order") to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 14-week period from October 21, 2018 through and including January 26, 2019 (the "Ninth Budget").

The Debtor is continuing to use its cash collateral to operate its business in the ordinary course of business, in accordance with the Ninth Budget and pursuant to the terms of the Ninth CC Order.

All of the Debtor's pre-petition litigation matters have been stayed as a result of the filing of the Debtor's Chapter 11 bankruptcy case and there is no pending post-petition litigation.

/ / /

/ / /

/ / /

**E.    Electronic Filing Of Documents By Debtor's Proposed Counsel.**

The Debtor's bankruptcy counsel, Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), has been and will continue to be filing documents in the Debtor's bankruptcy case electronically via CM/ECF.

**F.    Employment Of Professionals By Debtor And Status Of Court Approval Of Such Employment; Budget Of Estimated Professional Fees And Expenses.**

On November 16, 2016, the Court entered an order approving the Debtor's application to employ LNBYB as its bankruptcy counsel, effective as of the Petition Date.

On January 9, 2017, the Court entered an order approving the Debtor's application to employ Force Ten Partners d/b/a Force 10 ("Force 10") as its financial advisor, effective as of November 15, 2016.

On September 7, 2018, the Court entered an order approving the Debtor's application to employ Martz as the Debtor's special labor litigation counsel, effective as of July 16, 2018.

The Debtor cannot accurately estimate the fees and expenses that will be incurred by LNBYB, Force 10 and Martz (collectively, the "Debtor's Professionals") during the course of its bankruptcy case as the amount of fees and expenses that are ultimately incurred will be largely dependent on, among other factors, (i) whether there is any further objections to the Debtor's requests to continue using cash collateral during the course of this case, (ii) the extent to which the Debtor will be forced to litigate its objections to claims that the Debtor has identified are objectionable, including, without limitation, the Alleged Labor Claims (the litigation of which Martz will be leading, with LNBYB assisting as necessary); (iii) the extent to which the Debtor's Professionals will need to assist the Debtor in the formulation of a feasible plan of reorganization, and (iv) whether there is any objection to the disclosure statement and/or objection to confirmation of the plan of reorganization ultimately proposed by the Debtor in this case.

///

///

1         The Debtor does not intend to employ any other professionals at this time.  However,

2   should the foregoing change, the Debtor will promptly file applications to employ such

3   professionals with the Court.

4   Dated:  December 6, 2018                    BLUE BEE, INC.

5

6

7                                          By:_____

8                                              TIMOTHY J. YOO
                                               JULIET Y. OH
9                                              LEVENE, NEALE, BENDER, YOO
                                                   & BRILL L.L.P.
10                                             Attorneys for Debtor and
                                               Debtor-in-Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF JEFF SUNGHAK KIM

I, Jeff Sunghak Kim, hereby declare as follows:

1.      I am over 18 years of age.  I am the co-founder and President of Blue Bee, Inc., d/b/a ANGL, a California corporation and the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), and am therefore familiar with the business operations and financial books and records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify as a witness, I could and would competently testify thereto.

2.      I have access to the Debtor's books and records.  As the co-founder and President of the Debtor, I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my review of the Debtor's books and records.

3.      I make this declaration in support of the Debtor's seventh Chapter 11 case status report (the "Status Report") to which this declaration is attached.  All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Status Report.

4.      The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 19, 2016 (the "Petition Date").  The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor in possession.

5.      The Debtor is a retailer doing business under the "ANGL" brand offering stylish and contemporary women's clothing at reasonable prices to its fashion-savvy customers.  As of the Petition Date, the Debtor owned and operated twenty-one (21) retail stores located primarily in shopping malls throughout the state of California (collectively, the "Retail Stores," and individually, a "Retail Store").

6.      Through its bankruptcy case, the Debtor intended to identify the core Retail Stores around which the Debtor could successfully reorganize and expeditiously close those Retail Stores which were not likely to be profitable and/or for which the Debtor was unable to obtain meaningful rent concessions from the landlords (a process which has now been completed), and thereafter formulate and seek confirmation of a plan of reorganization which restructures the Debtor's existing debt in a cohesive and efficient manner while facilitating the continued operation of the Debtor's longstanding business.

7.      Accordingly, shortly after the Petition Date, the Debtor began the process of analyzing the financial performance of each of its twenty-one (21) Retail Stores (on a store-by-store basis) to determine which of the Retail Stores were currently profitable or potentially profitable if rent concessions could be successfully negotiated with the landlords, and which of the Retail Stores were not profitable and therefore needed to be closed on an expeditious basis.

8.      As a result of such analysis, the Debtor sought and obtained Court approval to close eight (8) of its Retail Stores and to reject the real property leases associated therewith.  With the approval of the Court, the Debtor successfully assumed the real property leases for its remaining thirteen (13) Retail Stores, except for the lease for the Debtor's Retail Store located in Manhattan Beach, California, which lease is with my wife and me, rather than the Debtor.

9.      Thereafter, in February 2018, the Debtor vacated its retail store located in the Northridge Fashion Center after receiving a notice of termination from the landlord.  Subsequently, however, the Debtor engaged in negotiations with the landlord to reopen at a new location within the Northridge Fashion Center.  On May 24, 2018, the Debtor filed a motion seeking Court approval of its lease agreement for the new location within the Northridge Fashion Center, which motion was granted pursuant to an order entered by the Court on June 13, 2018.

10.      On June 13, 2018, the Debtor and The Irvine Company LLC, the landlord of the Debtor's Retail Store at the Fashion Island center located in Newport Beach, California (the "Newport Beach Store"), entered into a stipulation providing for the termination of the Debtor's lease/license with such landlord effective as of June 30, 2018.  The Court entered an order

1    approving the foregoing stipulation on June 13, 2018.  The Debtor surrendered possession of the

2    Newport Beach Store premises on or before June 30, 2018.

3          11.     The Debtor also vacated its Retail Store located in Manhattan Beach, California

4    upon the expiration of the term of that lease.

5          12.     Based on the foregoing, the Debtor is currently operating a total of eleven (11)

6    Retail Stores, which comprise the core group of retail stores around which the Debtor intends to

7    reorganize.

8          13.     The Debtor has commenced the process of evaluating and formulating the potential

9    terms of a plan of reorganization ("Plan") in its bankruptcy case.  However, earlier this year, the

10   following two proofs of claim were filed in the Debtor's case which, if allowed, I believe will

11   negatively impact and potentially jeopardize the Debtor's ability to propose a feasible Plan:

12   •     a proof of claim filed on behalf of Benix Morante ("Morante"), Jennifer

13          Dominguez, and April Bojorquez, individually and as purported class

14          representatives (together, the "Alleged Class"), pursuant to which the Alleged Class

15          asserts a claim in excess of $30,000,000 against the Debtor, including a priority

16          claim of $214,643.84, based upon certain "wage and hour" claims alleged against

17          the Debtor in a pre-petition action initiated before the Los Angeles Superior Court,

18          which action bears the case number BC542008.  The proof of claim filed by the

19          Alleged Class is designated as Claim Number 77 in the claims register for the

20          Debtor's bankruptcy case (the "Alleged Class Claim"); and

21   •     a proof of claim filed on behalf of Morante individually, pursuant to which Morante

22          asserts a claim in the sum of $1,500,000 against the Debtor based upon certain

23          claims of discrimination, harassment, sexual battery, retaliation and wrongful

24          termination alleged against the Debtor in a pre-petition action initiated before the

25          Los Angeles Superior Court, which action bears the case number BC567121.  The

26          proof of claim filed by Morante is designated as Claim Number 78 in the claims

27

28

register for the Debtor's bankruptcy case (the "Morante Claim," and together with the Alleged Class Claim, the "Alleged Labor Claims").

14.    Given the potentially significant impact that the Alleged Labor Claims will have on the Debtor's ability to propose and confirm a feasible Plan in this case, the Debtor has obtained Court approval to employ special labor litigation counsel, Ernest Martz, Esq. ("Martz"), to assist in the investigation of the bases for, and the prosecution of the Debtor's objections to, such claims.

15.    The Debtor and Martz have been investigating the Alleged Labor Claims and, based upon their investigation and analysis of such claims, I believe that the claims asserted in the Alleged Labor Claims are invalid and/or vastly overstated.  I hope to complete our analysis of the Alleged Labor Claims and to prepare and file motion(s) seeking to disallow such claims within the next 30-45 days.

16.    Although the Debtor's professionals and I have spent time evaluating and discussing the potential terms for a Plan in this case, given the magnitude of the claims asserted in the Alleged Labor Claims, and the potential impact of such claims on the Debtor's ability to propose and confirm a feasible Plan, I believe that the Debtor must obtain an adjudication of such claims (even if only on a preliminary basis) before the Debtor can prepare and file a plan of reorganization in its case.

17.    On October 12, 2018, the Debtor's secured lender, Pacific City Bank ("PCB"), filed a motion requesting the conversion of the Debtor's bankruptcy case to one under Chapter 7 or, alternatively, the dismissal of the Debtor's bankruptcy case (the "PCB Motion").  The Debtor filed an opposition to the PCB Motion on October 24, 2018, and I am advised and believe that PCB filed a reply to the Debtor's opposition on October 31, 2018.

18.    Thereafter, the Debtor and PCB engaged in discussions which culminated in a consensual resolution of the Motion in accordance with the terms and conditions set forth in the parties' stipulation filed on November 5, 2018 (the "Settlement Stipulation").  I am advised and believe that the Court entered an order approving the Settlement Stipulation on November 5, 2018.

19.      Among other things, the Settlement Stipulation requires the Debtor to file a Plan in this case by April 30, 2019, unless the parties hereto mutually agree to an extension of such deadline.

20.      Based on the Settlement Stipulation, and assuming that the Debtor is able to obtain an adjudication of the Alleged Labor Claims prior to April 30, 2019, the Debtor intends to file a proposed Plan and disclosure statement by April 30, 2019.

21.      However, in the event that the Debtor is not able to obtain an adjudication of the Alleged Labor Claims prior to April 30, 2019, the Debtor will request that PCB agree to extend the deadline set forth in the Settlement Stipulation for the Debtor to file a Plan in this case for an appropriate period of time.  While the Debtor has no interest in unduly delaying the progress of its bankruptcy case, I believe that it is in the best interests of the Debtor's estate and creditors to file a plan of reorganization that is both feasible and has a high chance of success after the Alleged Labor Claims (which I believe unquestionably impact plan feasibility) have been adjudicated.

22.      I am advised and believe that, on January 25, 2017, the Court entered an order granting the Debtor's motion to establish March 31, 2017 as the deadline for creditors to file proofs of claim in the Debtor's bankruptcy case.  The Debtor has reviewed the proofs of claim that have been filed by creditors in the Debtor's bankruptcy case and has identified certain objectionable proofs of claim which the Debtor will file motion(s) seeking to disallow, including, without limitation, the Alleged Labor Claims discussed above.

23.      I anticipate that the Debtor's Plan will provide for a deadline by which objections to claims must be filed and, therefore, I respectfully request that the Court not establish a deadline for filing objections to claims at this time.  However, if the Court requires that such a deadline be set now, I respectfully request that the deadline for filing objections to claims be set for March 15, 2019 or later.

24.      I believe that the Debtor is in compliance with all applicable requirements under the Bankruptcy Code.  Among other things, the Debtor has filed its Monthly Operating Reports for each post-petition month through and including the month of October, 2018.

25.    Since the Petition Date, the Debtor has continued operating its business in the normal course.

26.    Shortly after the Petition Date, on October 24, 2016, the Debtor filed an emergency motion (the "First CC Motion") seeking an order, among other things, authorizing the Debtor to use cash collateral in accordance with the Debtor's initial 13-week operating budget submitted therewith (the "Initial Budget").

27.    I am advised and believe that, on November 1, 2016, the Court entered an interim order granting the First CC Motion on an interim basis, pending a final hearing.  I am further advised and believe that, on December 14, 2016, the Court entered a final order granting the First CC Motion on a final basis and authorizing the Debtor to use cash collateral in accordance with a revised form of the Initial Budget, subject to the terms and conditions set forth on the record of the Court at the final hearing on the First CC Motion held on November 30, 2016.

28.    I am advised and believe that, on January 24, 2017, the Court entered a second order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from January 22, 2017 through and including April 22, 2017.

29.    I am advised and believe that, on April 28, 2017, the Court entered a third order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from April 22, 2017 through and including July 22, 2017.

30.    I am advised and believe that, on July 19, 2017, the Court entered a fourth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from July 23, 2017 through and including October 21, 2017.

31.    I am advised and believe that, on October 25, 2017, the Court entered a fifth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from October 22, 2017 through and including

January 20, 2018.

32.     I am advised and believe that, on January 11, 2018, the Court entered a sixth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from January 21, 2018 through and including April 21, 2018.

33.     I am advised and believe that, on April 12, 2018, the Court entered a seventh order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from April 22, 2018 through and including July 21, 2018.

34.     I am advised and believe that, on July 23, 2018, the Court entered an eighth order authorizing the Debtor to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 13-week period from July 22, 2018 through and including October 20, 2018.

35.     I am advised and believe that, on October 15, 2018, the Court entered a ninth order authorizing the Debtor (the "Ninth CC Order") to continue using cash collateral in accordance with the operating budget submitted by the Debtor for the 14-week period from October 21, 2018 through and including January 26, 2019 (the "Ninth Budget").

36.     The Debtor is continuing to use its cash collateral to operate its business in the ordinary course of business, in accordance with the Ninth Budget and pursuant to the terms of the Ninth CC Order.

37.     To the best of my knowledge, all of the Debtor's pre-petition litigation matters have been stayed as a result of the filing of the Debtor's Chapter 11 bankruptcy case and there is no pending post-petition litigation.

38.     I am advised and believe that, on November 16, 2016, the Court entered an order approving the Debtor's application to employ LNBYB as its bankruptcy counsel, effective as of the Petition Date.

39.    I am advised and believe that, on September 7, 2018, the Court entered an order approving the Debtor's application to employ Martz as the Debtor's special labor litigation counsel, effective as of July 16, 2018.

40.    I do not believe that the Debtor can accurately estimate the fees and expenses that will be incurred by LNBYB, Force 10 and Martz (collectively, the "Debtor's Professionals") during the course of the Debtor's bankruptcy case as the amount of fees and expenses that are ultimately incurred will be largely dependent on, among other factors, (i) whether there is any further objections to the Debtor's requests to continue using cash collateral during the course of this case, (ii) the extent to which the Debtor will be forced to litigate its objections to claims that the Debtor has identified are objectionable, including, without limitation, the Alleged Labor Claims (the litigation of which Martz will be leading, with LNBYB assisting as necessary); (iii) the extent to which the Debtor's Professionals will need to assist the Debtor in the formulation of a feasible plan of reorganization, and (iv) whether there is any objection to the disclosure statement and/or objection to confirmation of the plan of reorganization ultimately proposed by the Debtor in this case.

41.    The Debtor does not intend to employ any other professionals at this time. However, should the foregoing change, the Debtor will promptly file applications to employ such professionals with the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of December, 2018, at Vernon, California.


Jeff Sunghak Kim

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S SEVENTH CHAPTER 11 CASE STATUS REPORT; DECLARATION OFF JEFF SUNGHAK KIM IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 6, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Franklin C Adams    franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com;lisa.spencer@bbklaw.com**
- **Marc Andrews    bankruptcycls@wellsfargo.com**
- **Dustin P Branch    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com;Pollack@ballardspahr.com**
- **Lynn Brown    notices@becket-lee.com**
- **Brian W Byun    bbyun@ci.vernon.ca.us**
- **John H Choi    johnchoi@kpcylaw.com, christinewong@kpcylaw.com;aleeshim@kpcylaw.com**
- **Caroline Djang    caroline.djang@bbklaw.com, julie.urquhart@bbklaw.com;sansanee.wells@bbklaw.com;paul.nordlund@bbklaw.com**
- **Brian D Huben    hubenb@ballardspahr.com, carolod@ballardspahr.com**
- **Dare Law    dare.law@usdoj.gov**
- **Alvin Mar    alvin.mar@usdoj.gov**
- **Matthew J Matern    mmatern@maternlawgroup.com, lolarra@maternlawgroup.com;ereyes@maternlawgroup.com;rsuh@maternlawgroup.com; jboxer@maternlawgroup.com**
- **Thor D McLaughlin    tmclaughlin@allenmatkins.com, igold@allenmatkins.com**
- **Randall P Mroczynski    randym@cookseylaw.com**
- **Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com**
- **Ernie Zachary Park    ernie.park@bewleylaw.com**
- **Ronald M Tucker    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Michael A Wallin    mwallin@wallinrussell.com**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com**

**2.  SERVED BY UNITED STATES MAIL**: On **December 6, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 6, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

***Served via Attorney Service***
The Honorable Sandra R. Klein
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1582 / Courtroom 1575
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 6, 2018 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**

Blue Bee, Inc.
Top 20, Secured Creditors, OUST, RSN

Dare Law
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

U.S. BANK EQUIPMENT FINANCE
1310 MADRID STREET, SUITE 106
MARSHALL MN 56258

IRS/OHIO
P.O. BOX 145595
CINCINNATI OH 45250

LINE & DOT, LLC DBA LUMIERE
COLLECTIONS
1912 E. VERNON AVE., STE. 100
LOS ANGELES CA 90058

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 310
LOS ANGELES CA 90010

BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO CA 94279

TYLER MALL LIMITED PARTNERSHIP, A
DELAWARE LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

PACIFIC CITY BANK
3701 WILSHIRE BLVD., SUITE 100
LOS ANGELES CA 90010

GGP-OTAY RANCH, L.P., A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

FASHBLVD., INC.
1700 E. 58TH PL., #9
LOS ANGELES, CA 90001

VALLEY PLAZA MALL, LP, A DELAWARE
LIMITED
PARTNERSHIP
24011 VENTURA BLVD., STE. 201
CALABASAS CA 91302

Caribbean Queen Inc.
1128 S. Crocker Street
Los Angeles, CA 90021

Alythea
1016 S. Towne Ave., #106
Los Angeles, CA 90021

CA State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Brian D. Huben
Dustin P. Branch
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067

Horton Plaza, LLC
Blackmar, Principe & Schmelter, APC
600 B Street, Suite 2250
San Diego, CA 92101

Macerich Fresno LP
PO Box 849418
Los Angeles, CA 90084-9418

L'atiste
424 Towne Avenue
Los Angeles, CA 90021

Lynx Property Management Inc
924 Laguna St. Suite B
Santa Barbara, CA 93101

Paseo Nuevo Owner LLC
PO Box 780268
Philadelphia, PA 19178-0268

Macerich SMP LP
c/o David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Nine Planet
1022 S. Wall Street
Los Angeles, CA 90015

SEVEND
2301 E. 7th St.
Suite E-200
Los Angeles, CA 90023

Plaza Bonita, LLC
Blackmar, Principe & Schmelter, APC
600 B. Street, Suite 2250
San Diego, CA 92101

Rancho Mall LLC
PO Box 72439
Cleveland, OH 44192

The Retail Property Trust
Brea Mall
PO Box 772827
Chicago, IL 60677-2827

Shops at Mission Viejo LLC
7415 Solution Center
Chicago, IL 60677-7004

South Bay Center SPE LLC
PO Box 72056
Cleveland, OH 44192-0056

Tyler Mall Limited Partnership
SDS-12-3113
PO Box 86
Minneapolis, MN 55486-3113

W/A SVT Holdings VI LLC
PO Box 749659
Los Angeles, CA 90074-9659

Integrity Payment Systems
1700 Higgins Road # 690
Des Plaines, IL  60018

_Counsel to Caribbean Queen Inc._
Law Offices of Jacqueline N. Anker
27 W Anapamu, Suite 325
Santa Barbara, CA 93101

_Counsel to Macerich Cerritos LLC_
David M. Cohen, Esq.
5950 Canoga Avenue, Suite 605
Woodland Hills, CA 91367

Michael A. Wallin
Slater Hersey & Lieberman LLP
18301 Von Karman Ave, Suite 1060
Irvine, CA 92612

Marc Andrews
Office of the General Counsel
Wells Fargo & Company
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2435